UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re Qualcomm Incorporated Securities Litigation, | Case No.: 17cv00121 JAH-WVG<br><br>**ORDER DENYING DEFENDANTS' MOTION TO DISMISS [Doc. No. 40]** |

# INTRODUCTION

Plaintiff Rasesh Shah originally filed a complaint on January 23, 2017. On March 24, 2017, Sjunde Afonden and Metzler Asset Management GMBH sought appointment as lead plaintiff, approval of their counsel and consolidation of the action with related actions.[1] The Court granted the unopposed motion.[2] Thereafter, Plaintiffs filed a consolidated class action complaint asserting violation of federal securities laws against Qualcomm Inc., Derek K. Aberle, Steven R. Altman, Donald J. Rosenberg, William F.

---

[1] Shah v. Qualcomm Inc., 17cv121 JAH-WVG and Feenstra v. Qualcomm Inc., 17cv155 JAH-WVG.
[2] Two other motions for appointment as lead plaintiff were withdrawn.

Davidson, Jr., Paul E. Jacobs, and Steven Mollenkopf. Plaintiffs allege Defendants made a "false representation that it licensed its standard-essential patents on a non-discriminatory basis to the entire cellular communications industry" but, instead, exploited its position and drove competitors out of business. Complaint ¶ 1, 6, 10. Anti-competition regulators charged or found Qualcomm liable for violating competition law based on its actions resulting in its stock price plummeting 33% and causing investors to incur billions of dollars in damage. Id. ¶ 2, 12, 16.

In response, Defendants filed a motion to dismiss the complaint for failure to state a claim. Plaintiffs filed a response and Defendant filed a reply. Finding the motion suitable for disposition on the papers, the Court vacated the hearing and took the matter under submission. After a review of the parties' submissions and for the reasons discussed below, the Court DENIES Defendants' motion to dismiss.

## LEGAL STANDARD

Defendants seek dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6). Rule 12(b)(6) tests the sufficiency of the complaint. Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is warranted under Rule 12(b)(6) where the complaint lacks a cognizable legal theory. Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 534 (9th Cir. 1984); see Neitzke v. Williams, 490 U.S. 319, 326 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law."). Alternatively, a complaint may be dismissed where it presents a cognizable legal theory yet fails to plead essential facts under that theory. Robertson, 749 F.2d at 534. While a plaintiff need not give "detailed factual allegations," he must plead sufficient facts that, if true, "raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 545 (2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 547). A claim is facially plausible when the factual allegations permit "the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged." Id. In other words, "the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief. Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). "Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

In reviewing a motion to dismiss under Rule 12(b)(6), the court must assume the truth of all factual allegations and must construe all inferences from them in the light most favorable to the nonmoving party. Thompson v. Davis, 295 F.3d 890, 895 (9th Cir. 2002); Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996). However, legal conclusions need not be taken as true merely because they are cast in the form of factual allegations. Ileto v. Glock, Inc., 349 F.3d 1191, 1200 (9th Cir. 2003); Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981). When ruling on a motion to dismiss, the Court may consider the facts alleged in the complaint, documents attached to the complaint, documents relied upon but not attached to the complaint when authenticity is not contested, and matters of which the Court takes judicial notice. Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001). If a court determines that a complaint fails to state a claim, the court should grant leave to amend unless it determines that the pleading could not possibly be cured by the allegation of other facts. See Doe v. United States, 58 F.3d 494, 497 (9th Cir. 1995).

## DISCUSSION

Defendant seeks dismissal of the complaint with prejudice for failure to state a claim for violation of sections 10(b) and 20(a) of the Exchange Act.

**I. Section 10(b) Claim**

Defendants contend Plaintiffs fail to allege a misrepresentation or a misleading omission with particularity and fail to allege scienter to assert a claim for violation of Section 10(b). Section 10(b) of the Exchange Act makes it unlawful, in connection with the purchase or sale of any security, (1) to engage in fraud; (2) to make an untrue statement

regarding a material fact; or (3) to make a misleading statement by omitting a material fact. 15 U.S.C. § 78j; 17 C.F.R. § 240.10b-5. Thus, the basic elements of a claim are: (1) a material misrepresentation or omission of fact; (2) scienter; (3) a connection with the purchase or sale of a security; (4) transaction and loss causation; and (5) economic loss. Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336, 341 (2005).

In order to survive a motion to dismiss, claims brought under Section 10(b) must satisfy three pleading standards: (1) the general requirement of a "short and plan statement of the claim" established by Federal Rule of Civil Procedure 8(a); (2) the particularity requirements of Rule 9(b) of the Federal Rules of Civil Procedure; and (3) the heightened pleading requirements of the Private Securities Litigation Reform Act of 1995 ("PSLRA"). See In re Daou Systems, Inc., 411 F.3d 1006, 1014 (9th Cir. 2005)(citing Semegen v. Weidner, 780 F.2d 727, 729 (9th Cir. 1985); Neubronner v. Milken, 6 F.3d 666, 671 (9th Cir. 1993). Under the PSLRA, a securities fraud complaint must now "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." Gompper v. VISX, Inc., 298 F.3d 893, 895 (9th Cir. 2002) (citing 15 U.S.C. 78u-4(b)(1)).

**A. Materially False or Misleading Statements or Omissions**

Defendants contend Plaintiffs cannot base a securities claim on Defendants' failure to accuse themselves of wrongdoing, Plaintiffs fail to plead that any of the statements they challenge are misleading, and each one of the challenged statements is an inactionable statement of "puffery" or opinion.

Plaintiffs argue they sufficiently allege numerous actionable statements and omissions. Specifically, Plaintiffs argue Defendants misled investors that Qualcomm offered licenses to the entire cellular industry, including Defendants' assertions that:

Qualcomm "make[s] [its patents] available to the industry through its licensing program. . . . It allows more and more competition to get into the marketplace where there is no way they would be able to otherwise." Complaint ¶¶157-58.

"[W]e figured out that the right business model was to actually focus on licensing the inventions, essentially through the standards bodies so that the entire market could play, instead of practicing the inventions ourselves. . . ." Id. ¶¶168-69.

"[W]e broadly license our portfolio of U.S. and foreign patents to virtually every manufacturer in the mobile industry." Id. ¶¶136-37.

We license "to interested companies on terms that are . . . free from unfair discrimination." Id. ¶¶138-39, 151-52.

Qualcomm "created this unique business model of not holding our patents to ourselves to advantage our own products, but creating a product of them and broadly licensing them on a pro-active basis." Id. ¶¶161-62.

Plaintiffs contend the statements were false, misleading, and omitted material facts because Qualcomm refused to license its patents to an entire segment of the industry, namely rival chipset manufacturers, while touting its "non-discriminatory" licensing to the industry.

**1. No duty to Accuse Itself of Wrongdoing**

Defendants maintain, in this circuit, a defendant does not have an affirmative duty to accuse itself of wrongdoing, rather, the law provides that a defendant's culpability need not be disclosed until it is at least charged or proven. Defendants contend the complaint contains no allegation that Defendants failed to disclose any dispute concerning Qualcomm's compliance with the antitrust laws or FRAND[3] commitments. Instead, they

---

[3] According to Plaintiffs, wireless industry participants required Qualcomm to commit to the industry's standard-setting bodies that they would license Qualcomm's patents essential to the Code-Division Multiple Access ("CDMA") standard to all companies on a "fair, reasonable, and non-discriminatory basis" and Qualcomm and its executives made and reaffirmed this commitment, known as the "FRAND" commitment, prior to

5

maintain, Plaintiffs build their case around the idea that Defendants disclosed the allegations against them but were also required to disclose that the allegations were true at some point before. Defendants argue, even if Qualcomm had committed any of the relevant violations, they had no duty to disclose any potentially illegal conduct the instant it was committed. Defendants argue Plaintiffs' purported securities claim, which was created by cherry-picking and misconstruing the disclosures Plaintiffs challenge and by applying meaning to those statements that is not reasonably supported, should be rejected.

Plaintiffs argue Defendants incorrectly claim Plaintiffs allege a duty to admit to antitrust violations. Plaintiffs maintain they allege that Defendants, in touting Qualcomm's licensing practices, were required to do so in a truthful and non-misleading manner, including by disclosing Qualcomm's policy of refusing to license competitors. Therefore, they argue, Defendant inaccurately represented its business practices to investors.

In reply, Defendant contends Plaintiffs' approach that Defendants had to disclose certain business practices fails because the business practices are relevant to investors only because Plaintiffs believe the practices are unlawful. Because Plaintiffs offer no argument as to why Qualcomm had to disclose it was committing antitrust violations when it believed it was not, Defendants argue, the complaint fails.

In the complaint, Plaintiffs allege Defendants falsely represented it licensed its standard-essential patents on a non-discriminatory basis and did not "bundle" the terms of its license and chipset agreements, but, instead, it exploited its position to suppress competition, drive out its rivals and extract supra-competitive royalties by refusing to offer licenses and doling out royalty relief to those that agreed to purchase its chipsets. Complaint ¶ 1, 5-7, 10, 11, 13-15, 50, 51, 64-66, 69-74, 76, 77, 79, 80, 83, 84, 86-90, 96, 100-103, 106-112, 120, 130, 131, 133, 135-187, 220. They further allege regulators

---

adopting Qualcomm's CDMA as a cellular standard to allow cellular devices and cellular networks to interact. Complaint ¶¶ 4, 5.

brought enforcement actions against Qualcomm for its anti-competitive licensing model resulting in the stock price plummeting. Id. ¶ 2, 12, 80, 92, 93, 95, 121-126, 129, 211, 213, 216, 217, 221, 224, 225, 229, 230, 232-234.

A company is not required to accuse itself of wrongdoing. In re Volkswagen "clean Diesel" Marketing, Sales Practices, and Products Liability Litigation, 258 F.Supp.3d 1037 (N.D.Cal. 2017) (citing In re Citigroup, Inc. Securities Litigation, 330 F.Supp.2d 367 (S.D.NY. 2004). However, a defendant who chooses to tout positive information to the market is obligated to do so in a manner that will not mislead investors. Schueneman v. Arena Pharmaceuticals, Inc., 840 F.3d 698, 706 (9th Cir. 2016) (citations omitted); see also In re Providian Financial Corp. Securities Litigation, 152 F.supp.2d 814, 824-25 (E.D.Penn. 2001) (Reasoning that, while the defendant had no duty to disparage its business practices, when it put the issue of its success in play by making statements attributing its success to a certain business practice, it was required to disclose information concerning the source of its success).

The Court finds Plaintiffs do not seek to impose liability for Defendants' failure to accuse itself of wrongdoing. Rather, the allegations claim Defendants' affirmative statements regarding their business practices of providing licenses in a non-discriminatory manner were false.

**2. False or Misleading**

Defendant contends none of Plaintiffs' four categories of alleged misstatements, (a) broad and non-discriminatory licensing practices, (b) decades long practices, (c) separate businesses, (d) competitiveness, is false or misleading to a reasonable investor, particularly when considered fairly and in context.

**a. Broad and Non-discriminatory Licensing Practices**

Defendants maintain their statements are accurate on their face and the public statements made it clear to investors that Qualcomm does not license chipset makers. Specifically, they contend the statement that Qualcomm makes its patents available to the industry through its licensing program is consistent with its statements describing its

practice of licensing device makers and offering rights to chipset makers that provide freedom of operation with respect to their business. Additionally, they contend the terms "broadly" and "non-discriminatory" do not mean Qualcomm licenses all firms or all types of firms, and Plaintiffs plead no facts suggesting otherwise. They further contend statements that Qualcomm shares its IP with an undefined market or industry do not say anything about whom specifically Qualcomm licenses. Defendants argue Plaintiffs read detail into their general statements that is not there. They maintain a reasonable investor, reading their statements in context, would not have understood them to mean that Qualcomm licenses chipset makers.

Defendants also argue Plaintiffs' challenge to Defendants' statements about the Company's "non-discriminatory" licensing practices fares no better. They maintain the statement that Qualcomm will offer to license its essential patents on a FRAND basis is neither untrue nor misleading. Additionally, to the extent Plaintiffs assert that Qualcomm breached its FRAND commitments, Plaintiffs allege, at most, a breach of contract which does not constitute federal securities fraud under section 10(b).

Plaintiffs maintain Defendants' contention that their statements that Qualcomm licenses to the entire industry were accurate because the wireless industry supposedly excludes chipset makers is belied by the allegations of the complaint.

Defendants, in reply, argue Plaintiffs misquote Defendants and the actual statements are accurate and do not support Plaintiffs' contention that Defendant mislead investors to believe they license chipset makers. They also argue Plaintiffs' rely on statements made prior to the class period. They further maintain they made it clear to investors they had separate arrangements with chipset makers from license agreements they offered to device and equipment makers.

Plaintiffs' allegations suggest Defendants' statements that they "broadly license…to virtually every manufacturer in the mobile industry", they offer to license on a "basis free from discrimination", they facilitate competition, make their patents "broadly" available, and promote a highly competitive wireless industry are false because they refused to license

8

chipset manufacturers. See Complaint ¶¶ 137-141, 145, 149-187. As noted by Plaintiffs, the allegations of the complaint assert the telecommunications industry includes chipset makers. See id. ¶¶4, 33. While some of the quoted statements appear to be incomplete, Plaintiffs allege numerous statements that are not challenged as inaccurate by Defendant and are alleged to have been made during the class period. Assuming the truth of the allegations, the industry at issue includes chipset manufacturers and Defendants' alleged statements about its broad, fair and non-discriminatory licensing practices are false in that context. As such, Plaintiffs sufficiently allege Defendant made false or misleading statements regarding its broad and non-discriminatory licenses practices.

**b. Decades-long Practices**

Plaintiffs allege Defendants misled investors when they stated that Qualcomm's pro-competitive licensing practices have been maintained for almost two decades because, Qualcomm revised its licensing model in 2008, and refused to license chipset makers, and bundled license and chip-sale agreements. See Complaint ¶¶ 173, 174. Defendants argue this claim fails because none of the statements Plaintiffs challenge refers to chipset licensing. Rather, Defendants maintain, the statements refer to the practice of licensing device makers and charging device-level royalty rates for those licenses, and Plaintiffs do not contest this practice has been used by Qualcomm for decades. Defendants also argue the claim fails because they have repeatedly disclosed that they do not license chipset makers.

Plaintiffs argue the allegations show Defendants misled investors into believing Qualcomm had not changed its licensing practice for decades, but instead, broke from its licensing policy in 2008, and began refusing to license rival chipmakers. They maintain the statements were made to investors who were focused on allegations of Qualcomm engaging in anti-competitive behavior by refusing to license competitors.

In reply, Defendant contends the statements challenged would not mislead investors because they relate to licensing device makers only.

In the complaint, Plaintiffs allege Defendants stated their licensing practices which have been maintained for almost two decades were pro-competitive. Complaint ¶ 173. Plaintiffs allege this statement was misleading because Qualcomm revised its licensing model in 2008 and maintained a policy of refusing to license competitor chipset manufacturers. Id. ¶ 174. They further allege Defendant Rosenberg stated that Defendant's licensing model of sharing intellectual property, which had been effect for decades, has enhanced competition. Id. ¶ 177. Plaintiffs assert the statement was false because the licensing model was revised in 2008 to refuse to license competitor chipset manufacturers. Id. ¶ 178. They also allege Defendant Rosenberg stated that "'[w]hen we charge our license, it will be fair, reasonable and non-discriminate. We have done that for 30 years.'" Id. ¶181. They assert the statement was false because since 2008, the Company had discriminated against, and refused to license its standard-essential patents to, an entire segment of the industry—namely, its competitor chipset manufacturers. Id. ¶ 182.

Plaintiffs sufficiently allege Defendants misled investors when it made statements about its licensing practices being decades old.

**c. Separate Businesses**

Plaintiffs allege Defendants made false and misleading statements when they told investors that Qualcomm keeps their licensing business and chipset business separate because Qualcomm bundled the two and refused to license competitors to their chipset business. Id. ¶¶ 142, 143, 146, 147. Defendants maintain they actually said they "tend to" and "try to" keep the businesses separate and argue, that on their face, the statements are not guarantees in that there are no points of contact between the two. At most, Defendants argue, the statements disclose that they aim to keep the businesses separate and Plaintiffs do not allege that is untrue.

Plaintiffs argue the complaint details how Qualcomm bundled the negotiations and terms of its license and chipset deals which demonstrates the misleading nature of Defendants' statements that they did not bundle and kept the two separate. Additionally, they argue Defendants' contention that they actually said "tend to" or "try to" ignores

statements made by Defendants Aberle and Mollenkopf that definitively express Qualcomm does not bundle their licenses with chipset agreements. Plaintiffs also argue whether reasonable investors understood Qualcomm's actual licensing practices cannot be resolved at this stage of the proceedings.

In support of their claims, Plaintiffs allege Defendant Aberle stated Qualcomm "tend[ed] to" keep the business separate. Id. ¶ 143. However, they also allege Defendant Aberle told investors during an investor conference that Qualcomm keeps licensing and the chip business separate and does not bundle, and Mollenkopf specifically stated the business were separate. Id. ¶¶142, 146. Plaintiffs allege, with sufficient specificity, that Defendants misrepresented that Qualcomm did not bundle and kept the licensing business and chipset business separate.

**d. Competitiveness**

Defendants contend Plaintiffs' allegation that Defendants described their business model as pro-competitive when they adopted licensing policies that stifled competition to achieve market dominance is unsupported. Specifically, Defendants argue Plaintiffs allege Qualcomm dominated the chipset market but the alleged misleading statements about competition only refer to the wireless industry.

Plaintiffs contend wireless chipset makers are part of the wireless industry. They further contend the attempt to advance a unilateral interpretation of the contours of the wireless industry raises, at most, a factual dispute not properly resolved at the pleading stage.

Defendants' argument suggests the chipset market is separate and distinct from the telecommunications or wireless industry. However, the allegations of the complaint asserts Defendants' allegedly anticompetitive conduct resulted in chipset manufacturers exiting the telecommunications industry and wireless industry. Id. ¶¶ 4, 10, 70. Accordingly, Plaintiffs sufficiently allege false or misleading statements regarding Defendants' competitiveness.

//

### 3. Expressions of Puffery or Opinion

Defendants argue Plaintiffs' challenges to Defendants' statement regarding (a) broad and non-discriminatory licensing, (b) decades-long practices, (c) separate versus bundled businesses, and (d) competitiveness in the industry fail because they are statements of puffery or opinion that do not give rise to liability.

Generalized or vague statements of opinion constitute "puffery" and are not actionable because a reasonable investor cannot be expected to rely on the statements. See Glen Holly Entertainment, Inc. v. Tektronix, Inc., 352 F.3d 367, 379 (9th Cir. 2003). "'Puffing' concerns expressions of opinion, as opposed to knowingly false statements of fact." Oregon Public Employees Retirement Fund v. Apollo Group, Inc., 774 F.3d 598, 606 (9th Cir. 2014).

#### a. Broad and Non-discriminatory Licensing Practices

Defendants contend terms like "broad" and "non-discriminatory" are not precise terms capable of objective verification and are, therefore, not actionable. Additionally, they contend their statements describing Qualcomm's licensing as non-discriminatory is done in the context of its FRAND commitments and whether a practice is non-discriminatory under the FRAND commitments is a legal opinion. Defendants maintain Plaintiffs do not allege that Defendants disbelieved their own statements about acting in a "non-discriminatory" manner or disclosed any untrue facts as the basis for those statements. They further maintain that they believe their statements about acting in non-discriminatory manner does not require the licensing of all for all purposes.

Plaintiffs maintain Defendants ignore the fact that a court may not assess statements in a vacuum. They argue Defendants not only stated they licensed broadly and in a non-discriminatory manner, they also specifically stated they broadly license their patents to "virtually every manufacturer in the mobile industry" and they make their licenses available to "the entire market." Pla's Opp. at 11 (citing Complaint ¶¶ 136, 168). Plaintiffs also argue Defendants' statements were representations of fact not opinions as they do not reference the speaker's subjective attitude and admitted no uncertainty. Additionally, they

12

17cv00121 JAH-WVG

argue the statements are not legal opinions, and even if they were, they are still actionable because they omitted the critical fact that Qualcomm refused to license to a key segment of the industry.

The Court rejects Defendants' invitation to remove the terms "broad" and "non-discriminatory" from their context in the complaint in determining whether Defendants' statements amounted to mere puffery. This Court may not assess the statements listed in the Complaint in a vacuum, "plucking the statements out of their context to determine whether the words, taken per se, are sufficiently 'vague' so as to constitute puffery, but [must] examine the entire statement and its circumstances to determine if it is actionable." Mulligan v. Impax Labs., Inc., 36 F. Supp. 3d 942, 966 (N.D. Cal. 2014) (citing Scritchfiled v. Paolo, 274 F.Supp.2d 136, 176 (D.R.I 2003)); see also Casella v. Webb, 883 F.2d 805, 808 (9th Cir. 1989) ("What might be innocuous "puffery" or mere statement of opinion standing alone may be actionable as an integral part of a representation of material fact when used to emphasize and induce reliance upon such a representation."). In the complaint, Plaintiff allege Defendants made statements that they license patents broadly on non-discriminatory terms including statements that Defendants promote competition by licensing to the entire industry. Complaint ¶¶ 70, 136, 138, 140, 149, 153. In reviewing the allegations in the light most favorable to the non-moving party, the Court finds the statements do not reflect an opinion but assert facts about Qualcomm's business practices. To the extent any of the statements may suggest an opinion as to the successful business practices, they are not "so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their unimportance" and, therefore, are not properly dismissed at this stage of the proceedings. In re Ford Motor Co. Sec. Litig., Class Action, 381 F.3d 563, 570 (6th Cir. 2004).

**b. Decades-long Practices**

Defendants also argue vague statements about practices or models that have been maintained for decades are too subjective to be actionable.

13

17cv00121 JAH-WVG

Plaintiffs contend there is nothing too subjective about Defendants' representations that Qualcomm maintained the same licensing model and practices for two decades. Specifically, Plaintiffs contend Defendants' statements created a false impression that Qualcomm's practice of licensing to anyone had not changed to investors who were focused on regulators' allegations that Qualcomm engaged in anti-competitive conduct.

Plaintiffs allege Defendants issued a press release in response to a regulators report that claimed Qualcomm suppressed market competition by excluding competitors, and stated the allegations in the report were not supported by facts and that Qualcomm continued its pro-competitive licensing practices for almost two decades. Complaint ¶ 71. The Court finds the statements regarding their decades long practices were not expressions of opinion amounting to mere puffery but rather representations of fact that their broad licensing practices remained unchanged.

### c. Separate Businesses

Defendants argue their statements that they "try" or "tend" to keep their licensing business and chipset business separate are, by their nature, subjective and must be rejected as not objectively verifiable. Additionally, they argue whether a firm "bundles" is a legal determination that is based on subtle and complex legal judgment and opinion which does not provide a basis for securities fraud. Defendants further argue Plaintiffs fail to allege Defendants disbelieved their own statements or disclosed any untrue facts as the basis for the statements.

As discussed above, Plaintiffs allege Defendant Aberle told investors during an investor conference that Qualcomm keeps licensing and the chip business separate and does not bundle, and Defendant Mollenkopf specifically stated the businesses were separate. Id. ¶¶142, 146. These statements are representations of fact not opinions as to whether Defendants keep their business separate.

### d. Competitiveness

Defendants contend Plaintiffs' claim that reasonable investors were misled by Qualcomm's statements about the degree of competitiveness in the wireless industry fails

because courts regularly consider statements characterizing "competitiveness" to not be actionable under the securities laws. They further argue the statements are protected to the extent they are opinions expressed by Defendants.

Plaintiffs argue courts hold competition statements are actionable when, like here, the defendant allegedly engaged in anti-competitive behavior.

In support of their argument Defendants cite <u>Kmiec v. Powerwave Tech. Inc.</u>, 2013 WL 261365 (N.D.Cal. Jan. 25, 2015) and <u>In re Software Publ'g Sec. Liti.</u>, 1994 WL 261365 (N.D.Cal. Feb. 2, 1994). <u>Kmiec</u> involved statements promoting the companies' competitiveness and were found to be puffery because they were vague and provided no specific details regarding the companies' performance. The court in <u>In re Software Publ'g Sec. Liti.</u>, found optimistic statements about the companies' ability to compete were not actionable. The statements in those cases differ from those Plaintiffs allege Defendants made here. Defendants are alleged to have touted their pro-competitive licensing model while engaging in policies that actually blocked competition. 130, 132, 133, 144, 145, 159, 160, 166, 167, 173, 174, 175, 176, 199. These statements amount to more than vague optimistic representations of the companies' competitiveness in the market. They allege Qualcomm represented that it provided licenses to competitors to promote competition in the market while actually practicing anti-competitive conduct. The Court finds the statements actionable.

**e. Opinion**

Defendants also argue Plaintiffs' statements of opinion are not actionable because they were surrounded by meaningful cautionary language that informed investors expressly that Qualcomm faced antitrust and FRAND risk.

Plaintiffs argue Defendants' contention that they warned investors that Qualcomm could be subject to future regulatory action is a red herring. They maintain their claims are focused on the inadequacy of Defendants' disclosures about Qualcomm's actual licensing practices, not whether it faced antitrust and FRAND risk. They further maintain none of Defendants' cautionary language mentions that Qualcomm altered its licensing program,

refused to license competitors, and bundled its chipset and license deals, all of which was vital information that was kept hidden from investors. Upon review of the complaint, the Court agrees with Plaintiffs.

**B. Scienter**

Defendants argue Plaintiffs' claims fail because they fail to sufficiently plead that Defendants acted with scienter. The PSLRA requires complaints alleging federal securities fraud to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). Therefore, a private securities plaintiff "must allege that the defendants made false or misleading statements either intentionally or with deliberate recklessness." Daou, 411 F.3d at 1015 (citing In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 974 (9th Cir. 1999)). The strict pleading standard for scienter is the same standard applied in pleading falsity because "'falsity and scienter in private securities fraud cases are generally strongly inferred from the same set of facts,' and the two requirements may be combined into a unitary inquiry under the PSLRA." Id. (citing In re Vantive Corp. Sec. Litig., 283 F.3d 1079, 1091 (9th Cir. 2002)).

Defendant contends Plaintiffs' "over-arching theory of scienter", that Defendants knew or were deliberately reckless as to the fact they were violating antitrust law, fails because the only inference is that Defendants did not know this as they have been fighting against allegations of antitrust violations for years. They further contend Plaintiffs fail to plead scienter as to the individual defendants. Additionally, they contend Plaintiff's alleged seventeen bases for scienter are actually a few overlapping and unsuccessful theories, namely (1) core operations; (2) Defendants admitted to FRAND commitments and antitrust violations; (3) non-disclosure provisions of their contractual terms; (4) and Defendants' motive of a financial incentive and they all fail.

Defendants maintain many of Plaintiffs' allegations rest on the same theory: because licensing is significant to Qualcomm, Defendants must be presumed to have known that their statements about licensing were false. Defendants argue this theory fails because nothing in the complaint suggests that Defendants' statements were false, and no matter

how significant certain operations may be, it is only false statements concerning those operations that can ever lead to a presumption of scienter. Defendants further argue, even if Plaintiffs have alleged a false statement, they fail to allege that it would be absurd to suggest that management was without knowledge of the matter, and Plaintiffs' related allegations that Defendants' positions in the Company and understanding of Qualcomm's business fail to bolster their theory. Defendants contend their knowledge of Qualcomm's business practices is irrelevant. What is relevant, they contend, is whether Plaintiffs plead facts suggesting Defendants believed they were lying to investors and, they argue, Plaintiffs fail to do so.

Defendants maintain Plaintiffs allege that Defendants admitted they do not license competitors and have publicly acknowledged, or, alternatively, should have known, that refusing to license competitors violates FRAND commitments and antitrust law. Defendants assert they clearly and repeatedly disclosed Qualcomm does not license competitors and deny they violated FRAND commitments. Defendant contend Plaintiffs cite to two statements in support of this proposition that are outside the Class Period and simply suggest Defendants understood that FRAND commitments do not allow a wholesale refusal to license or discriminating against similarly situated firms.

Defendants also contend Plaintiffs allege that Qualcomm's use of contractual terms with the express purpose of silencing parties from reporting to authorities is evidence of scienter. But, they argue, the inference Plaintiffs attempt to draw has nothing to do with Plaintiffs' allegations. They maintain Plaintiffs' allegations regarding so-called "no challenge" provisions in Qualcomm's agreements with device makers have no silencing effect on issues related to unlicensed chipset makers. Additionally, they argue a company's legitimate desire to secure confidentiality does not state a claim for securities fraud.

Defendants also argue Plaintiffs attempt to establish motive based on Defendants' purported financial incentive to conceal their actual licensing model fails because the allegations are vague and unavailing. Specifically, they argue simple allegations of pecuniary motive do not raise an inference of scienter and allegations that Defendants' pay

17

was heavily weighted on stock awards and other incentive compensation fail to provide the correlation between compensation and Qualcomm's bottom line. Additionally, they argue there is no evidence of insider trading or stock price abnormalities, and incentive-based competition is commonplace and favors shareholders.

Plaintiffs maintain Defendants admit in their motion that they knew Qualcomm's actual licensing practices, which included its refusal to license competitor chipmakers. Having done so, Plaintiffs argue, they cannot now feign ignorance of them. Moreover, Plaintiffs argue the complaint contains abundant, particularized allegations that collectively give rise to a strong inference of scienter, including that Defendants had direct and personal roles in Qualcomm's licensing and chipset practices as the architects of the licensing program, and leading and active negotiators of its license and chipset deals. Additionally, Plaintiffs assert Defendants' misstatements concerned matters of such prominence to Qualcomm's business that it would be absurd to suggest that Defendants were without knowledge of Qualcomm's true licensing practices when speaking on the subject.

Plaintiffs also argue the scienter inference is strengthened because Defendants made their statements at a time when regulators were investigating whether Qualcomm engaged in the very licensing practices at issue, making it particularly implausible that Defendants did not know that Qualcomm, in fact, engaged in these practices. Furthermore, Plaintiffs argue, Defendants, as the chief architects of Qualcomm's licensing program, made repeated and specific representations to investors about the program, and the repeated touting of the program without disclosing the adverse information raises a strong scienter interest. They also argue Defendants' deliberate effort to interfere with an ongoing regulatory investigation by attempting to block Apple from disclosing their anti-competitive practices reinforces the scienter inference.

Plaintiffs maintain Defendants are mistaken in their argument that Plaintiffs must allege they believed Qualcomm was violating antitrust law because whether they believed in good faith their licensing practices were lawful is beside the point. Instead, they argue,

it's the failure to disclose issues and concerns that matter. Contrary to Defendants' contention, Plaintiffs maintain they are not required to demonstrate Defendants believed they were lying to investors because a defendant who recklessly turned a blind eye to impropriety is equally culpable conduct under Rule 10b-5. They further argue, even if evidence were required that Defendants "actually knew" its practices violated its commitment to license in a non-discriminatory manner, there is such evidence in this case.

In reply, Defendants argue Plaintiffs' allegations of scienter suggest Defendants knew of the licensing practices, which, they argue is not enough. Instead, they maintain, Plaintiffs must plead that not disclosing the practices was highly unreasonable omission which is an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that he must have been aware of it. Defendants contend Plaintiffs assert Defendants underlying impropriety is that certain Qualcomm licensing practices violated antitrust laws and FRAND commitments, but Defendants' public statements made clear that Defendants did not turn a blind eye to the risk of antitrust liability and, instead, repeatedly disclosed the material allegations against it, and contested every allegation.

As an initial matter, Defendant argues Plaintiffs fail to allege scienter because they fail to allege any false statements. As discussed in depth above, the Court finds Plaintiffs sufficiently allege false statements by Defendants. Furthermore, Plaintiffs allege Defendants publicly acknowledged that refusing to license competitors was discriminatory and in violation of FRAND commitments, the purported commitment to non-discriminatory licensing was a critical company policy, and that their refusal to license competitors was unprecedented. Complaint ¶¶ 190 - 193. They further allege the executive defendants were directly and extensively involved in developing and maintaining the licensing model and sales agreements, the executive defendants participated in and supervised negotiations that tied together technology licensing and chipset sales, the executive defendants also made statements to investors about the licensing model, and issued specific denials about the anticompetitive practices in response to questions from

19

17cv00121 JAH-WVG

analysts and investors. Id. ¶¶ 195 – 198. Additionally, they allege Defendants continued to deny and conceal Qualcomm's true licensing practices even after regulators raised concerns, they knew investors were focused on their licensing model, and they certified they license on a fair, reasonable and non-discriminatory basis. Id. ¶¶ 199 – 201. Plaintiffs also allege the anti-competitive practices were directed at their biggest customers and competitors, industry participants and key customers complained to the executives about their refusal to license competitors, which was a serious violation of the law. Id. ¶¶ 202 – 204. Furthermore, Plaintiffs allege Defendants' policy of refusing to license competitors enabled them to establish market dominance. Id. ¶ 205. Plaintiffs further allege the executive defendants insisted that their contractual counterparties accept "gag orders" and "no challenge" provisions in their agreements to shield the Company's anti-competitive practices, they were financially motived to conceal the licensing model and they capitalized on their misleading statements by disposing of personally held shares at artificially inflated prices. Id. ¶¶ 206 – 208.

The Court finds the allegations, which include actions by the individual defendants give rise to a strong inference that Defendants acted with the required state of mind.

Accordingly, Defendant's motion to dismiss the section 10(b) claim is DENIED.

**II. Section 20(a)**

Because the Court finds Plaintiffs sufficiently allege a claim under section 10(b), Defendant motion to dismiss the section 20(a) claim on the same grounds fails.

**CONCLUSION AND ORDER**

Based on the foregoing, IT IS HEREBY ORDERED, Defendants' motion to dismiss is DENIED.

DATED: March 18, 2019

_____
JOHN A. HOUSTON
United States District Judge