**BERNSTEIN LITOWITZ BERGER**
  **& GROSSMANN LLP**
JONATHAN D. USLANER (Bar No. 256898)
jonathanu@blbglaw.com
RICHARD D. GLUCK (Bar No. 151675)
rich.gluck@blbglaw.com
LAUREN M. CRUZ (Bar No. 299964)
lauren.cruz@blbglaw.com
2121 Avenue of the Stars, Suite 2575
Los Angeles, CA 90067
Tel: (310) 819-3470

**MOTLEY RICE LLC**
GREGG S. LEVIN (*Pro Hac Vice*)
glevin@motleyrice.com
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
Tel: (843) 216-9000

*Counsel for Lead Plaintiffs and*
*Lead Counsel for the Class*

[Additional Counsel Appear on Signature Page]

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE QUALCOMM INCORPORATED SECURITIES LITIGATION | Case No. 3:17-cv-00121-JO-MSB<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LEAD PLAINTIFFS' MOTION *IN LIMINE* RE: ADMISSIBILITY OF TESTIMONY IN THE *FTC ACTION***<br><br>Judge: Hon. Jinsook Ohta<br>Hearing Date: July 20, 2022<br>Time: 9:00 a.m.<br>Courtroom: 4C<br><br>No oral argument unless requested by the Court |

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................1

II.   FACTUAL BACKGROUND.....................................................................2

   A.    This Motion Requires Immediate Resolution .......................................6

   B.    Qualcomm Should Not Be Permitted To Renege On Its
         Agreement To Treat Testimony From The *FTC Action*
         As If Taken In This Action ...................................................................8

   C.    The Federal Rules Permit Lead Plaintiffs To Use The
         Testimony From The *FTC Action* .......................................................10

         1.    Testimony From The *FTC Action* Is Admissible
               Under FRE 804(b)(1).................................................................10

         2.    Alternatively, The Testimony From The *FTC
               Action* Is Admissible Under FRCP 32(a)................................14

   D.    If The Transcripts From The *FTC Action* Are Deemed
         Not Admissible, The Case Schedule Requires
         Modification .......................................................................................16

III.  CONCLUSION.........................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Apotex, Inc. v. Cephalon, Inc.*,
  2017 WL 2362400 (E.D. Pa. May 31, 2017)......................................................13

*Bank of New York Mellon v. Nevada Assn. Services*,
  2020 WL 3118413 (D. Nev. May 27, 2020), *appeal dismissed sub
  nom. Bank of New York Mellon as Tr. for Certificateholders of
  CWALT, Inc., Alternative Loan Tr. 2005-3CB, Mortg. Pass-
  Through Certificates, Series 2005-3CB v. Nevada Ass'n Servs.,
  Inc.*, 2021 WL 2832912 (9th Cir. Apr. 9, 2021).................................................14

*Brighton Collectibles, Inc. v. Coldwater Creek Inc.*,
  2009 WL 10671818 (S.D. Cal. Apr. 22, 2009) ....................................................11

*Brown v. Nexus Bus. Sols., LLC*,
  2018 WL 2291291 (N.D. Ga. Apr. 24, 2018)........................................................9

*Fed. Trade Commn. v. Qualcomm Inc.*,
  411 F. Supp. 3d 658 (N.D. Cal. 2019)..................................................................4

*Fullerform Continuous Pipe Corp. v. Am. Pipe & Const. Co.*,
  44 F.R.D. 453 (D. Ariz. 1968).....................................................................15, 16

*Hangarter v. Provident Life & Acc. Ins. Co.*,
  373 F.3d 998 (9th Cir. 2004) ...............................................................................11

*Hoist Fitness Sys., Inc. v. TuffStuff Fitness Intl., Inc.*,
  2019 WL 121195 (C.D. Cal. Jan. 7, 2019) ...........................................................9

*Hub v. Sun Valley Co.*,
  682 F.2d 776 (9th Cir. 1982) ...............................................................................15

*Hynix Semiconductor Inc. v. Rambus Inc.*,
  250 F.R.D. 452 (N.D. Cal. 2008)...................................................................11, 14

*Matter of Johns-Manville/Asbestosis Cases*,
  93 F.R.D. 853 (N.D. Ill. 1982).............................................................................13

*Kaplan v. Mayo Clinic*,
  2008 WL 11327400 (D. Minn. Sept. 17, 2008)......................................................9

*Kreitman v. Fla. Dept. of Corr.*,
   2020 WL 12188711 (N.D. Fla. Nov. 30, 2020)..........................................7, 15, 16

*Murray v. Toyota Motor Distributors, Inc.*,
   664 F.2d 1377 (9th Cir. 1982) ................................................................13

*Nationwide Life Ins. Co. v. Richards*,
   541 F.3d 903 (9th Cir. 2008) .................................................................10

*Oracle Am., Inc. v. Hewlett Packard Enter. Co.*,
   2017 WL 1436080 (N.D. Cal. Apr. 24, 2017)..............................................7, 16

*Scotti v. Natl. Airlines*,
   15 F.R.D. 502 (S.D.N.Y. 1954) ..............................................................7

*Travelers Prop. Cas. Ins. Co. v. Electrolux Home Prods. Inc.*,
   2013 WL 12114615 (C.D. Cal. June 7, 2013) ...................................................15

*U.S. v. McFall*,
   558 F.3d 951 (9th Cir. 2009) .................................................................11

*United States v. Kail*,
   2021 WL 1615368 (N.D. Cal. Apr. 26, 2021)................................................11, 12

*United States v. RAJMP, Inc.*,
   2020 WL 5754915 (S.D. Cal. Mar. 12, 2020) *objections overruled*,
   2020 WL 5752938 (S.D. Cal. Aug. 25, 2020).........................................7, 10, 14

*USA v. Shayota*,
   2016 WL 6093238 (N.D. Cal. Oct. 19, 2016), *aff'd sub nom.*
   *United States v. Shayota*, 934 F.3d 1049 (9th Cir. 2019), and *aff'd*
   *sub nom. United States v. Shayota*, 784 F. App'x 986 (9th Cir.
   2019) ............................................................................................12

*Walker v. Blitz USA, Inc.*,
   2009 WL 10669635 (N.D. Ga. Feb. 24, 2009)...................................................7

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 32(a)(8) ......................................................2, 10, 14

Federal Rule of Evidence 804(b)(1) ........................................................2, 10, 11, 13

McCormick On Evid. § 304 (8th ed.) ...........................................................13

## I.   INTRODUCTION

In *FTC v. Qualcomm Inc.*, Civ. No. 5:17-cv-00220 (N.D. Cal.) (the "*FTC Action*"), Qualcomm, represented by the same defense counsel that represents it and all of the individual defendants in this case, took the testimony of dozens of witnesses from Qualcomm's competitors and licensees, including Samsung, Blackberry, MediaTek, Apple, and Intel.  Over the course of more than 50 deposition days and 500 hours of deposition and trial testimony, those witnesses testified in painstaking detail about how Qualcomm engaged in the same underlying practices at issue in this Action.

Accordingly, Qualcomm's counsel in this Action long ago agreed that the witness testimony from the *FTC Action* would be treated "as if taken in this case." *See* Ex. 1.[1]  This agreement was not only consistent with the Federal Rules of Evidence and Civil Procedure, but it also made eminent sense.  This Action involves the **same** corporate defendant, the **same** defense counsel, the **same** witnesses, and the **same** underlying practices that were at issue in the *FTC Action*.  It would be a colossal waste of time, and a huge and unnecessary burden and expense to all involved, to require the Parties to trek around the globe asking non-party witnesses the same questions that the FTC and Qualcomm have already asked them about Qualcomm's licensing practices at issue in both cases.  Moreover, given that Qualcomm agreed to this fundamental starting point to discovery back at the start of 2020, the entire pretrial schedule in this case was built around that understanding.

But, just last week, Qualcomm's counsel announced that Lead Plaintiffs cannot rely upon testimony from the *FTC Action*.  According to Qualcomm, the Parties' 2020 agreement (which is in writing (*see* Ex. 1)) was somehow subject to conditions (which are nowhere present in the writing and never existed), and Lead

---

[1] All references to "Ex. __" are to the exhibits attached to the accompanying Declaration of Jonathan D. Uslaner in Support of Lead Plaintiffs' Motion *in Limine* Re: Admissibility of Testimony in the *FTC Action*.

Plaintiffs must now re-take the depositions of relevant non-party witnesses across the globe in the face of a continuing pandemic.  Lead Plaintiffs wonder what has changed.  Perhaps Qualcomm seeks to gain advantage because it would not be possible for Lead Plaintiffs to take all of these depositions now given the length of the pretrial schedule and new worldwide travel difficulties.

Qualcomm's about-face not only impermissibly contradicts its counsel's own representations in this case, but it also conflicts with the Federal Rules governing use of testimony from a prior action, including Federal Rule of Evidence 804(b)(1) and Federal Rule of Civil Procedure 32(a)(8).  Indeed, Qualcomm's "agreement" is not, in fact, necessary.  Lead Plaintiffs bring this motion *in limine* to resolve this dispute and keep the current schedule intact.

Courts in this District and elsewhere regularly decide at this pre-trial stage whether testimony from a prior action may be treated as if taken in a later case.  Absent such a ruling now, Lead Plaintiffs will have no choice but to issue dozens of deposition subpoenas to non-parties to ask them the same questions previously asked, necessitating a significant extension of the discovery schedule.  Obtaining depositions from witnesses outside of the country will be a particularly lengthy process.

Consistent with Qualcomm's prior agreement and the Federal Rules, the Court should therefore order that non-party witness testimony from the *FTC Action* may be used as if taken in this Action, with the Parties still free to object to particular testimony on all other evidentiary grounds.  Indeed, while Qualcomm now claims that the non-party testimony is no longer relevant in light of the Ninth Circuit's ruling (a nonsensical position given that the non-parties testified as to the underlying facts and not as to Ninth Circuit law), Qualcomm will retain all such objections.

## II.  FACTUAL BACKGROUND

This case concerns Qualcomm's alleged misrepresentations and omissions about its underlying licensing practices, including (1) its alleged refusal to license

its standard-essential patents to competitor chipmakers; and (2) its alleged bundling of the negotiations and terms of its chipset agreements with its standard-essential licenses.  *See* ECF No. 32.  By engaging in these licensing practices, Qualcomm allegedly violated its commitment to the standard-setting organizations to license its standard-essential patents on a fair, reasonable, and non-discriminatory ("FRAND") basis.   Qualcomm's alleged licensing practices—once revealed—resulted in enforcement actions brought by regulators across the globe, including the Korean FTC, Taiwanese FTC, European Commission, and U.S. FTC; record fines totaling over $1.6 billion; unprecedented civil litigation by Apple, Qualcomm's top customer; and stock drops that erased over $32 billion in shareholder value.

The underlying licensing practices at issue in this Action are the same as those at issue in the *FTC Action* and the other regulatory actions.  Accordingly, in early 2020, Qualcomm agreed, in response to Lead Plaintiffs' document requests in this case, to re-produce "in this Action all non-privileged documents that were produced in response to requests by the plaintiffs" in the *FTC Action*.  Ex. 2.   For the same reason, Qualcomm re-produced in this Action all of the document productions made by the non-parties in the *FTC Action*, including Samsung, MediaTek, Apple, and Intel.  Most pertinent to this motion, Qualcomm also re-produced in this Action a copy of all deposition testimony taken in the *FTC Action*.

In the *FTC Action*, Qualcomm and the FTC deposed virtually all the witnesses relevant to this Action. This includes over 45 third-party witnesses, who were deposed for a total of approximately 300 hours over a span of approximately 50 deposition days concerning Qualcomm's underlying licensing practices at issue in this case.  *See* Ex. 12.  These depositions were taken at locations across the globe, including in Korea, Taiwan, Sweden, Germany, and Hong Kong, and resulted in nearly 10,000 pages of deposition testimony.  Most of these previously-deposed witnesses live outside the Court's subpoena power—and many live outside the United States.  The process for obtaining their depositions now would be extremely

1   time consuming.

2          The testimony from the *FTC Action* is important to demonstrate that

3   Qualcomm engaged in the underlying practices at issue in this case. The testimony

4   includes the accounts of the competitor chipset makers who were subject to

5   Qualcomm's refusal to license, including Samsung, MediaTek, VIA, Intel, Texas

6   Instrument, and LGE. *See., e.g.*, Exs. 7-9.  It also includes the witness accounts of

7   the licensees subject to Qualcomm's bundling tactics, including from Apple, LGE,

8   BlackBerry, Samsung, and VIVO, Motorola and Lenovo.  *See, e.g.*, Exs. 7, 10-11.

9   Recognizing the importance of these third-party accounts, Qualcomm identified in

10  its initial disclosures in this case certain of these previously-deposed witnesses—

11  including from Apple, MediaTek, VIA, and others—as individuals whom

12  Defendants may use to support their defenses.  *See* Ex. 3.[2]

13         Until last week, Qualcomm's counsel never once stated its new position that

14  the many dozens of deposition transcripts and accompanying videos that it produced

15  in this case from the *FTC Action* cannot be used in this case.  Quite the opposite, in

16  fact: Qualcomm's counsel maintained from the outset of this litigation that witness

17  testimony from the *FTC Action **must*** be used, and treated as if taken, in this case.

18  For example, in connection with the Parties' Rule 26(f) submission, Qualcomm's

19  counsel stated that "it would be unfair and unduly burdensome to require individual

20  witnesses who gave extensive testimony in previous matters to sit for another full

21  deposition on essentially the same topics."  *See* Ex. 4.  Counsel for Qualcomm

22  further stated at the time that "Defendants believe that in most cases, Plaintiffs would

23  ───────────────────

24  [2] The need for the testimony of non-Qualcomm witnesses is particularly real in this case to counteract Qualcomm's anticipated trial testimony, which Judge Koh found

25  to be "not credible." *See, e.g.*, *Fed. Trade Comm'n. v. Qualcomm Inc.*, 411 F. Supp.

26  3d 658, 679 (N.D. Cal. 2019) ("The Court does not find [Defendant] Aberle's prepared for trial testimony credible."); *id.* (stating Gonell "also did not testify

27  credibly..."); *id.* ("Qualcomm witnesses [including Defendant Mollenkopf] also

28  lacked credibility in other ways," with their testimony including "long, fast, and practiced narratives on direct examination.").

not need additional deposition of witnesses previously deposed, and that in the exceptional cases where topics arise that Plaintiffs believe were not adequately addressed in such witnesses' prior testimony, a short deposition of less than seven hours should suffice." *Id.*

Qualcomm reiterated the same position throughout the discovery process, culminating in Qualcomm's express written agreement on the subject. Specifically, on January 7, 2020, counsel for Lead Plaintiffs asked counsel for Qualcomm to "confirm that Defendants will agree and do not contest that Lead Plaintiffs may use the deposition, trial transcripts, and videos thereof of any party or non-party witness from the prior actions, as if those depositions occurred in this case." Ex. 1.  Three days later, counsel for Qualcomm confirmed in writing that: (i) "Defendants agree that the parties could treat prior depositions of Qualcomm employees that have been or will be re-produced in this case as taken in this case"; (ii) "[Defendants] are willing to apply this same understanding to depositions of former Qualcomm employees"; and (iii) "Defendants would agree that the parties can treat third-party depositions that have been or will be re-produced in this case as taken in this case for all intents and purpose, subject to the same reservation of rights discussed above." *Id.*  "With that agreement in place," the Parties turned to the separate question of how many additional depositions of Qualcomm witnesses remain necessary in this case. *See id.*

Discovery in this Action resumed in February 2022, following the Court's Order denying Qualcomm's motion for judgment on the pleadings. *See* ECF No. 192.  Shortly thereafter, Lead Plaintiffs requested a meet-and-confer to discuss the case schedule and the appropriate number of Qualcomm depositions.  Consistent with the Parties' prior agreement regarding the use of non-party testimony in the *FTC Action*, Lead Plaintiffs told Defendants that it anticipated requiring 17 depositions of Qualcomm employees and, in accordance with the Parties' prior agreement, no additional testimony of third-party witnesses. Also consistent with the

Parties' prior agreement, Defendants specifically reiterated their long-standing position that Defendants' production of the "prior deposition testimony from the previous antitrust matters" justified limiting the depositions that Lead Plaintiffs need to take in this case. Ex. 5. At Qualcomm's request, the Parties agreed to postpone further discussion of the number of Qualcomm depositions in this matter for a few weeks, ostensibly to provide Qualcomm time to focus on completing its ongoing document production.

Following Qualcomm's additional document productions, Lead Plaintiffs requested that the Parties resume their discussions concerning the appropriate number of depositions of Qualcomm employees in this Action. During the Parties' meet-and-confer last week on this subject, and for the first time, Qualcomm's counsel stated that it no longer agrees that testimony in the *FTC Action* may be treated as if taken in this Action. In response, Lead Counsel explained that Qualcomm's about-face violated the Parties' prior written agreement on the subject, was inconsistent with the Federal Rules and put the entire pre-trial discovery schedule in this case in jeopardy. Qualcomm refused to modify its position, and Lead Plaintiffs requested that Qualcomm put its new position in writing in order to make it clear for the Court; Qualcomm never did, necessitating this Motion to avoid unfair delay while the current pretrial deadlines remain in place.

### A. This Motion Requires Immediate Resolution

As explained above, absent an order clarifying that Lead Plaintiffs may use prior testimony from the *FTC Action*, Lead Plaintiffs will need to start re-deposing dozens of non-party witnesses, asking them the same questions that Qualcomm and the FTC previously asked them—resulting in unnecessary burden, expense, and delay.[3] Faced with virtually identical motions, courts have long recognized that

---

[3] Arguably, Lead Plaintiffs could simply rest on their understanding of the Federal Rules. Knowing Qualcomm's anticipated opposition, however, any risk would be too great of a risk to take in this case given the importance of the non-party testimony

"[t]his issue should not be left to the trial judge to dispose of when the trial arises; it would be too late for the plaintiff to attempt to gather the necessary depositions at that stage of the proceedings should the judge rule adversely to her, and it would be a needless waste of time, effort and money for the plaintiff's counsel to take them in advance if the earlier depositions are usable." *Scotti v. Natl. Airlines*, 15 F.R.D. 502, 503 (S.D.N.Y. 1954); *see also, e.g.*, *United States v. RAJMP, Inc.*, 2020 WL 5754915, at \*3 (S.D. Cal. Mar. 12, 2020) (granting motion during discovery to treat testimony from other action as if taken in the current action); *Oracle Am., Inc. v. Hewlett Packard Enter. Co.*, 2017 WL 1436080, at \*3-4 (N.D. Cal. Apr. 24, 2017) (same).

Addressing similar motions at this same stage in the litigation, courts in this Circuit and elsewhere have explained that:

> The goals of fairness and efficiency would not be advanced by forcing the parties to recreate this testimony. Nor would it be fair or efficient, at this stage, for the parties to haggle over each page [of the depositions], which would inevitably lead to countless further *motions in limine*. The depositions involve substantially the same issues and a common adversary, and [Defendant] will not be unduly prejudiced if the depositions are admitted. [Defendant] is free to conduct further cross-examination of any of the witnesses if it so desires.

*Id.* at \*3.

In sum, a ruling on this motion *in limine* is required at this critical juncture.[4]

_____

in documenting Qualcomm's underlying conduct particularly given Lead Plaintiffs role as fiduciaries of an entire anticipated class of investors.

[4] For the avoidance of doubt, Lead Plaintiffs are not requesting that the Court rule on "other issues that bear on the use of the depositions at trial until such time as the depositions are tendered at trial, including the availability or unavailability of the witnesses, whether the testimony is hearsay, or whether the testimony is relevant to Plaintiff's claims." Lead Plaintiffs do not ask the Court to "decide whether the depositions, or any specific portion of them, are admissible at trial," and notes that "[t]he parties remain free to move in limine for their exclusion as they would any other deposition taken in this action." *Kreitman v. Flor. Dept. of Corr.*, 2020 WL

**B.** **Qualcomm Should Not Be Permitted To Renege On Its Agreement To Treat Testimony From The *FTC Action* As If Taken In This Action**

To start, the testimony from the *FTC Action* should be treated "as if taken in this action" for the simple reason that Qualcomm's counsel already agreed it would be at the start of 2020, and the entire pre-trial schedule was built around that understanding.   As set forth in Exhibit 1, counsel for Lead Plaintiffs wrote to Qualcomm's counsel on January 7, 2020 requesting that it "Please confirm that Defendants will agree and do not contest that Lead Plaintiffs may use the deposition, trial transcripts, and videos thereof of any party or non-party witness from the prior actions, as if those depositions occurred in this case."  Three days later, counsel for Qualcomm confirmed in writing, in pertinent part, as follows:

> As we told you on Monday, Defendants agree that the parties could treat prior depositions of Qualcomm employees that have been or will be re-produced in this case as taken in this case…. We are willing to apply this same understanding to depositions of former Qualcomm employees, to the extent they were testifying about their former Qualcomm employment. Defendants of course reserve the right to object to the admission of testimony on grounds other than the fact that the deposition was taken in a different case, and to elicit additional testimony from such witnesses.
>
> On Monday, you also proposed that to meaningfully limit discovery, the parties should also treat prior depositions of third parties as if taken in this case. While that proposal is far more expansive and far less obvious, in the spirit of compromise and based on your representation that such an agreement would eliminate the need for Lead Plaintiffs to take the depositions of any third parties who were previously deposed in the FTC Action (and given that only two of the third party witnesses on your deposition list were not previously deposed in the FTC Action), Defendants would agree that the parties can treat third-party depositions that have been or will be re-produced in this case as taken in this case for all intents and purpose, subject to the same reservation of rights discussed above.

12188711, at *4 (N.D. Fla. Nov. 30, 2020).  Those issues can—and should—be resolved close to trial, and Qualcomm will retain all of its relevance objections.

1
2
3

<u>With that agreement in place</u>....[discussing the number of additional Qualcomm depositions].

Ex. 1.

4
5
6
7
8
9
10
11
12
13
14

Lead Plaintiffs relied on Qualcomm's agreements and structured their deposition plan and the entire case schedule around them.  Having made those agreements, Qualcomm cannot—two years later, and with a few months left in the discovery schedule—unilaterally renege.  *See* Magistrate Judge Berg's Standing Order, adopting *Attorney Civility and Practice Guidelines*, ("Honor Your Commitments."); *Hoist Fitness Sys., Inc. v. TuffStuff Fitness Intl., Inc.*, 2019 WL 121195, at *3 n.6 (C.D. Cal. Jan. 7, 2019) ("Counsel are presumed to intend to abide by agreements they enter into."); *Kaplan v. Mayo Clinic*, 2008 WL 11327400, at *4 (D. Minn. Sept. 17, 2008) ("In this Court, as in any other, an attorney's word is his bond, and opposing counsel ... should always be able to rely upon counsel's representations without any hesitation.").

15
16
17
18
19
20
21
22
23
24
25
26
27
28

Qualcomm's assertions—that an agreement never existed or contained preconditions that are nowhere in the written agreement—are false.  The plain text of Exhibit 1 disproves Qualcomm's contentions.  Nowhere in Exhibit 1 or anywhere else did Qualcomm impose preconditions upon the Parties' "agreement in place" regarding the treatment of the testimony in the *FTC Action*.  Just the opposite, in fact: Lead Plaintiffs relied upon the Parties' agreement in good faith, including in setting the schedule in this case.  Equally without merit is Qualcomm's latest assertion that Lead Counsel's request that Qualcomm confirm the Parties' agreement somehow disproves there ever was an agreement.  Needless to say, a request to confirm does not give counsel license to rewrite history and renege on an agreement already in place.  *See* Magistrate Judge Berg's Standing Order, adopting *Attorney Civility and Practice Guidelines* ("There may be rare situations where you have to seek relief from an improvident stipulation, or other commitment.  Do not confuse this with rewriting history or reneging on a commitment."); *see also Brown v. Nexus*

*Bus. Sols., LLC*, 2018 WL 2291291, at \*4 (N.D. Ga. Apr. 24, 2018) (directing counsel "to abide by the agreements they make" and adding, "[t]he Court will not accept . . . disregard of the parties' counsel's agreements").

## C. The Federal Rules Permit Lead Plaintiffs To Use The Testimony From The *FTC Action*

Even if Qualcomm's prior written agreement could be cast aside, Lead Plaintiffs are still entitled to use as if taken in this Action the testimony from the *FTC Action*. Two, independent federal rules provide as much: (i) Federal Rule of Evidence 804(b)(1); and (ii) Federal Rule of Civil Procedure 32(a)(8). These rules provide independent, alternative grounds for admissibility of the transcripts in the *FTC Action*. *See Nationwide Life Ins. Co. v. Richards*, 541 F.3d 903, 914 (9th Cir. 2008) (noting these rules each provide an "independent exception to the hearsay rule").

As described below, the testimony from the *FTC Action* is admissible under either Rule.

### 1. Testimony From The *FTC Action* Is Admissible Under FRE 804(b)(1)

Federal Rule of Evidence 804(b)(1) provides that prior testimony of unavailable witnesses is not excluded by the rule against hearsay if two requirements are met. <u>First</u>, the party against whom the testimony is now offered, or its predecessor-in-interest, must have had an "opportunity" to examine or cross-examine the witness in the prior action. *See RAJMP*, 2020 WL 5754915, at \*3. <u>Second</u>, the party must have had a "similar motive" to develop the testimony at the time of the prior examination. *Id.* Both requirements—which are liberally interpreted in this Circuit—are easily met here.

To start, Defendants plainly had an "opportunity" to examine and cross-examine each of the witnesses who testified in the *FTC Action*. Qualcomm's lawyers in the *FTC Action*—who are the same lawyers representing Qualcomm and

all other defendants in this case—attended the depositions and vigorously questioned each of the non-party witnesses in the *FTC Action*.  In fact, Defendants' counsel initiated over half of the non-party depositions in the *FTC Action*, issuing the subpoenas to the non-party witnesses and questioning them for hours about Qualcomm's underlying licensing practices—the same practices that are at issue in this case.  In some instances, those witnesses were questioned by the exact same individuals from Cravath who are defending this case. The "opportunity" requirement is, therefore, clearly met. *See Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1019 (9th Cir. 2004) ("[A] partner of Defendants' counsel, ... cross-examined [the witness]. Defendants therefore had ample opportunity to cross-examine [the witness] and satisfied Fed. R. Evid. 804(b)(1)").[5]

Qualcomm likewise had a "similar motive" to develop the testimony. Under Rule 804(b)(1), all that is required is "similar, but not identical motivation," with the respective motives compared at a "high level of generality." *U.S. v. McFall*, 558 F.3d 951, 963 (9th Cir. 2009).  "The Ninth Circuit has 'not developed a bright-line test for determining similarity of motive' because the analysis is 'inherently a factual inquiry.'" *United States v. Kail*, 2021 WL 1615368, at *5 (N.D. Cal. Apr. 26, 2021).

---

[5] The Executive Defendants were also represented by Qualcomm's same counsel (Cravath) in the *FTC Action* and, again, in this litigation.  Accordingly, they also—through their same counsel—had an opportunity to examine the witnesses in the *FTC Action*.  And even if they did not have such an opportunity, the Executive Defendants qualify as "predecessors-in-interest" to Qualcomm under the "modern test" for Rule 804(b)(1).  Under that test, "'a previous party having like motive to develop the testimony about the same material facts is a predecessor in interest to the present party—'privity is not the gravamen of (Rule 804(b)(1)) analysis.'" *Hynix Semiconductor Inc. v. Rambus Inc.*, 250 F.R.D. 452, 458 (N.D. Cal. 2008); *see also Brighton Collectibles, Inc. v. Coldwater Creek Inc.*, 2009 WL 10671818, at *8 (S.D. Cal. Apr. 22, 2009) (same); ECF. No. 80 ("Qualcomm is obligated and committed to hold the Individual Defendants harmless and to indemnify them to the full extent allowed by law; it is thus Qualcomm, not the Defendants, that is the operative Party for purposes of considering any settlement of this litigation....").

"[T]he Ninth Circuit looks to whether the 'fundamental objective' of the party against whom the evidence is being offered is the same at both proceedings." *Id.* "This approach contrasts with the First and Second Circuits, which take a more fine-grained approach by looking to whether a party took the same side on the same issue and whether the party had the same degree of interest to prevail at each proceeding." *USA v. Shayota*, 2016 WL 6093238, at *15 (N.D. Cal. Oct. 19, 2016).

Here, Defendants had a similar—if not an identical—motive in both the *FTC Action* and this Action. In both Actions, Qualcomm is a defendant, trying to disprove liability, but disputing the underlying facts. In both Actions, plaintiffs challenge Qualcomm's underlying licensing practices as violative of Qualcomm's commitments to the standard-setting organizations, including to license on a "fair, reasonable, and non-discriminatory" basis. In both Actions, Qualcomm seeks to demonstrate that it did not engage in any improper licensing or bundling practices. In both Actions, Qualcomm seeks to show that its licensing practices did not violate its commitment to the standard-setting organizations, and that it did not bundle the sale of its chipsets and license agreements. And in both Actions, Qualcomm seeks to prove that its refusal to license competitors and its license agreements were always "fair, reasonable, and non-discriminatory."

Defendants' conduct throughout this Action further demonstrates that it had a similar motive to develop testimony at issue in both Actions. In response to Lead Plaintiffs' document requests in this case, Defendants re-produced all of the documents that they produced in the *FTC Action.* In response to Lead Plaintiffs' further requests, Qualcomm also re-produced in this Action all of the testimony taken in the *FTC Action.* And, up until last week, Qualcomm agreed that testimony from the *FTC Action* can—and, in fact, **must**—be treated as if taken in this case. Ex. 4.

It is of no moment that Defendants might want to ask these witnesses new questions on other issues. Lead Plaintiffs' burden is **not** to show that the depositions

in the *FTC Action* covered the waterfront of issues in this case.  Rule 804(b) requires a "similar motive"; it does not require an identity of issues, claims or parties.  *See* McCormick On Evid. § 304 (8th ed.) ("Neither the form of the proceeding, the theory of the case, nor the nature of the relief sought need be the same between the proceedings."); *see also Murray v. Toyota Motor Distributors, Inc.*, 664 F.2d 1377, 1379 (9th Cir. 1982) ("The motive need only be 'similar,' not identical."); *Matter of Johns-Manville/Asbestosis Cases*, 93 F.R.D. 853, 857 (N.D. Ill. 1982) ("Defendants appear to suffer from the simplistic notion that a witness' testimony is not admissible unless it deals with all the issues relevant to the litigation. Of course that is not so.").

Defense counsel here can hardly feign otherwise.  In successfully urging a federal court to admit earlier testimony taken by the FTC in a subsequent suit, defense counsel here argued that "[i]t is of no moment ... that the FTC's investigation and subsequent suit differed in some respects—that the FTC did not include a fraud count or include [certain] Defendants in its complaint and was not required to establish fact of injury or damages in its claim for injunctive relief.  What matters under Rule 804(b)(1) is that the FTC and Plaintiffs challenged the same conduct involving a 'substantial identity of issues.'"  *See* Ex. 6; *see also Apotex, Inc. v. Cephalon, Inc.*, 2017 WL 2362400, at *8 (E.D. Pa. May 31, 2017) ("The FTC and Plaintiffs challenged the same allegedly unlawful conduct by the Defendants and those challenges involved a substantial identity of issues").

Moreover, Defendants can, of course, recall any of these witnesses and ask them questions about additional topics, if they believe any issues went un-covered in the *FTC Action*.  That would be far less burdensome for all Parties than starting this entire exercise over from scratch.  Indeed, this is precisely the process that Defendants contemplated for deposition discovery at the outset of this case. *See* Ex. 4 ("Defendants believe that in most cases, Plaintiffs would not need additional deposition of witnesses previously deposed, and that in the exceptional cases where topics arise that Plaintiffs believe were not adequately addressed in such witnesses'

prior testimony, a short deposition of less than seven hours should suffice.").

As courts in this District and elsewhere have explained when confronted with similar challenges to the use of prior testimony, "[t]he additional right to recall individuals previously deposed affords defendants the opportunity to correct, amplify or clarify any existing ambiguities or gaps in the record. While defendants contend this constitutes an incredible burden, it is certainly less burdensome than taking 26 depositions over again from scratch." *RAJMP*, 2020 WL 5754915, at *3; *see also Hynix Semiconductor*, 250 F.R.D. at 459 (explaining "the court gave the Manufacturers the opportunity to further question the witnesses if they felt that there were new issues with which they were concerned"). The same is true in this case.

### 2. Alternatively, The Testimony From The *FTC Action* Is Admissible Under FRCP 32(a)

Rule 32(a)(8) provides a separate, independent basis to treat the testimony from the FTC Action "as if taken in this case." Specifically, Rule 32(a)(8) provides that a deposition from a prior action "may be used in a later action involving the same subject matter between the same parties, or their representatives or successors in interest, to the same extent as if taken in the later action." Fed. R. Civ. P. 32(a)(8).

Courts in the Ninth Circuit have emphasized that the requirements of Rule 32(a)(8) are to be "construed liberally in light of the twin goals of fairness and efficiency." *RAJMP*, 2020 WL 5754915, at *2. "The relevant inquiry is not literal; rather, the court 'focuses on whether the prior cross-examination would satisfy a reasonable party who opposes admission in the present lawsuit.'" *Bank of New York Mellon v. Nevada Assn. Services*, 2020 WL 3118413, at *2 (D. Nev. May 27, 2020).

Each of these requirements is satisfied in this matter—providing another, separate basis to allow use of the testimony in the *FTC Action* as if taken in this case.

To begin with, the actions involve the "same parties." Qualcomm was the main Defendant in each of the Actions, and Defendants' counsel was present at each of the depositions in the *FTC Action*. Accordingly, this requirement is met.

The Actions also involve the same "subject matter," as that requirement is interpreted by the Ninth Circuit. "The 'same subject matter' requirement has been construed liberally to include 'substantial identity of issues,' in the interests of judicial efficiency." *Travelers Prop. Cas. Ins. Co. v. Electrolux Home Prods. Inc.*, 2013 WL 12114615, at *2 (C.D. Cal. June 7, 2013). Significantly, "the two lawsuits need not involve identical issues and parties." *Hub v. Sun Valley Co.*, 682 F.2d 776, 778 (9th Cir. 1982). "The important functional point is whether the party present at the deposition had a similar enough opportunity and motive in the prior litigation to be expected to defend its interests via cross-examination." *Electrolux*, 2013 WL 12114615, at *2.

Here, the FTC Action and this Action involve the "same subject matter": Qualcomm's challenged licensing practices. To prevail on their claims, both Lead Plaintiffs and the FTC need to show that Qualcomm engaged in the challenged licensing practices, including (i) refusing to license competitors; and (ii) bundling the negotiations and terms of its chipset agreements with its standard-essential licenses. Although the two lawsuits do not "involve identical issues," they do not need to under Ninth Circuit law. *See Hub*, 682 F.2d at 778 (noting "the two lawsuits need not involve identical issues and parties."); *Fullerform Continuous Pipe Corp. v. Am. Pipe & Const. Co.*, 44 F.R.D. 453, 455 (D. Ariz. 1968) (stating "this [requirement] does not require total identity of parties and issues, as defendants assert").

It is also of no consequence that the witnesses in the *FTC Action* were not questioned about all the matters relevant to this case. *See Kreitman*, 2020 WL 12188711, at *6 ("Plaintiff's burden is not to show that the [prior] depositions covered *every* issue being litigated in this case."). As courts have explained in rejecting this contention, "to the extent [Defendants] are concerned that the [prior] depositions did not develop testimony on the issues of their 'particular actions or omissions ... and its motives in taking them,' all are free to notice these witnesses'

depositions to conduct further cross-examination on those issues." *Id*. at *7; *see also Fullerform*, 44 F.R.D. 453 at 456 ("The additional right to recall individuals previously deposed affords defendants the opportunity to correct, amplify or clarify any existing ambiguities or gaps in the record."). This approach plainly "would be more efficient than rejecting the depositions altogether and forcing the parties to conduct entirely new depositions from scratch." *Oracle*, 2017 WL 1436080, at *3.

It is equally irrelevant that the Ninth Circuit ultimately reversed Judge Koh's finding that Qualcomm's licensing practices constituted a violation of the U.S. Sherman Act. While this case concerns the same underlying factual practices at issue in the *FTC Action*, it does not implicate the U.S. Sherman Act. The non-parties were asked about the facts, not the law. Faced with similar challenges to the use of prior testimony, courts have explained that the "Circuit's opinion [reversing the district court's opinion] does not call into question either the reliability or the admissibility of the testimony.... Nor do [Defendants] cite any authority that would support the notion that because the [reversal] in that case, the testimony from that case is now completely inadmissible." *Kreitman*, 2020 WL 12188711, at *2.

### D.   If The Transcripts From The *FTC Action* Are Deemed Not Admissible, The Case Schedule Requires Modification

As noted above, over 45 third-party witnesses were deposed in the FTC Action. At least 80% percent of those witnesses reside outside the Court's subpoena power—with at least nine of the witnesses located outside the country, including in Korea, Hong Kong, Germany, Sweden, and Taiwan. To obtain their testimony, Lead Plaintiffs would need to issue dozens of subpoenas and, in many cases, invoke international processes. Not only would this be an expensive endeavor burdening non-party witnesses and courts around the world during a continuing pandemic, but it would also be extremely time consuming. Accordingly, should the Court deny Lead Plaintiffs' motion, Lead Plaintiffs would require, at minimum, a six-month extension of the discovery schedule.

## III.   CONCLUSION

Lead Plaintiffs never anticipated that Defendants would renege on their written agreement that was the starting point for the entire pretrial schedule in this Action or that they would have to burden this Court for an early evidentiary ruling on the subject.  But, resolution of this "surprise" dispute will avoid undue burden and delay for the Parties and numerous non-parties alike.  For each of the reasons set forth above, Lead Plaintiffs' motion should be granted, and the testimony in the *FTC Action* should be deemed admissible as if taken in this case, with the Parties free to object to the testimony on all other grounds—*e.g.*, the witnesses' availability, the testimony's relevance, and whether the testimony consists of inadmissible opinions.

Dated:  April 18, 2022

Respectfully submitted,

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

By: */s/ Jonathan D. Uslaner*

Jonathan D. Uslaner (Bar No. 256898)
jonathanu@blbglaw.com
Richard D. Gluck (Bar No. 151675)
rich.gluck@blbglaw.com
Lauren M. Cruz (Bar No. 299964)
lauren.cruz@blbglaw.com
2121 Avenue of the Stars, Suite 2575
Los Angeles, CA 90067
Tel: (310) 819-3470
  **-***and-*
Salvatore Graziano (*Pro Hac Vice*)
salvatore@blbglaw.com
Jeroen van Kwawegen (*Pro Hac Vice*)
jeroen@blbglaw.com
Rebecca E. Boon (*Pro Hac Vice*)
rebecca.boon@blbglaw.com
Kate Aufses (*Pro Hac Vice*)
kate.aufses@blbglaw.com

1251 Avenue of the Americas, 44th Floor
New York, NY 10020
Tel: (212) 554-1400
Fax: (212) 554-1444

**MOTLEY RICE LLC**
Gregg S. Levin (*Pro Hac Vice*)
glevin@motleyrice.com
Bill Norton (*Pro Hac Vice*)
bnorton@motleyrice.com
Meghan Oliver (*Pro Hac Vice*)
moliver@motleyrice.com
Christopher Moriarty (*Pro Hac Vice*)
cmoriarty@motleyrice.com
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
Tel: (843) 216-9000
Fax: (843) 216-9450
   -*and*-
William H. Narwold (*Pro Hac Vice*)
bnarwold@motleyrice.com
One Corporate Center
20 Church Street, 17th Floor
Hartford, CT 06103

*Counsel for Lead Plaintiffs Sjunde AP-Fonden and Metzler Asset Management GmbH, and Lead Counsel for the Class*

1

## <u>CERTIFICATE OF SERVICE</u>

2     I hereby certify that on April 18, 2022, the foregoing document was served

3  on counsel for Defendants in the above-captioned action.

4     Executed on April 18, 2022, at Los Angeles, California.

5

6             */s/ Jonathan D. Uslaner*
               JONATHAN D. USLANER