**BERNSTEIN LITOWITZ BERGER
& GROSSMANN LLP**
Jonathan D. Uslaner (256898)
jonathanu@blbglaw.com
Richard D. Gluck (151675)
rich.gluck@blbglaw.com
2121 Avenue of the Stars, Suite 2575
Los Angeles, CA 90067
Tel: (310) 819-3470

**MOTLEY RICE LLC**
Gregg S. Levin (*pro hac vice*)
glevin@motleyrice.com
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
Tel: (843) 216-9000

*Counsel for Lead Plaintiffs and
Lead Counsel for the Class*

[Additional Counsel Appear on
Signature Page]

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE QUALCOMM INCORPORATED SECURITIES LITIGATION | Case No. 3:17-cv-00121-JO-MSB<br><br>**NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS REPRESENTATIVES AND CLASS COUNSEL; LEAD PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Judge: Hon. Jinsook Ohta<br>Date: September 14, 2022<br>Time: 9:00 a.m.<br>Courtroom: 4C |

# NOTICE OF MOTION

To:    ALL PARTIES AND THEIR ATTORNEYS OF RECORD

PLEASE TAKE NOTICE that pursuant to the Court's Order of March 24, 2022 (ECF No. 202), on September 14, 2022 at 9:00 a.m. in the Courtroom of the Honorable Jinsook Ohta, Sjunde AP-Fonden ("AP7") and Metzler Asset Management GmbH ("Metzler," and together with AP7, "Lead Plaintiffs") shall and hereby do respectfully move this Court pursuant to Federal Rules of Civil Procedure 23(a), (b)(3), and (g) for entry of an order in the above-captioned action (the "Action"):

1.    Certifying a class of investors (the "Class") defined as:

> All persons or entities who purchased or otherwise acquired the common stock of Qualcomm between February 1, 2012 and January 20, 2017, inclusive, and who were damaged thereby. Excluded from the Class are Defendants, the officers and directors of Qualcomm at all relevant times, members of their immediate families and their legal representatives, heirs, agents, affiliates, successors or assigns, Defendants' liability insurance carriers, and any affiliates or subsidiaries thereof, and any entity in which Defendants or their immediate families have or had a controlling interest;

2.    Appointing Lead Plaintiffs as Class Representatives; and

3.    Approving Lead Plaintiffs' selection of Bernstein Litowitz Berger & Grossmann LLP ("Bernstein Litowitz") and Motley Rice LLC ("Motley Rice") (collectively, "Lead Counsel") as Class Counsel.

This motion is based on this Notice of Motion and Motion; the Memorandum of Points and Authorities in support thereof; the accompanying Joint Declaration of Jonathan D. Uslaner and Gregg S. Levin ("Lead Counsel Decl.") and all exhibits attached thereto; the papers and pleadings filed in this Action; and such further matters and argument as the Court may consider at the hearing on this motion.

# <u>TABLE OF CONTENTS</u>

**Page(s)**

MEMORANDUM OF POINTS AND AUTHORITIES ...........................................1

I.     PRELIMINARY STATEMENT .....................................................1

II.    BACKGROUND AND PROCEDURAL HISTORY ....................................3

III.   ARGUMENT............................................................................5

      A.    The Proposed Class Satisfies Rule 23(a) .............................6

           1.    Numerosity Is Established ...............................6

           2.    Commonality Is Established .............................7

           3.    Typicality Is Established..................................8

           4.    Adequacy Is Established ..................................9

      B.    The Proposed Class Satisfies Rule 23(b)(3)..........................12

           1.    Common Questions of Law and Fact Predominate Over Individual Issues ........................................12

                a.    The Claims at Issue Will Be Established Using the Same Evidence..................................12

                b.    The Fraud-On-The-Market Presumption Applies ..........13

                c.    Damages Will Be Calculated Using a Common Methodology That Is Consistent With the Class-wide Theory of Liability....................................19

           2.    A Class Action Is Superior to Other Available Methods for Resolving This Controversy.................................20

      C.    Lead Counsel Should Be Appointed Class Counsel ..........................21

IV.   CONCLUSION..........................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*In re Alco Int'l Grp., Inc. Sec. Litig.*,
  158 F.R.D. 152 (S.D. Cal. 1994) ......................................................1, 6

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997)..........................................................................12

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
  568 U.S. 455 (2013)........................................................................6, 13

*Angley v. UTi Worldwide Inc.*,
  311 F. Supp. 3d 1117 (C.D. Cal. 2018) ......................................14, 20

*In re Applied Micro Cirs. Corp. Sec. Litig.*,
  2003 WL 25419526 (S.D. Cal. July 15, 2003) .............................8, 10

*Basic Inc. v. Levinson*,
  485 U.S. 224 (1988)........................................................................2, 13

*Binder v. Gillespie*,
  184 F.3d 1059 (9th Cir. 1999) ...............................................................17

*Blackie v. Barrack*,
  524 F.2d 891 (9th Cir. 1975) ......................................................6, 8, 19

*In re BofI Holding, Inc. Sec. Litig.*,
  2021 WL 3742924 (S.D. Cal. Aug. 24, 2021)................................passim

*In re Bridgepoint Educ., Inc. Sec. Litig.*,
  2015 WL 224631 (S.D. Cal. Jan. 15, 2015)
  .....................................................................................7, 9, 10, 12

*Brown v. China Integrated Energy Inc.*,
  2015 WL 12720322 (C.D. Cal. Feb. 17, 2015) ..............................7, 8

*Cammer v. Bloom*,
  711 F. Supp. 1264 (D.N.J. 1989).........................................15, 16, 17

*In re Cooper Cos. Inc. Sec. Litig.*,
  254 F.R.D. 628 (C.D. Cal. 2009)..................................................................1, 6

*In re DJ Orthopedics, Inc. Sec. Litig.*,
  2003 WL 27363735 (S.D. Cal. Nov. 17, 2003)..................................................9

*In re DVI Inc. Sec. Litig.*,
  249 F.R.D. 196 (E.D. Pa. 2008), *aff'd sub nom. In re DVI, Inc. Sec.
  Litig.*, 639 F.3d 623 (3d Cir. 2011) .....................................................15

*Ellis v. Costco Wholesale Corp.*,
  657 F.3d 970 (9th Cir. 2011) ..............................................................10

*In re En Pointe Techs., Inc. Sec. Litig.*,
  2005 WL 8173600 (S.D. Cal. May 31, 2005) ..................................................7

*Erica P. John Fund, Inc. v. Halliburton Co.*,
  563 U.S. 804 (2011)..................................................................12, 13

*Halliburton Co. v. Erica P. John Fund, Inc.*,
  573 U.S. 258 (2014) .....................................................................13

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ......................................................passim

*Hanon v. Dataproducts Corp.*,
  976 F.2d 497 (9th Cir. 1992) ..............................................................9

*Hayes v. MagnaChip Semiconductor Corp.*,
  2016 WL 7406418 (N.D. Cal. Dec. 22, 2016).................................................7

*Hefler v. Wells Fargo & Co*.,
  2018 WL 4207245 (N.D. Cal. Sept. 4, 2018)..................................................22

*HsingChing Hsu v. Puma Biotech., Inc.*,
  2017 WL 6210803 (C.D. Cal. Dec. 8, 2017) .................................................20

*Junge v. Geron Corp.*,
  2022 WL 1002446 (N.D. Cal. Apr. 2, 2022)..............................................passim

*In re Juniper Networks, Inc. Sec. Litig.*,
  264 F.R.D. 584 (N.D. Cal. 2009)..........................................................20

*Krogman v. Sterritt*,
  202 F.R.D. 467 (N.D. Tex. 2001) ................................................14, 18

*In re LendingClub Sec. Litig.*,
  282 F. Supp. 3d 1171 (N.D. Cal. 2017) ........................................7, 8

*In re Mattel, Inc. Sec. Litig.*,
  2021 WL 4704578 (C.D. Cal. Oct. 6, 2021) ......................................22

*Mauss v. NuVasive, Inc.*,
  2017 WL 1080654 (S.D. Cal. Mar. 22, 2017) ..............................10, 11

*Mild v. PPG Indus., Inc.*,
  2019 WL 3345714 (C.D. Cal. July 25, 2019) ......................................8

*In re NetSol Techs., Inc. Sec. Litig.*,
  2016 WL 7496724 (C.D. Cal. July 1, 2016) ........................................6

*In re Novatel Wireless Sec. Litig.*,
  2010 WL 11470156 (S.D. Cal. May 12, 2010) ..........................8, 9, 10

*Petrie v. Elec. Game Card, Inc.*,
  308 F.R.D. 336 (C.D. Cal. 2015) ....................................15, 17, 18

*Police Ret. Sys. of St. Louis v. Granite Constr. Inc.*,
  2021 WL 229310 (N.D. Cal. Jan. 21, 2021) ..............................18, 20

*In re Quality Sys., Inc. Sec. Litig.*,
  865 F.3d 1130 (9th Cir. 2017) ......................................................12

*In re Silver Wheaton Corp. Sec. Litig.*,
  2017 WL 2039171 (C.D. Cal. May 11, 2017) ....................................20

*Smilovits v. First Solar, Inc.*,
  295 F.R.D. 423 (D. Ariz. 2013) ....................................................14

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
  551 U.S. 308 (2007) ....................................................................6

*Todd v. STAAR Surgical Co.*,
  2017 WL 821662 (C.D. Cal. Jan. 5, 2017) ..............................1, 14, 20

*In re Twitter Inc. Sec. Litig.*,
    326 F.R.D. 619 (N.D. Cal. 2018)....................................................11, 22

*In re USA Talks.com Sec. Litig.*,
    2000 WL 1887516 (S.D. Cal. Sept. 14, 2000)...................................14

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011) .......................................................................8

**STATUTES AND RULES**

Fed. R. Civ. P. 12 ....................................................................................20

Fed. R. Civ. P. 23 ...............................................................................passim

Securities Exchange Act of 1934 Section 10(b) .......................1, 3, 12, 19

Securities Exchange Act of 1934 Section 20(a) ................................1, 3, 5

**OTHER AUTHORITIES**

H.R. Conf. Rep. No. 104-369, 104th Cong., 1st Sess. (1995), reprinted
    in 1995 U.S.C.C.A.N. 730 .................................................................11

1

2

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    PRELIMINARY STATEMENT**

This Action asserts claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") against Qualcomm and six of its current and former top executives. Like most securities-fraud actions, this one is ideally suited for class certification because it arises from common public misrepresentations and omissions that harmed tens-of-thousands of investors in Qualcomm's stock in a like manner during the alleged Class Period.[1]

"As the Ninth Circuit has so aptly stated, securities fraud cases fit Rule 23 'like a glove.'" *Todd v. STAAR Surgical Co.*, 2017 WL 821662, at *3 (C.D. Cal. Jan. 5, 2017). Courts in this Circuit and elsewhere have long recognized that securities class actions such as this one "are particularly effective in serving as private policing weapons against corporate wrongdoing." *In re Cooper Cos. Inc. Sec. Litig.*, 254 F.R.D. 628, 642 (C.D. Cal. 2009). Such actions are routinely certified in this District; "the Ninth Circuit liberally construe[s] the Rule 23 criteria in favor of plaintiffs," and "[t]he Ninth Circuit has repeatedly endorsed class actions for securities actions." *In re Alco Int'l Grp., Inc. Sec. Litig.*, 158 F.R.D. 152, 155 (S.D. Cal. 1994).

Certification under Rule 23 is granted if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). Additionally, "common" issues of law or fact must "predominate over any

---

[1] Unless otherwise noted, (i) capitalized terms and abbreviations not defined herein have the same meanings ascribed to them in the Consolidated Class Action Complaint for Violations of the Federal Securities Laws (the "Complaint") (ECF No. 32); (ii) references to "¶__" refer to paragraphs of the Complaint; (iii) all emphasis is added; and (iv) all internal citations and punctuation are omitted.

questions affecting only individual members," and a class action must be "superior" to other methods of adjudication. Fed. R. Civ. P. 23(b)(3). The proposed Class satisfies these requirements.

*First*, numerosity is easily satisfied because there are many thousands of Class members. There were approximately 1.477 billion shares of Qualcomm common stock outstanding during the Class Period, and an average of 23.1 million shares traded weekly.

*Second*, this Action involves many common issues of law and fact, including whether: (i) the challenged statements were false or misleading; (ii) Defendants acted with scienter; (iii) Defendants' misstatements and omissions caused investors' losses; and (iv) the Class suffered damages.

*Third*, the typicality requirement is easily satisfied because Lead Plaintiffs were harmed by the same alleged false and misleading statements and omissions, suffering the same or similar monetary injury as other Class members.

*Fourth*, Lead Plaintiffs are sophisticated institutional investors whose interests in prosecuting this Action are squarely aligned with the Class's interests, and who will fairly and adequately protect the interests of the Class. Additionally, Lead Plaintiffs' chosen counsel are among the most experienced class action law firms in the country.

*Fifth*, this Action readily satisfies the predominance requirement of Rule 23(b)(3). Common issues of law and fact abound—including issues of falsity, materiality, scienter, and loss causation—and are subject to common proof. Moreover, class-wide reliance is presumed where, as here, Defendants' stock trades on an efficient market. *See Basic Inc. v. Levinson*, 485 U.S. 224, 242 (1988) (adopting fraud-on-the-market presumption). The market for Qualcomm's common stock, which trades on NASDAQ, is efficient and, accordingly, the class-wide presumption of reliance applies. The accompanying expert report of Dr. David I. Tabak (the "Tabak Report," attached as Ex. 1 to Lead Counsel Decl.)

establishes through empirical analysis that Qualcomm's stock satisfies all of the factors that courts consider in evaluating market efficiency. Dr. Tabak further explains how damages may be calculated based on a class-wide methodology that is consistent with Lead Plaintiffs' theory of liability.

**Sixth**, the "superiority" factor under Rule 23(b)(3) is satisfied because (i) tens-of-thousands of investors suffered damages as a result of Defendants' alleged misconduct; (ii) the typical claims are too small to warrant individual actions due to litigation costs; (iii) it is desirable to hear all such claims in one court; and (iv) there is no difficulty in maintaining this litigation as a class action.

**Finally**, pursuant to Rule 23(g), Lead Counsel should be appointed as Class Counsel because they are well qualified to prosecute this Action on behalf of Lead Plaintiffs and the Class.

For these reasons, and as discussed further below, Lead Plaintiffs respectfully request that the Court certify the proposed Class, appoint Lead Plaintiffs AP7 and Metzler as Class Representatives under Rules 23(a) and 23(b)(3), and appoint Bernstein Litowitz and Motley Rice as Class Counsel pursuant to Rule 23(g).

## II.  BACKGROUND AND PROCEDURAL HISTORY

This is a securities class action brought under the federal securities laws, specifically Sections 10(b) and 20(a) of the Exchange Act, on behalf of all persons or entities who purchased or otherwise acquired the common stock of Qualcomm between February 1, 2012 and January 20, 2017, inclusive, and who were damaged thereby.

Qualcomm's common stock is listed on, and is actively traded through, the NASDAQ Stock Exchange under the ticker symbol "QCOM." ¶¶23, 239. Qualcomm's stock is owned, bought, and sold by many tens-of-thousands of investors, and, as of January 20, 2017, there were approximately 1.477 billion shares of Qualcomm common stock outstanding. ¶239.

During the Class Period, Defendants issued a series of public filings with the Securities and Exchange Commission ("SEC") and held earnings conference calls with investors. In those public filings, and during those conference calls, Qualcomm and its executives made false statements and omitted material facts regarding Qualcomm's core licensing practices. ¶¶138-87.

As detailed in Lead Plaintiffs' Complaint, for years, Qualcomm's top executives identified as the "hallmark" of its licensing model the Company's willingness to license its standard-essential patents to its competitors. Defendants publicly railed against accusations that Qualcomm refused to license competitor chipmakers as "nuts" and "crazy," ¶192, reassuring investors that the Company was willing to license anyone "so that the entire market could play," ¶168. Defendants further assured investors that Qualcomm did not "bundle" the negotiations and terms of its license and chipset deals, telling investors, "we don't bundle those together." ¶76. Defendants' statements were false, misleading, and omitted material facts. As confirmed by regulators around the world, Qualcomm engaged in the very licensing practices it assured investors it shunned.

Those undisclosed practices—now revealed—resulted in record fines totaling over $1.6 billion; enforcement actions brought by authorities around the world; and unprecedented civil litigation by Apple, Qualcomm's top customer. Meanwhile, Qualcomm's share price plummeted, erasing over $32 billion in shareholder value. ¶129.

On May 4, 2017, the Court appointed AP7 and Metzler to serve as Lead Plaintiffs in this Action and approved Bernstein Litowitz and Motley Rice as Lead Counsel for the Class. ECF No. 31. AP7 and Metzler each, respectively, manage over $30 billion in assets. *See* ECF No. 11-3, ¶¶2-5. AP7 and Metzler purchased shares of Qualcomm common stock on the open market during the Class Period and suffered damages when Qualcomm's stock price plummeted as the truth gradually was revealed. *See* ECF Nos. 11-6, 11-7.

On July 3, 2017, Lead Plaintiffs filed the Consolidated Class Action Complaint for Violation of the Federal Securities Laws, which sets forth and describes Defendants' alleged violations of the Exchange Act (¶¶47-129; 138-87) and describes how those violations damaged investors (¶¶210-34).

On September 1, 2017, Defendants moved to dismiss the claims asserted in the Complaint. Defendants made a series of arguments common to all Class members, including that they purportedly made no actionable misstatements or omissions, did not act with scienter, and were not liable under Section 20(a) of the Exchange Act. ECF No. 40. The Honorable John A. Houston carefully considered each of these arguments and rejected all of them in his March 18, 2019 Order. ECF No. 59.

Then, on January 15, 2020, Defendants filed a motion for judgment on the pleadings, which raised another argument common to the Class—namely, Defendants' argument that Qualcomm purportedly disclosed to investors the misrepresented and omitted facts. ECF No. 143. The Court considered these arguments and, following extensive briefing and a hearing, denied Defendants' motion. ECF Nos. 151, 155, 189, 192.

The Parties have conducted extensive discovery in this matter. Lead Plaintiffs and Defendants have each served and responded to document requests, requests for admission, and interrogatories. The deadline for the substantial completion of document production has passed, and the Parties will be completing fact depositions in the next few months.

In accordance with the case schedule, Lead Plaintiffs now move for class certification under Rule 23.

## III.   **ARGUMENT**

The Supreme Court "has long recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions brought, respectively, by the

Department of Justice and the Securities and Exchange Commission (SEC)." *Tellabs, Inc. v. Makor Issues & Rts.*, *Ltd.*, 551 U.S. 308, 313 (2007). "The availability of the class action to redress such frauds has been consistently upheld, . . . in large part because of the substantial role that the deterrent effect of class actions plays in accomplishing the objectives of the securities laws." *Blackie v. Barrack*, 524 F.2d 891, 903 (9th Cir. 1975). "District courts have consistently recognized that the common liability issues involved in securities fraud cases are ideally suited for resolution by way of a class action." *Cooper*, 254 F.R.D. at 641.

To be certified, a proposed class must satisfy Rule 23(a)'s numerosity, commonality, typicality, and adequacy requirements, and it also must meet the requirements of at least one of Rule 23(b)'s subsections. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019-20 (9th Cir. 1998). In determining whether a class should be certified, the question is not whether plaintiffs will prevail on the merits, but rather whether the requirements of Rule 23 have been met. *Blackie*, 524 F.2d at 901. As the Supreme Court has explained, "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 465-66 (2013). Courts in this Circuit have stated, in consistently certifying securities class actions, that Rule 23's requirements should be liberally construed in favor of class action cases brought under the federal securities laws. *See Alco*, 158 F.R.D. at 155; *In re NetSol Techs., Inc. Sec. Litig.*, 2016 WL 7496724, at *3 (C.D. Cal. July 1, 2016). Each Rule 23 requirement is satisfied here.

## A.     The Proposed Class Satisfies Rule 23(a)

### 1.     Numerosity Is Established

The "numerosity" requirement is satisfied if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "The term 'impracticable' is not synonymous with impossible." *In re BofI Holding, Inc. Sec. Litig.*, 2021 WL 3742924, at *2 (S.D. Cal. Aug. 24, 2021). In the Ninth Circuit,

classes of more than forty investors presumptively satisfy the numerosity requirement. *Id.*; *Brown v. China Integrated Energy Inc.*, 2015 WL 12720322, at *13 (C.D. Cal. Feb. 17, 2015) (same). Courts routinely find that the numerosity requirement is met in securities fraud suits involving nationally traded stocks. *In re En Pointe Techs., Inc. Sec. Litig.*, 2005 WL 8173600, at *4 (S.D. Cal. May 31, 2005) ("En Pointe's stock is nationally traded, which raises the presumption of numerosity.").

Qualcomm trades on the national NASDAQ exchange, had approximately 1.69 billion shares of common stock outstanding during the Class Period, and had an average of 24.6 million shares traded weekly, even when market-maker participation is excluded. *See* Tabak Report ¶17. Accordingly, the numerosity requirement is satisfied. *See, e.g.*, *BofI Holding*, 2021 WL 3742924, at *2 (numerosity established where "Bofi had millions of shares trading on NASDAQ during the Class Period"); *In re Bridgepoint Educ., Inc. Sec. Litig.*, 2015 WL 224631, at *4 (S.D. Cal. Jan. 15, 2015) (numerosity established where 51.3 million shares outstanding); *Junge v. Geron Corp.*, 2022 WL 1002446, at *2 (N.D. Cal. Apr. 2, 2022) (more than 173 million shares outstanding and over 10 million sold during the class period satisfies numerosity); *In re LendingClub Sec. Litig.*, 282 F. Supp. 3d 1171, 1178 (N.D. Cal. 2017) (numerosity established where over 394 million shares outstanding); *Hayes v. MagnaChip Semiconductor Corp.*, 2016 WL 7406418, at *3 (N.D. Cal. Dec. 22, 2016) (numerosity established where between 34.1 million to 37.1 million shares outstanding).

## 2. Commonality Is Established

The "commonality" requirement of Rule 23(a)(2) is satisfied when "there are questions of law or fact common to the class." The Ninth Circuit has held that the commonality requirement is "construed permissively," and "[a]ll questions of fact and law need not be common to satisfy the rule." *Hanlon*, 150 F.3d at 1019. For this inquiry, "even a single common question will do." *Bridgepoint Educ.*,

2015 WL 224631, at *5 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556 (2011)). Plaintiffs in securities fraud litigation satisfy this prerequisite "very easily." *Brown*, 2015 WL 12720322, at *14.

The common questions of law and fact in this case are numerous and include: (i) whether Defendants made false or misleading statements; (ii) whether Defendants acted with scienter; (iii) whether the price of Qualcomm's common stock was artificially inflated during the Class Period; and (iv) whether Defendants' misrepresentations and omissions caused Class members to suffer economic losses. Courts routinely certify classes in securities fraud cases involving such common questions. *See, e.g.*, *Blackie*, 524 F.2d at 902 ("Confronted with a class of purchasers allegedly defrauded over a period of time by similar misrepresentations, courts have taken the common sense approach that the class is united by a common interest."); *BofI Holding*, 2021 WL 3742924, at *3 ("[S]everal of the elements of the securities fraud claim here are indisputably subject to common proof and identical legal analysis."); *In re Novatel Wireless Sec. Litig.*, 2010 WL 11470156, at *3 (S.D. Cal. May 12, 2010) (finding "common nucleus of operative facts based on Defendants' scheme" satisfies commonality); *In re Applied Micro Cirs. Corp. Sec. Litig.*, 2003 WL 25419526, at *3 (S.D. Cal. July 15, 2003) (holding "the questions of law or fact common to the class relate to a 'common course of business,'" thereby satisfying commonality); *Mild v. PPG Indus., Inc.*, 2019 WL 3345714, at *3 (C.D. Cal. July 25, 2019) ("[T]here are several questions of law and fact common to Settlement Class members."); *LendingClub*, 282 F. Supp. 3d at 1179 (noting "allegations that investors were defrauded by the same misleading registration statement over the same period of time, and suffered similar losses . . . fulfill" commonality).

### 3. Typicality Is Established

The "typicality" requirement of Rule 23(a)(3) is satisfied when the "claims or defenses of the representative parties are typical of the claims or defenses of the

class." "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992); *Novatel Wireless*, 2010 WL 11470156, at *4; *In re DJ Orthopedics, Inc. Sec. Litig.*, 2003 WL 27363735, at *5 (S.D. Cal. Nov. 17, 2003). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020.

Here, Lead Plaintiffs' claims arise from the same alleged course of conduct that gives rise to claims of other Class members, are based on the same legal theory, and will be proven by the same set of operative facts. As such, the typicality requirement is satisfied. *See BofI Holding*, 2021 WL 3742924, at *3 (typicality satisfied where lead plaintiff's "claim is essentially the same as that of the proposed class members" and defendants assert no defenses unique to lead plaintiff); *Novatel Wireless*, 2010 WL 11470156, at *4-5 ("Plaintiffs are sufficiently typical because their claims are coextensive with those of the class, and they are not subject to a unique defense that would threaten to become the focus of the litigation."); *Bridgepoint Educ.*, 2015 WL 224631, at *5 ("Plaintiffs' claims arise from the same events and conduct that gave rise to the claims of other class members. They are, therefore, typical of the class."); *Geron Corp.*, 2022 WL 1002446, at *2-3 (holding plaintiffs' "claims rest on the same legal theories as the claims of absent class members, so the [plaintiffs] appear typical").

### 4.    Adequacy Is Established

The "adequacy" inquiry of Rule 23(a)(4) concerns whether the "representative parties will fairly and adequately protect the interests of the class." "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members

and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020; *see also Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011). "[I]n the Ninth Circuit, as long as the class representative understands his duties and is represented by competent counsel, the class representative and class counsel are considered competent for purposes of Rule 23(a)(4)." *Mauss v. NuVasive, Inc.*, 2017 WL 1080654, at *2 (S.D. Cal. Mar. 22, 2017). Lead Plaintiffs satisfy both prongs of the adequacy inquiry.

*First*, Lead Plaintiffs, like the other Class members, sustained losses as a result of Defendants' material misrepresentations and omissions and are interested in obtaining the maximum possible recovery. *See Bridgepoint Educ.*, 2015 WL 224631, at *5 ("[T]here is no antagonism because all class members have allegedly suffered losses due to the same conduct."); *Novatel Wireless*, 2010 WL 11470156, at *5 ("It does not appear that there are any conflicts between the named plaintiffs and other members of the proposed class; their interests are aligned because the named plaintiffs, like members of the proposed class, seek redress for the losses they suffered as a result of Defendants' alleged fraud."); *Applied Micro Cirs.*, 2003 WL 25419526, at *5 ("[T]he interests of Lead Plaintiff[s] [are] coextensive with the Class, since they bring identical claims under the federal securities laws."); *Geron Corp.*, 2022 WL 1002446, at *3 ("[N]o differences appear in the [plaintiffs'] interests or circumstances that would derail competent class representation.").

*Second*, Lead Plaintiffs have vigorously prosecuted this Action on behalf of the Class and will continue doing so. Lead Plaintiffs fully understand the duties and responsibilities of a class representative. *See* Joint Declaration of Richard Gröttheim and Dr. Axel Hoffmann In Support Of Lead Plaintiffs' Motion For Class Certification and Appointment of Class Representatives and Class Counsel, ¶¶3-5 ("Lead Plaintiff Decl.," attached as Ex. 2 to Lead Counsel Decl.). Lead

Plaintiffs have demonstrated their commitment to lead this Action for the Class by, *inter alia*, retaining and overseeing experienced counsel; filing a detailed complaint; defeating Defendants' motion to dismiss; defeating Defendants' motion for judgment on the pleadings; propounding discovery requests, requests for admission, and interrogatories; and responding to Defendants' discovery requests. *Id.* ¶4. Lead Plaintiffs will continue to actively participate in and supervise the litigation through trial. *Id.* ¶5. Lead Plaintiffs fulfill the adequacy requirement. *See NuVasive*, 2017 WL 1080654, at *3 (finding similar facts support adequacy).

Moreover, AP7 and Metzler—both major institutional investors—are precisely the "type of plaintiff typically favored under the PSLRA to be the lead plaintiff in securities litigation." *BofI Holding*, 2021 WL 3742924, at *3; H.R. Conf. Rep. No. 104-369, 104th Cong., 1st Sess. (1995), reprinted in 1995 U.S.C.C.A.N. 730, 733 ("Institutional investors and other class members with large amounts at stake will represent the interests of the plaintiff class more effectively than class members with small amounts at stake.").

***Finally***, Lead Counsel Bernstein Litowitz and Motley Rice have extensive experience in securities litigation. *See* Bernstein Litowitz & Motley Rice Firm Resumes, attached as Exs. 3 & 4 to Lead Counsel Decl. Lead Counsel have a proven track record of success in complex cases such as this one, and have successfully prosecuted high-profile securities fraud class actions, including in this District, recovering billions of dollars on behalf of injured investors across the country. *See id.* Consistent with their track records, Lead Counsel have vigorously prosecuted the Class's claims to date. *See* Lead Counsel Decl. ¶13. *See also In re Twitter Inc. Sec. Litig.*, 326 F.R.D. 619, 629 (N.D. Cal. 2018) ("[A]ppointment of co-class counsel is appropriate" in a "large securities case defended by experienced, knowledgeable counsel.").

**B.    The Proposed Class Satisfies Rule 23(b)(3)**

In addition to meeting the prerequisites of Rule 23(a), the proposed Class also satisfies Rule 23(b)(3), which requires that (i) "the questions of law or fact common to class members predominate over any questions affecting only individual members," and (ii) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

**1.    Common Questions of Law and Fact Predominate Over Individual Issues**

The Supreme Court has recognized that "[p]redominance is a test readily met" in securities fraud cases like this one. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). When, as here, "common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022. As discussed further below, there are numerous common questions of law and fact that predominate over any individual questions.

**a.    The Claims at Issue Will Be Established Using the Same Evidence**

"Considering whether 'questions of law or fact common to class members predominate' begins, of course, with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011) ("*Halliburton I*") (quoting Fed. R. Civ. P. 23(b)(3)). "To recover damages for violations of section 10(b) and Rule 10b-5, a plaintiff must prove (1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1140-41 (9th Cir. 2017); *see also Bridgepoint Educ.*, 2015 WL 224631, at *6 ("In the typical

securities-fraud case, as in this case, the factual and legal issues related to most of these elements are common to the class, so the requirements for class certification are usually readily met.").

The Supreme Court has held that issues of "falsity," "materiality," and "loss causation" all raise common questions of law and fact and, accordingly, support class certification. *Amgen*, 568 U.S. at 461-62, 474-75; *Halliburton I*, 563 U.S. at 811-12. Each of these elements of Lead Plaintiffs' claim turns on class-wide proof and will be resolved uniformly among all class members. *See, e.g.*, *BofI Holding*, 2021 WL 3742924, at *4 ("[T]he materiality of the misrepresentation and the defendant's scienter are issues that would require the same proof for any class member.").

### b.    The Fraud-On-The-Market Presumption Applies

The element of "reliance" also raises "common questions" in this case and supports class certification. As in most securities class actions involving a security traded on a national exchange, the "fraud-on-the-market" presumption of reliance applies in this case. *See Levinson*, 485 U.S. at 224. That presumption is based on the well-founded principle, adopted by the Supreme Court, that "a public, material misrepresentation will distort the price of stock traded in an efficient market, and that anyone who purchases the stock at the market price may be considered to have done so in reliance on the misrepresentation." *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 283-84 (2014). When the presumption applies, investors do not need to demonstrate individual reliance. *Halliburton I*, 563 U.S. at 811; *see also Levinson*, 485 U.S. at 241-47.

In this case, all of the factors that courts consider demonstrate that the market for Qualcomm's stock was efficient. To start, courts consider whether the security at issue trades on a major national exchange. Here, Qualcomm's common stock actively trades on NASDAQ—which is presumptively an efficient market. *See BofI Holding*, 2021 WL 3742924, at *5 (finding fact that "BofI stock traded on

NASDAQ, a well-developed market," was evidence establishing market efficiency); *Geron Corp.*, 2022 WL 1002446, at \*4 (stating that trading on NASDAQ, "a quintessentially efficient market," supports market efficiency); *Angley v. UTi Worldwide Inc.*, 311 F. Supp. 3d 1117, 1120-21 (C.D. Cal. 2018) (holding that trading on NASDAQ "demonstrates" market was efficient); *Todd*, 2017 WL 821662, at \*6 (noting "federal courts are unanimous in their agreement that a listing on the NASDAQ or a similar national market is a good indicator of efficiency," and collecting cases); *Smilovits v. First Solar, Inc.*, 295 F.R.D. 423, 431 (D. Ariz. 2013) (finding trading on NASDAQ "weighs in favor of finding market efficiency," and collecting cases).

Next, courts consider the five so-called "*Cammer* factors." The *Cammer* factors include: (1) whether the stock trades at a high weekly volume; (2) whether securities analysts follow and report on the stock; (3) whether the stock has market makers and arbitrageurs; (4) whether the company is eligible to file SEC registration Form S-3, as opposed to Form S-1 or S-2; and (5) whether there are empirical facts showing a cause and effect relationship between unexpected corporate events or financial releases and an immediate response in a stock price. *See In re USA Talks.com Sec. Litig.*, 2000 WL 1887516, at \*5 (S.D. Cal. Sept. 14, 2000) (listing the *Cammer* factors). Finally, courts often consider the so-called "*Krogman* factors," which include: (1) the company's market capitalization; (2) the bid-ask spread for stock sales; and (3) the float for the company's stock. *Krogman v. Sterritt*, 202 F.R.D. 467, 477-78 (N.D. Tex. 2001).

Here, Dr. Tabak—a well-recognized expert economist who has written and testified extensively on issues of market efficiency—conducted a thorough analysis of the market for Qualcomm's stock. Dr. Tabak determined that each of the *Cammer* and *Krogman* factors supports a finding of market efficiency for Qualcomm stock. His analysis demonstrates without question that Qualcomm

common stock traded in an open, well-developed, and efficient market throughout the Class Period.

**High Weekly Trading Volume (*Cammer* Factor 1)**: Courts hold that weekly turnover—measured by average weekly trading—of greater than 1% justifies a "substantial presumption" of market efficiency. *Cammer v. Bloom*, 711 F. Supp. 1264, 1286 (D.N.J. 1989). Here, 1.51% of Qualcomm's shares outstanding—i.e., over 24 million shares—traded each week. Tabak Report ¶17. Thus, Qualcomm's weekly trading volume justifies a "substantial presumption" of market efficiency. *Cammer*, 711 F. Supp. at 1286; *see also Petrie v. Elec. Game Card, Inc.*, 308 F.R.D. 336, 350 (C.D. Cal. 2015) (finding that even when "average weekly trading volume is reduced to 0.99% or 1.32%, that is still within the 'substantial presumption' range in *Cammer*"); *In re DVI Inc. Sec. Litig.*, 249 F.R.D. 196, 209 (E.D. Pa. 2008), *aff'd sub nom. In re DVI, Inc. Sec. Litig.*, 639 F.3d 623 (3d Cir. 2011) (holding that a "1% average weekly trading volume justifies a substantial presumption that a security trades in an efficient market").

**Significant Analyst Coverage (*Cammer* Factor 2)**: Courts hold that analyst coverage supports market efficiency because when a company's financial disclosures are "closely reviewed by investment professionals" who "make buy/sell recommendations to client investors," the market price fluctuations reflect the financial disclosures "as interpreted by the securities analysts." *Cammer*, 711 F. Supp. at 1286.

Securities analysts employed by over two dozen brokerage firms—including major firms, such as Barclays, Credit Suisse, Citi, Deutsche Bank, J.P. Morgan, Morgan Stanley, Oppenheimer, RBC Capital, UBS, and Wells Fargo—published reports on Qualcomm securities during the Class Period. Tabak Report ¶21, n.16. These analysts published over 1,000 reports during the Class Period on Qualcomm—a magnitude of coverage further demonstrating that Qualcomm's

common shares traded in an efficient market during the Class Period. *Cammer*, 711 F. Supp. at 1283 (finding 15 reports sufficient).

**Substantial Market Maker/Arbitrage Activity (*Cammer* Factor 3)**: Courts find that the existence of numerous market makers supports market efficiency. The existence of numerous market makers ensures that investors "react swiftly to company news and reported financial results by buying or selling stock and driving it to a changed price level." *Id.* at 1286-87.

During the Class Period, there were 402 market makers who traded Qualcomm's stock on the NASDAQ stock exchange. Tabak Report ¶22. In addition, as Dr. Tabak explains, arbitrageurs were very active, with institutional holdings varying at quarter-ends throughout the Class Period, and 84.0% of institutions with a positive holding in one quarter reporting a different amount of holdings in the next quarter. *Id.* ¶¶24-27. This activity supports the conclusion that investors were able to, and did, "react swiftly" to public information by trading in Qualcomm stock, driving price changes. *Cammer*, 711 F. Supp. at 1286-87.

**S-3 Registration Eligibility (*Cammer* Factor 4)**: Courts find that a corporation's eligibility to use SEC Form S-3 "is an important factor weighing in favor of a finding that [the] market is efficient." *Id.* at 1285. This factor "is predicated on the [SEC's] belief that the market operates efficiently for [eligible] companies, i.e., [all public information] has already been disseminated and accounted for by the market place." *Id.* at 1284. More specifically, "it is the number of shares traded and value of shares outstanding that involve the facts which imply efficiency." *Id.* at 1286-87.

Throughout the Class Period, Qualcomm met the necessary requirements to file a Form S-3; in fact, Qualcomm's common stock exceeded the required market capitalization by $64 billion (or more than 800 times the $75 million SEC requirement). Tabak Report ¶¶28-29. Qualcomm's Form S-3 eligibility supports market efficiency.

**Strong Cause-And-Effect Relationship (*Cammer* Factor 5)**: Under *Cammer*, "one of the most convincing ways to demonstrate efficiency [is] to illustrate, over time, a cause and effect relationship between company disclosures and resulting movements in stock price." *Cammer*, 711 F. Supp. at 1291. This factor requires "empirical facts showing a cause and effect relationship between unexpected corporate events or financial releases and an immediate response in the stock price." *Binder v. Gillespie*, 184 F.3d 1059, 1065 (9th Cir. 1999) (quoting *Cammer*, 711 F. Supp at 1286-87). "Event studies are by far the most common test for a causal connection." *Petrie*, 308 F.R.D. at 352.

Here, Dr. Tabak performed a robust event study demonstrating a strong cause-and-effect relationship between Qualcomm's stock price movements and Qualcomm's financial releases and unexpected Company-specific news. Tabak Report ¶¶30-43. As detailed in his report, Dr. Tabak concluded that Qualcomm's stock price reacted quickly to the release of new Company-specific, unexpected news. *Id.* ¶43. Specifically, Dr. Tabak analyzed movements in Qualcomm's stock price on the first trading day following each of Qualcomm's earnings announcements during the Class Period versus trading days with no such news. *Id.* ¶¶32-34; Exs. 8a, 8b. He also examined the price reaction of Qualcomm common stock on the first trading day on news dates (including the corrective-disclosure dates). *Id.* ¶¶35-36; Exs. 8a, 8b. He found that the rate of statistically significant stock price reaction on earnings-announcement dates was more than fifteen times higher than on other days, and that the rate of statistically significant price reaction on news dates was also a multiple of the rate on non-news dates. *Id.* ¶38; Exs. 8a, 8b. This cause-and-effect relationship further confirms that Qualcomm common stock traded in an efficient market.

Dr. Tabak also conducted an autocorrelation analysis, which showed that there is no persistent and systematic significant autocorrelation in Qualcomm's stock price returns. *Id.* ¶¶50-56; Exs. 10a, 10b. The absence of a statistically

significant degree of autocorrelation is consistent with a finding of market efficiency. *Id.* ¶¶55-56; *Petrie*, 308 F.R.D. at 356 (market efficiency supported by "no significant autocorrelation").

In addition to the *Cammer* factors, the *Krogman* factors also support market efficiency:

**Market Capitalization (*Krogman* Factor 1)**: Higher market capitalization is indicative of market efficiency because "there is a greater incentive for stock purchasers to invest in more highly capitalized corporations." *Krogman*, 202 F.R.D. at 478. Qualcomm's market capitalization throughout the Class Period was always over $64 billion—higher than 98% of the largest stocks traded in the United States. Tabak Report ¶¶45-46. This supports a finding of market efficiency. *Id.*; *Geron Corp.*, 2022 WL 1002446, at *4 (finding market capitalization in the 46th percentile of NASDAQ satisfies first *Krogman* factor).

**Small Bid-Ask Spread (*Krogman* Factor 2)**: A "bid-ask spread," which represents the cost to transact in a security, "indicates greater efficiency when the spread is narrow." *Police Ret. Sys. of St. Louis v. Granite Constr. Inc.*, 2021 WL 229310, at *6 (N.D. Cal. Jan. 21, 2021); *Krogman*, 202 F.R.D. at 478. During the Class Period, the daily bid-ask spread for Qualcomm stock averaged only 0.02%, typically representing $0.01, which Dr. Tabak explains was "the smallest possible amount for a security with bids and asks in levels denominated to the penny." Tabak Report ¶48. This low bid-ask spread supports a finding of market efficiency. *Id.*

**Large Public Float (*Krogman* Factor 3)**: Courts also consider the size of an issuer's float (i.e., the shares outstanding not held by insiders) in assessing efficiency. *Id.* ¶49. A larger float suggests greater liquidity for shares, making it easier to purchase and sell shares in the market. *Id.* A float representing a large percentage of the shares outstanding is an indicator of efficiency. *Petrie*, 308 F.R.D. at 357. Over the Class Period, Qualcomm's float averaged over 99% of the

shares outstanding, indicating a high level of float that strongly supports a finding of efficiency. Tabak Report ¶49.

In sum, the market for Qualcomm shares was efficient throughout the Class Period. As a result, Lead Plaintiffs' claims are entitled to the "fraud-on-the-market" presumption of reliance, further supporting a finding of predominance.

### c. Damages Will Be Calculated Using a Common Methodology That Is Consistent With the Class-wide Theory of Liability

Once the common questions are resolved in this case, all that will remain is the task of computing each Class member's damages, which in securities cases is rather "mechanical." *Blackie*, 524 F.2d at 905. Courts in this Circuit and elsewhere routinely find that determining investors' damages is a common exercise in securities cases because damages can be calculated on a class-wide basis using an event study that measures investors' out-of-pocket damages. *See id.* ("[T]he amount of damages is invariably an individual question and does not defeat class action treatment."); *BofI Holding*, 2021 WL 3742924, at *7 ("Courts regularly reaffirm that the out-of-pocket, or event study, method matches plaintiffs' theory of liability under Section 10(b) of the Securities Exchange Act, making it the standard method for calculating damages in virtually every Section 10(b) class action.").

As Dr. Tabak explains, a common methodology may be used to determine damages traceable to Defendants' misrepresentations and omissions. Specifically, per share damages for all Class members are readily calculable using the standard "out-of-pocket" methodology. Tabak Report ¶¶58-59. Damages will be measured as the difference between the amount of stock price inflation at purchase and the amount of inflation in the stock price at sale. *Id.* ¶59. The proposed damages model under Section 10(b) relies on well-established event study methodology, where an expert estimates company-specific price movement relative to price movement

1    caused by other factors such as overall market conditions or dissemination of other

2    material but non-fraudulent information relayed by the subject company. *Id.* ¶¶60-

3    63. This is the same methodology that is employed in nearly every securities fraud

4    class action, and has been widely endorsed by courts in this District and throughout

5    the Ninth Circuit. *See, e.g.*, *BofI Holding*, 2021 WL 3742924, at *7; *Granite*

6    *Constr.*, 2021 WL 229310, at *6; *Angley*, 311 F. Supp. 3d at 1128-29; *In re Silver*

7    *Wheaton Corp. Sec. Litig.*, 2017 WL 2039171, at *14-16 (C.D. Cal. May 11,

8    2017); *Todd*, 2017 WL 821662, at *11.

9         Accordingly, common questions of law or fact predominate, and the first

10    prong of Rule 23(b)(3) is satisfied.

11         **2.    A Class Action Is Superior to Other Available Methods for**
          **Resolving This Controversy**

12

13         Rule 23(b)(3) also requires that class resolution be "superior to other

14    available methods for fairly and efficiently adjudicating the controversy." Fed. R.

15    Civ. P. 12(b)(3). "[A]djudicating this case as a class action makes sense,

16    particularly because of the consistency and efficiency of litigating alleged

17    securities fraud-on-the-market cases all at once." *HsingChing Hsu v. Puma*

18    *Biotech., Inc.*, 2017 WL 6210803, at *3 (C.D. Cal. Dec. 8, 2017). "Concentrating

19    potential plaintiffs' claims into a single action will promote judicial efficiency."

20    *BofI Holding*, 2021 WL 3742924, at *10 (citing *In re Juniper Networks, Inc. Sec.*

21    *Litig.*, 264 F.R.D. 584, 592 (N.D. Cal. 2009) ("Where thousands of identical

22    complaints would have to be filed, it is superior to concentrate claims through a

23    class action in a single forum.")). As the Ninth Circuit has explained, "[a] fair

24    examination of alternatives can only result in the apodictic conclusion that a class

25    action is the clearly preferred procedure." *Hanlon*, 150 F.3d at 1023.

26         The superiority inquiry considers four factors: "(A) the class members'

27    interests in individually controlling the prosecution or defense of separate actions;

28    (B) the extent and nature of any litigation concerning the controversy already

begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." *BofI Holding*, 2021 WL 3742924, at \*9; *see also* Fed. R. Civ. P. 23(b)(3).

Each of these factors is satisfied here. *First*, the number of Class members is far too numerous, and the typical claim is generally too small, for each individual Class member to have an interest in maintaining a separate action. *Second*, Lead Plaintiffs are aware of just one individual action brought on behalf of a Qualcomm common stock investor that seeks recovery under the federal securities laws for damages caused by Defendants' fraud. *Third*, the international geographical dispersion of the Class members makes it desirable to litigate Lead Plaintiffs' claims in this forum. *Finally*, there are no management difficulties that would preclude this Action from being maintained as a class action.

### C.   Lead Counsel Should Be Appointed Class Counsel

Lead Plaintiffs also respectfully request that the Court appoint Lead Counsel as Class Counsel. In appointing Class Counsel, Rule 23(g) provides that the Court must consider: (i) the work counsel has done; (ii) counsel's experience in handling, among other things, class actions and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv).

Bernstein Litowitz and Motley Rice amply satisfy the Rule 23(g) criteria. Under Lead Plaintiffs' supervision and direction, Lead Counsel has undertaken a vigorous prosecution of this case, including by, among things: thoroughly analyzing, researching and investigating the securities law claims at issue; drafting a detailed complaint; successfully opposing Defendants' motion to dismiss and motion for judgment on the pleadings; conducting ongoing fact discovery; retaining experts; and assembling a dedicated and highly-skilled team to prosecute the Action. *See* Lead Counsel Decl. ¶13.

Lead Counsel has significant experience prosecuting complex securities class actions, deep knowledge of the applicable securities laws, and an exemplary record of success. *See* Lead Counsel Decl., Exs. 3 & 4 (Firm Resumes). Working together as co-lead counsel on behalf of lead plaintiffs in other cases, the two firms have recovered over $100 million for investors. *See* Lead Counsel Decl. ¶11. Lead Counsel has devoted and will continue to devote the resources necessary to represent the Class throughout the course of this litigation.

Lead Counsel has thus demonstrated that they are fully qualified for appointment as Class Counsel under Rule 23(g). *See In re Mattel, Inc. Sec. Litig.*, 2021 WL 4704578, at *7 (C.D. Cal. Oct. 6, 2021) (appointing Bernstein Litowitz as Class Counsel under Rule 23(g)); *Hefler v. Wells Fargo & Co.*, 2018 WL 4207245, at *4 (N.D. Cal. Sept. 4, 2018) (appointing Bernstein Litowitz as Class Counsel under Rule 23(g) because it "obtained a good understanding of the issues and vigorously prosecuted this action by litigating this case through dispositive motions, the initial stages of formal discovery, and formal mediation" and "has significant prior experience in litigating securities fraud cases"); *Twitter*, 326 F.R.D. at 628 (appointing Motley Rice as co-Class Counsel under Rule 23(g) because of its "extensive class action securities litigation experience" and vigorous prosecution).

## IV.  **CONCLUSION**

For the foregoing reasons, Lead Plaintiffs request entry of an Order certifying this Action as a class action pursuant to Federal Rule of Civil Procedure 23; appointing AP7 and Metzler as Class Representatives; and approving Lead Plaintiffs' selection of Bernstein Litowitz and Motley Rice as Class Counsel.

1    Dated: May 23, 2022                 Respectfully submitted,

2
                                         BERNSTEIN LITOWITZ BERGER
3                                            & GROSSMANN LLP

4
                                         By: */s/ Jonathan D. Uslaner*
5                                        Jonathan D. Uslaner (Bar No. 256898)
                                         jonathanu@blbglaw.com
6                                        Richard D. Gluck (Bar No. 151675)
                                         rich.gluck@blbglaw.com
7                                        Lauren M. Cruz (Bar No. 299964)
                                         lauren.cruz@blbglaw.com
8                                        2121 Avenue of the Stars, Suite 2575
9                                        Los Angeles, CA 90067

10
11                                       Tel: (310) 819-3470

12                                       -and-

13
                                         Salvatore Graziano (*Pro Hac Vice*)
14                                       salvatore@blbglaw.com
                                         Jeroen Van Kwawegen (*Pro Hac Vice*)
15                                       jeroen@blbglaw.com
                                         Rebecca E. Boon (*Pro Hac Vice*)
16                                       rebecca.boon@blbglaw.com
17                                       Kate W. Aufses (*Pro Hac Vice*)
                                         kate.aufses@blbglaw.com
18                                       1251 Avenue of the Americas, 44th Floor
19                                       New York, NY 10020
                                         Tel: (212) 554-1400
20                                       Fax: (212) 554-1444
21
22                                       MOTLEY RICE LLC
23                                       Gregg S. Levin (*Pro Hac Vice*)
                                         glevin@motleyrice.com
24                                       William S. Norton (*Pro Hac Vice*)
                                         bnorton@motleyrice.com
25                                       Meghan Oliver (*Pro Hac Vice*)
26                                       moliver@motleyrice.com
                                         Christopher F. Moriarty (*Pro Hac Vice*)
27                                       cmoriarty@motleyrice.com
28

BRIEF IN SUPPORT OF CLASS                    Case No. 3:17-CV-00121-JO-MSB
CERTIFICATION                       23

28 Bridgeside Blvd.
Mount Pleasant, SC 29464
Tel: (843) 216-9000
Fax: (843) 216-9450
-and-
William H. Narwold (*Pro Hac Vice*)
bnarwold@motleyrice.com
One Corporate Center
20 Church Street, 17th Floor
Hartford, CT 06103

*Counsel for Lead Plaintiffs Sjunde AP-Fonden and Metzler Asset Management GmbH, and Lead Counsel for the Class*

## CERTIFICATE OF SERVICE

I hereby certify that on May 23, 2022, the foregoing document was served on counsel for Defendants in the above-captioned action.

Executed on May 23, 2022, at Los Angeles, California.


BERNSTEIN LITOWITZ BERGER
& GROSSMANN LLP


By: */s/ Jonathan D. Uslaner*
Jonathan D. Uslaner (256898)
Attorneys for Lead Plaintiffs
Email: jonathanu@blbglaw.com