# Exhibit 61

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS ~~FILED~~
### MARSHALL DIVISION

FILED
U. S. DISTRICT COURT
Eastern District of Texas

OCT   6 1998

DAVID MALAND, CLERK
By
Deputy _____

| | | |
|---|---|---|
| Ericsson Inc. and | § | |
| Telefonaktiebolaget | § | |
| LM Ericsson, | § | |
| | § | |
| Plaintiffs, | § | Civil Action No. 2-96-CV183 |
| | § | JURY |
| v. | § | Judge: David Folsom |
| | § | Magistrate Judge: Harry McKee |
| Qualcomm Incorporated, | § | |
| | § | |
| Defendant. | § | |

## QUALCOMM'S MOTION FOR PARTIAL SUMMARY JUDGMENT
## TO LIMIT ERICSSON'S REQUESTED RELIEF FOR THE
## ALLEGED INFRINGEMENT OF THE PATENTS-IN-SUIT

QUALCOMM'S MOTION FOR PARTIAL SUMMARY
JUDGEMENT TO LIMIT ERICSSON'S REQUESTED RELIEF FOR
THE ALLEGED INFRINGEMENT OF THE PATENTS-IN-SUIT
Civil Action No. 2-96-CV183

312760 v1/PA
6PBS01!.DOC
100598

Exhibit 61

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1071

Q2014FTC00783203
Q2017MDL1_00667466

## TABLE OF CONTENTS

PAGE

I. INTRODUCTION........................................................................................................ 1

II. STATEMENT OF UNDISPUTED FACTS ............................................................... 3

    A.   The TIA Requires Participating Members To Agree To License Any
        Patents That Are Required To Implement A Standard. ....................................... 3

    B.   Ericsson Repeatedly Stated During The IS-95 Standard Setting Process
        That It Would Make Its Patents Available. ........................................................ 5

    C.   Ericsson Continued To Assure Qualcomm And Others That It Would
        License Any Patents Essential To IS-95 After The Issuance Of The IS-95
        Standard. ............................................................................................................ 6

III. LEGAL ARGUMENT ............................................................................................ 10

    A.   Summary Judgment Standard............................................................................ 10

    B.   Ericsson's Remedies Should Be Limited Under The Doctrine Of Equitable
        Estoppel To Licensing Fees Based On Reasonable Terms And Conditions
        Free Of Any Unfair Discrimination. ................................................................. 11

        1.   Ericsson Led Qualcomm To Reasonably Infer That Ericsson
            Would Not Seek To Prevent Qualcomm From Developing,
            Manufacturing And Marketing IS-95 Products. ...................................... 14

        2.   Qualcomm Relied On Ericsson's Promises During And After The
            IS-95 Standard Setting Process. .............................................................. 15

        3.   Qualcomm Will Be Severely Prejudiced If Ericsson Is Now
            Allowed To Prevent Qualcomm From Developing, Manufacturing
            And Marketing IS-95 Products. .............................................................. 16

    C.   Qualcomm Is Entitled To An Implied License "Under Reasonable Terms
        And Conditions That Are Demonstrably Free From Any Unfair
        Discrimination." ................................................................................................ 17

IV. CONCLUSION....................................................................................................... 18

QUALCOMM'S MOTION FOR PARTIAL SUMMARY
JUDGEMENT TO LIMIT ERICSSON'S REQUESTED RELIEF FOR
THE ALLEGED INFRINGEMENT OF THE PATENTS-IN-SUIT
Civil Action No. 2-96-CV183 – Page i

312760 v1/PA
6PBS011.DOC
100598

Exhibit 61

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1072

Q2014FTC00783204
Q2017MDL1_00667467

TO THE HONORABLE JUDGE FOLSOM:

Defendant Qualcomm Incorporated ("Qualcomm") respectfully files this motion for

partial summary judgment or, in the alternative, summary adjudication to limit the relief

requested by plaintiffs Ericsson Inc. and Telefonaktiebolaget LM Ericsson (hereinafter

collectively "Ericsson") for the alleged infringement of the patents-in-suit.

I.

## INTRODUCTION

> Please be assured that we [Ericsson] will honor our undertaking
> with the TIA to license any patents whose use would be required
> for compliance with IS-95 under reasonable terms and conditions
> that are demonstrably free of any unfair discrimination.
> — Letter from Ericsson to Qualcomm dated
> August 29, 1995

For the three years prior to the filing of this lawsuit, Ericsson repeatedly, and without

qualification, promised Qualcomm and others that it would license "under reasonable terms and

conditions that are demonstrably free from any unfair discrimination" any patents it held that

were required to develop products compliant with the "Mobile Station–Base Station Standard for

Dual-Mode Wideband Spread Spectrum Cellular System" (the "IS-95 standard"). It made that

promise to the Telecommunications Industry Association (the "TIA") and its participants,

including Qualcomm, during the standards setting process that led to the issuance of IS-95 in

July 1993. It made the same promise in separate letters to the TIA and Qualcomm more than

two years after the adoption of IS-95. Ericsson also repeated the promise publicly on a number

of additional occasions.

Furthermore, Ericsson actively participated in the TIA process that led to the adoption of

IS-95 fully aware of the fact that the TIA's internal policies prohibited the adoption of any

standard unless all participants in the standard setting process agreed to license whatever

QUALCOMM'S MOTION FOR PARTIAL SUMMARY
JUDGEMENT TO LIMIT ERICSSON'S REQUESTED RELIEF FOR
THE ALLEGED INFRINGEMENT OF THE PATENTS-IN-SUIT
Civil Action No. 2-96-CV183 – Page 1

312760 v1/PA
6PBS01!.DOC
100398

Exhibit 61

1073

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC00783205
Q2017MDL1_00667468

"essential" patents they possessed under reasonable terms and conditions. In fact, a senior Ericsson official chaired the committee that drafted and proposed the TIA policy.

Remarkably, Ericsson now seeks in this lawsuit to prevent Qualcomm from developing, manufacturing or selling products which Ericsson alleges infringe ten patents (the "Alleged TIA Patents") that it believes are essential to the IS-95 standard.[1] In short, Ericsson seeks to repudiate its repeated promises upon which Qualcomm and the entire telecommunications industry relied. For three years, Qualcomm relied on Ericsson's many promises and built a multi-billion dollar business based on the IS-95 technology, secure in the knowledge that it could license any patents determined to be necessary for those products. Now that Ericsson perceives that Qualcomm's business poses a threat to Ericsson's dominant position in the worldwide marketplace, it seeks to renege on its promises and to secure a court order enjoining Qualcomm's operations. As a matter of law, however, Ericsson is estopped from doing so.

There should be no mistake: Qualcomm strenuously denies that it infringes any of Ericsson's patents that Ericsson claims are essential to IS-95. However, Qualcomm's assertions of non-infringement and invalidity do not somehow excuse Ericsson of its obligation to license those patents determined to be essential to IS-95. Ericsson did not promise that it would license its patents only if industry participants accepted, without challenge, Ericsson's representations that it possessed patents essential to the standard. Nor would such a position be consistent with

---

[1]  In its response to Interrogatory No. 1 of Qualcomm's First Set of Interrogatories (Exh. 1), Ericsson identified the following patents-in-suit as being essential to the practice of the IS-95 standard: 5,088,108; 5,109,528; 5,327,577; 5,148,485; 5,239,557; 5,282,250; 5,390,245; 5,430,760; 5,551,073; and 5,193,140. (Ericsson has recently informed Qualcomm that it intends to dismiss with prejudice its claims relating to the 5,239,557, the 5,430,760 and the 5,148,485 patents. They remain subject to this motion pending the dismissal.) It is unclear whether Ericsson claims that the eleventh patent-in-suit, 5,230,003, is essential to the IS-95 standard. Although Ericsson did not identify the '003 patent in response to Interrogatory No. 1, Ericsson has stated, "This case involves eleven patents owned by Ericsson, which Ericsson believes are essential patents with respect to certain standards for cellular telephony – i.e., patents that must be practiced by any person who sells equipment that will comply with these standards." Ericsson's Motion to Compel Response to Ericsson's Third Set of Document Requests, August 3, 1998, p. 2. To the extent, Ericsson alleges the 5,230,003 patent is essential to IS-95, it should be included as an "Alleged TIA Patent."

QUALCOMM'S MOTION FOR PARTIAL SUMMARY
JUDGEMENT TO LIMIT ERICSSON'S REQUESTED RELIEF FOR
THE ALLEGED INFRINGEMENT OF THE PATENTS-IN-SUIT
Civil Action No. 2-96-CV183 – Page 2

312760 v1/PA
6PBS011.DOC
100598

Exhibit 61
1074

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC00783206
Q2017MDL1_00667469

TIA policy. Rather, by participating in the TIA process and by repeatedly promising Qualcomm and others, Ericsson has lost its ability to enjoin Qualcomm and others from practicing patents that are essential to IS-95.

Accordingly, Qualcomm respectfully requests that this Court grant partial summary judgment limiting Ericsson's relief in this action, if any, to that which is consistent with the TIA policy and Ericsson's numerous representations. Specifically, Qualcomm requests that Ericsson be estopped from seeking any injunctive relief as to its Alleged TIA Patents, that Ericsson be estopped from seeking any lost profits or other damages as to its Alleged TIA Patents other than license fees "under reasonable terms and conditions that are demonstrably free from any unfair discrimination," and that Ericsson be required to license to Qualcomm any Alleged TIA Patents that are essential to practice the IS-95 standard.

A determination that Ericsson's potential recovery is so limited will reduce the issues for trial and aid the parties in properly evaluating this case and their respective exposures. The result will be a significantly enhanced opportunity for a negotiated resolution of this litigation as well as the preservation of judicial resources.

## II.

## STATEMENT OF UNDISPUTED FACTS

### A. The TIA Requires Participating Members To Agree To License Any Patents That Are Required To Implement A Standard.

Over the past three decades, industry standards groups have been a driving force in the growth of many industries, including wireless communications. [*See, generally*, Exh. 2 at 1, Russell T. Wong, et al., *Legal Implications of Standard Setting Activity*, paper presented at the Second Annual Advance Patent Law Institute, sponsored by the University of Texas School of Law, Nov. 6-7, 1997.] The goal of these groups is to develop and maintain voluntary industry

QUALCOMM'S MOTION FOR PARTIAL SUMMARY
JUDGEMENT TO LIMIT ERICSSON'S REQUESTED RELIEF FOR
THE ALLEGED INFRINGEMENT OF THE PATENTS-IN-SUIT
Civil Action No. 2-96-CV183 – Page 3

312760 v1/PA
6PBS01!.DOC
100598

Exhibit 61

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1075

Q2014FTC00783207
Q2017MDL1_00667470

standards and specifications for implementing the particular technology in question. The results typically include improved technologies, a greater number of companies manufacturing and selling products using those technologies and greater compatibility among those products.

The Telecommunications Industry Association ("TIA"), a trade group consisting primarily of wireless equipment manufacturers, is the primary standard-setting body for the telecommunications industry in the United States. [Exh. 3, TIA Engineering Manual dated December 6, 1991, at i.] Qualcomm and Ericsson are both members of the TIA.

Like most standards setting bodies, the TIA has declared that it will not approve a proposed standard unless any participant holding a patent that would be required for compliance with the standard agrees to license the patent without compensation or "under reasonable terms and conditions that are demonstrably free from any unfair discrimination." This basic policy ensures that all industry participants will be able to develop, manufacture and sell products compliant with the relevant standard without incurring the risk that patent holders will be able to ~~claim damages through~~ The TIA's Intellectual Property Rights Policy, as stated in TIA

Advisory Note No. 11, provides, in part:

> (2) Statement from the patent holder
>
> Prior to approval of such a proposed TIA Standard or Interim Standard, TIA shall receive from the patent holder (in a form approved by TIA) either: assurance in the form of a general disclaimer to the effect that the patentee does not hold and does not anticipate holding any invention whose use would be required for compliance with the proposed TIA Standard or Interim Standard or assurance that:
>
> > (1) A license will be made available without compensation to applicants desiring to utilize the license for the purpose of implementing the standard;
> >
> > or

QUALCOMM'S MOTION FOR PARTIAL SUMMARY
JUDGEMENT TO LIMIT ERICSSON'S REQUESTED RELIEF FOR
THE ALLEGED INFRINGEMENT OF THE PATENTS-IN-SUIT
Civil Action No. 2-96-CV183 – Page 4

312760 v1/PA
6PBS01!.DOC
100598

Exhibit 61
1076

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC00783208
Q2017MDL1_00667471

> (2) A license will be made available to applicants under reasonable terms and conditions that are demonstrably free of any unfair discrimination.
>
> The statement from the patent holder must be stated in exactly the words prescribed above. TIA will not accept statements which are conditional or which reveal the terms of licensing.

[Exh. 4, TIA Advisory Note 11 dated May 18, 1993.]

Interestingly, the policy was proposed and drafted in 1993 by TIA's Ad-Hoc Intellectual Property Rights Committee, which was chaired by Barry Kratz, Ericsson's Director of Business and Industry.

**B. Ericsson Repeatedly Stated During The IS-95 Standard Setting Process That It Would Make Its Patents Available.**

In 1989, the TIA issued the IS-54 standard for digital cellular communications. The standard was based on TDMA technology and included substantial contributions from Ericsson. In January 1992, the Cellular Telecommunications Industry Association ("CTIA")[2] requested the TIA to consider a second digital cellular standard, this time largely based on Qualcomm's CDMA technology. In March 1992, the TIA established a new subcommittee, identified as TR45.5, to work towards the adoption of a standard based on CDMA technology. [Exh. 5, Proposed "Scope" and "Charter" for TR45.5 dated March 30, 1992.] The standard, when adopted in July 1993, become known as IS-95.[3] The TIA's Intellectual Property Rights Policy was in effect at the time IS-95 was adopted.

---

[2] The CTIA is a membership of telephone service providers.

[3] The IS-95 standard was subsequently revised by the TIA and published as IS-95-A in May 1995. IS-95 and IS-95A are referred to throughout this motion collectively as IS-95.

QUALCOMM'S MOTION FOR PARTIAL SUMMARY
JUDGEMENT TO LIMIT ERICSSON'S REQUESTED RELIEF FOR
THE ALLEGED INFRINGEMENT OF THE PATENTS-IN-SUIT
Civil Action No. 2-96-CV183 – Page 5

312760 v1/PA
6PBS01!.DOC
!00598

Exhibit 61

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1077

Q2014FTC00783209
Q2017MDL1_00667472

Shortly after the adoption of the Intellectual Property Rights Policy, Ericsson informed

the TIA that it believed it had patents essential to the proposal being considered by the TR 45.5

subcommittee and that it intended to comply with the TIA's policies with regard to those patents:

> In accordance with Section 2 of the recently adopted TIA Patent
> Policy, Ericsson wishes to inform you that, in our opinion, we hold
> patents whose use would be required for compliance with PN-3118
> (IS-95). Accordingly, a license will be made available to
> applicants under reasonable terms and conditions that are
> demonstrably free of any unfair discrimination.

[Exh. 6, Letter from Barry Kratz to Gerald Flynn, Chairman of TR45.5 dated April 16, 1993

(emphasis added).] Ericsson's commitment to abide by the Intellectual Property Rights Policy

was confirmed by the TR45.5 chairman in the minutes of the April 19, 1993 subcommittee

meeting. [Exh. 7, TR45.5 Meeting Report dated April 19, 1993.]

By letter dated May 11, 1993, Ericsson identified Patent Nos. 5,088,108 and 5,109,528 as

being "required for compliance with [IS-95]." Again, Ericsson stated that it was "willing to

license these patents under reasonable terms and conditions that are demonstrably free of any

unfair competition." [Exh. 8, Letter from Barry Kratz to Gerald J. Flynn dated May 11, 1993.]

Two months later, the TIA issued the "Mobile Station – Base Station Standard for Dual-Mode

Wideband Spread Spectrum Cellular System" or IS-95.

## C.  Ericsson Continued To Assure Qualcomm And Others That It Would License Any Patents Essential To IS-95 After The Issuance Of The IS-95 Standard.

For over two years following the adoption of IS-95, Ericsson failed to identify any

additional patents as being essential to IS-95 even though it had promised to do so in May of

1993. [Exh 8, Letter from Barry Kratz to Gerald Flynn dated May 11, 1993.] In May of 1995,

the TIA wrote to Ericsson requesting Ericsson to disclose any additional patents it considered

QUALCOMM'S MOTION FOR PARTIAL SUMMARY
JUDGEMENT TO LIMIT ERICSSON'S REQUESTED RELIEF FOR
THE ALLEGED INFRINGEMENT OF THE PATENTS-IN-SUIT
Civil Action No. 2-96-CV183 – Page 6

312760 v1/PA
6PBS011.DOC
100598

Exhibit 61

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1078

Q2014FTC00783210
Q2017MDL1_00667473

essential to the IS-95 based standard for PCS communications.[4] [Exhibit 9, letter from Thanos Kipreos to Barry Kratz dated May 16, 1995.] In this letter, the TIA also reminded Ericsson that it would not adopt a proposed standard unless participating members holding patents essential to the standard agreed to license the patents in accordance with the Intellectual Property Rights Policy. [*Id.*] When Ericsson failed to respond, the TIA sent another letter, again reminding Ericsson of the policy:

> TIA and American National Standards Institutes (ANSI) IPR policies will not allow these standards to be published if such essential patent IPR are not available to others on licensing terms that are: (1) without compensation or (2) reasonably and demonstrably free of any unfair discrimination.

[Exh. 11, Letter from Thanos Kipreos to Barry Kratz dated August 3, 1995.] Although Ericsson remained silent, five additional patents were issued to Ericsson during this period (the 5,239,557 patent in August 1993, the 5,282,250 patent in January 1994, the 5,327,577 patent in July 1994, the 5,390,245 patent in February 1995, and the 5,430,760 patent in July 1995) that it claims in this lawsuit to be essential to IS-95.[5]

During this same period, Qualcomm began to invest heavily in the development, production and marketing of products based on the IS-95 standard. [Exh. 12, Declaration of Dr. Irwin M. Jacobs ("Jacobs Declaration"), at ¶ 6.] By the end of 1995, Qualcomm had invested nearly $400 million in the research, development, production and marketing of IS-95 compliant products. [*Id.*] For the period from July 1993 (when the IS-95 standard was adopted) to December 1995 (when Ericsson finally identified additional essential patents), the investment in

---

[4] At this time, the American National Standards Institute ("ANSI"), in conjunction with the TIA, was considering J-STD-008, a Personal Communications Services ("PCS") standard based on IS-95. (PCS communications use spectrum in the 1800 MHz to 2000 MHz band while cellular communications use spectrum in the 800 MHz to 900 MHz band.) ANSI has a very similar intellectual property rights policy as the TIA. [Exh. 10, ANSI's Procedures for the Development and Coordination of American National Standards.]. The "upbanded" IS-95 standard was adopted in July 1996.

[5] All of the patents-in-suit had been applied for and nine of the eleven had been issued by May 1995.

QUALCOMM'S MOTION FOR PARTIAL SUMMARY
JUDGEMENT TO LIMIT ERICSSON'S REQUESTED RELIEF FOR
THE ALLEGED INFRINGEMENT OF THE PATENTS-IN-SUIT
Civil Action No. 2-96-CV183 – Page 7

312760 v1/PA
6PB8011.DOC
100598

Exhibit 61
1079

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC00783211
Q2017MDL1_00667474

IS-95 products amounted to roughly $300 million [*Id* ] Qualcomm had also entered into roughly 30 licensing agreements with entities throughout the United States and the world in which it licensed its essential IS-95 patents. [*Id*]. And that investment was beginning to pay off: in the summer of 1995, both PrimeCo and Sprint Telecommunications Venture, two major cellular providers, announced their plans to install IS-95 systems, rather than systems based on Ericsson's TDMA technology, in their service areas. [Exh 13, Sprint Telecommunications Venture Press Release dated July 21, 1995; Exh. 12, Jacobs Declaration at ¶ 6.] Qualcomm and its CDMA technology were becoming a competitive threat to Ericsson and its TDMA systems.

This threat apparently jolted Ericsson into desperate action. Despite two years of silence, Ericsson announced that it held IS-95 "blocking" patents less than one month after the Sprint announcement. On August 17, 1995, Ericsson's Chairman, Lars Ramqvist, stated in a public report to the company's shareholders:

> The selection of the CDMA technology by several PCS operators
> will not noticeably affect Ericsson, despite Ericsson having elected
> currently not to continue with the system development of CDMA
> in accordance with the newly adopted U.S. Standard IS-95 ... Our
> advanced CDMA development has resulted in a significant number
> of U.S. patents. In our opinion, several represent blocking patents
> within the USA IS-95 standard, whereby future users of this
> technology must have a license from Ericsson."

[Exh. 14, Ericsson Interim Report for Six Months Ending June 30, 1995.][6]

Both Qualcomm and the TIA immediately wrote to Ericsson requesting that it identify its "blocking" patents. [Exh. 15, Letter from Louis Lupin to Lars Ramqvist dated August 21, 1995; Exh. 16, Letter from Thanos Kipreos to Barry Kratz dated August 25, 1995.] On August 29, Ericsson responded to Qualcomm by stating that it would disclose the relevant patents "in the near future" and by reassuring Qualcomm:

---

[6]   Qualcomm's stock declined by $4.63, or nearly 9 percent, shortly after the publication of Mr. Ramqvist's announcement

QUALCOMM'S MOTION FOR PARTIAL SUMMARY
JUDGEMENT TO LIMIT ERICSSON'S REQUESTED RELIEF FOR
THE ALLEGED INFRINGEMENT OF THE PATENTS-IN-SUIT
Civil Action No. 2-96-CV183 – Page 8

312760 v1/PA
6PBS011.DOC
100598

Exhibit 61

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1080

Q2014FTC00783212
Q2017MDL1_00667475

> Please be assured that we will honor our undertaking with the TIA
> to license any patents whose use would be required for compliance
> with IS-95 under reasonable terms and conditions that are
> demonstrably free of any unfair discrimination.

[Exh. 17, Letter from Walo von Greyerz to Louis Lupin dated August 29, 1995 (emphasis
added).] On September 19, 1995, Ericsson responded to the TIA:

> Ericsson fully supports TIA's IPR policy. Ericsson will license
> applicants under reasonable terms and conditions that are
> demonstrably free of any unfair discrimination.

[Exh. 18, Letter from Barry Kratz to Thanos Kipreos dated September 19, 1995 (emphasis
added).]

On November 14, 1995, Ericsson wrote to Qualcomm and several other companies
identifying 21 patents held by Ericsson that it stated were "relevant" to IS-95. [Exh. 19, Letter
from Mans Ekelof to Harvey White dated November 14, 1995.] The letter indicated that a
"substantial number" of those 21 patents were essential to the IS-95 standard. Ericsson still
refused, however, to identify specifically its allegedly essential patents (other than the two
identified in 1993). A similar letter identifying the 21 "relevant" patents was sent to the TIA on
November 27, 1995. [Exh. 20, Letter from Barry Kratz to Thanos Kipreos dated November 27,
1995.]

It was not until December 11, 1995, two and a half years after the adoption of IS-95 and
four months after Mr. Ramqvist's "blocking" statement, that Ericsson identified any patents in
addition to the two identified in 1993 that it asserts are essential to IS-95. [Exh. 21, Letter from
Mans Ekelof to Louis Lupin dated December 11, 1995.][7] After disclosing these eight allegedly

---

[7]   In addition to the 5,088,108 and 5,109,528 patents disclosed in May 1993, Ericsson identified at that time the following
patents as allegedly essential to IS-95:  5,148,485; 5,239,557; 5,282,250; 5,290,245; 5,237,577; 5,430,760.  Ericsson
recently informed Qualcomm that it intends to dismiss, with prejudice, all its claims with regard to three of these patents.
See Note 1 supra.

QUALCOMM'S MOTION FOR PARTIAL SUMMARY
JUDGEMENT TO LIMIT ERICSSON'S REQUESTED RELIEF FOR
THE ALLEGED INFRINGEMENT OF THE PATENTS-IN-SUIT
Civil Action No. 2-96-CV183 – Page 9

312760 v1/PA
6PBS011.DOC
10059%

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Exhibit 61
1081

Q2014FTC00783213
Q2017MDL1_00667476

essential patents, Ericsson again confirmed to Qualcomm its commitment to license such patents on a fair and non-discriminatory basis. [Exh. 22, Letter from Mans Ekelof to Louis Lupin dated January 9, 1996.] On October 15, 1996, nearly one year later, Ericsson identified the 5,193,140 patent as essential to the IS-127 standard, which has been incorporated into IS-95-A. It was not until Ericsson responded to Qualcomm's First Set of Interrogatories on July 28, 1997, that it identified the 5,551,073 patent as essential to IS-95. [Exh. 1.]

## III.

## LEGAL ARGUMENT

### A. Summary Judgment Standard.

Summary judgment is appropriate when the moving party demonstrates that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. FED. R. CIV. PROC. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Cyrix Corp. v. Intel Corp.*, 879 F. Supp. 666, 667-668 (E.D. Tex. 1995), *aff'd*, 77 F.3d 1381 (Fed. Cir. 1996). The Court may properly dispose of "any part" of a case by summary judgment or summary adjudication. FED. R. CIV. PROC. 56(a). As the moving party, Qualcomm has the initial burden of identifying "the materials on file that it believes demonstrate the absence of any genuine issues of material fact." FED. R. CIV. P. 56(e). Once Qualcomm satisfies this requirement, the burden shifts to Ericsson to set forth specific facts showing that there is a genuine issue of fact for trial. *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Association*, 809 F.2d 626, 630 (9th Cir. 1987). If Ericsson cannot meet that burden, Qualcomm's motion must be granted. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322.

Summary judgment is appropriate in this case as there is no genuine issue of material fact relating to Qualcomm's equitable estoppel defense. Furthermore, the resolution of this issue by

QUALCOMM'S MOTION FOR PARTIAL SUMMARY
JUDGEMENT TO LIMIT ERICSSON'S REQUESTED RELIEF FOR
THE ALLEGED INFRINGEMENT OF THE PATENTS-IN-SUIT
Civil Action No. 2-96-CV183 – Page 10

312760 v1/PA
6PBS01!.DOC
100598

Exhibit 61
1082

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC00783214
Q2017MDL1_00667477

the Court at this time will permit the parties to better evaluate the case and perhaps lead to a

negotiated resolution.

B.   **Ericsson's Remedies Should Be Limited Under The Doctrine Of Equitable Estoppel
To Licensing Fees Based On Reasonable Terms And Conditions Free Of Any Unfair
Discrimination.**

While "equitable estoppel is not limited to a particular factual situation nor subject to

resolution by simple or hard and fast rules," *A.C. Aukerman Co. v. R.C. Chaides Construction

Co.*, 960 F.2d 1020, 1041 (Fed. Cir. 1992) (*en banc*), the Federal Circuit has identified the

following elements of an equitable estoppel defense to patent infringement claims:

(1)   The patentee, through misleading conduct, leads the alleged infringer to
reasonably infer that the patentee does not intend to enforce its patent
against the alleged infringer. "Conduct" may include specific statements,
action, inaction, or silence where there was an obligation to speak.

(2)   The alleged infringer relied on that conduct.

(3)   Due to its reliance, the alleged infringer will be materially prejudiced if
the patentee is allowed to proceed with its claim.

*A. C. Aukerman*, 960 F.2d at 1028.

Several courts have applied the principle in estopping participants in industry standard-

setting committees from fully enforcing their patent rights as a result of their conduct before

those committees. For example, in *Stambler v. Diebold, Inc.*, 11 U.S.P.Q.2d (BNA) 1709

(E.D.N.Y. 1988), *aff'd*, 11 U.S.P.Q.2d (BNA) 1715, 1716 (Fed. Cir. 1989), the defendant sought

summary judgment to preclude plaintiff-patentee from seeking damages and equitable relief

based on, among other things, equitable estoppel. Ten years before filing his infringement

action, the patentee participated in an American National Standards Institute ("ANSI") standards

committee that was in the process of adopting the very standard the patentee ultimately alleged

was covered by his patent. During the standards setting process the plaintiff-patentee failed to

312760 v1/PA
6PBS011.DOC
100598

Exhibit 61

1083

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC00783215
Q2017MDL1_00667478

disclose the existence of its essential patents, which the court noted "could reasonably be interpreted as an indication that plaintiff had abandoned its patent claims." *Id.* at 1715. In holding that the doctrine of equitable estoppel barred the patentee from receiving any injunctive relief, the court concluded that the patentee's conduct before the standards setting committee limited his ability to enforce his patent rights: "Plaintiff could not remain silent while an entire industry implemented the proposed standard and when the standards are adopted assert that its patent covered what manufacturers believed to be an open and available standard." *Id.*

In *Potter Instrument Co., Inc. v. Storage Tech. Corp.*, 207 U.S.P.Q. (BNA) 763, 766 (E.D. Va. 1980), *aff'd on other grounds*, 641 F.2d 190 (4th Cir. 1981), a patentee sued for infringement based on the defendant's making and selling of products compliant with a standard adopted by ANSI. The court dismissed the action holding that the patentee was equitably estopped from enforcing its patent against the defendant. Its holding was based on two critical factors. First, the ANSI standards setting committee "had a written policy, of which all members were aware, stating that when any one or more patents are to be included within a proposed industry standard, the owner of such patent must bring to the attention of the Subcommittee the existence of such patents and agree to offer licenses to members of the affected industry on reasonable and nondiscriminatory terms as a prerequisite to the adoption of the industry-wide standard." *Id.* at 766. And second, representatives of the patentee had attended one of the ANSI meetings but did not disclose its ownership of the patent. *Id.* The court concluded that "[e]quity will rarely, if ever, permit one to waive by acquiescence its alleged patent rights for a long period of time and attempt to assert them after they have been adopted as the industry standard." *Id.* at 769.

QUALCOMM'S MOTION FOR PARTIAL SUMMARY
JUDGEMENT TO LIMIT ERICSSON'S REQUESTED RELIEF FOR
THE ALLEGED INFRINGEMENT OF THE PATENTS-IN-SUIT
Civil Action No. 2-96-CV183 – Page 12

312760 v1/PA
6PBS01!.DOC
100598

Exhibit 61
1084

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC00783216
Q2017MDL1_00667479

In a similar standards setting context, the Federal Circuit concluded that the patentee had granted the defendant an irrevocable, royalty-free implied license under the patent as a result of its conduct. *Wang Laboratories, Inc. v. Mitsubishi Electronics Co. of America*, 103 F.3d 1571 (Fed. Cir. 1997). Among other things, the patentee encouraged the relevant standard setting body to adopt its technology as an industry standard without ever informing that body or its members of its ongoing pursuit of patents covering the technology. *Id.* at 1575. In upholding the jury's finding of an implied license, the Federal Circuit held that the license was the legal result of equitable estoppel and explained that "an implied license merely signifies a patentee's waiver of the statutory right to exclude others from making, using or selling the patented invention." *Id.* at 1580.

In each of these cases, the patentees were equitably estopped from exercising <u>any</u> of their patent rights due primarily to their silence about their patent portfolios before various standards setting bodies. The defendants in each of those cases had developed, manufactured or sold products compliant with the standards (and which potentially infringed the patents) based on the belief that the standards setting process had secured their ability to do so without infringing any patents. The courts concluded rightly that the conduct of the patentees, which enforced those beliefs, estopped them from recovering any relief whatsoever from the defendants.

While the instant case is closely analogous to the cases cited above, it differs in two important aspects, both of which weigh in favor of Qualcomm's equitable estoppel claim. First, Ericsson engaged in repeated *affirmative* representations regarding its willingness to abide by the TIA's Intellectual Property Rights Policy (rather than merely remaining silent). Second, the relief sought by Qualcomm is much more *limited* than that granted by the courts in the cases discussed above. Qualcomm strenuously denies that it is infringing any of the Alleged TIA

QUALCOMM'S MOTION FOR PARTIAL SUMMARY
JUDGEMENT TO LIMIT ERICSSON'S REQUESTED RELIEF FOR
THE ALLEGED INFRINGEMENT OF THE PATENTS-IN-SUIT
Civil Action No. 2-96-CV183 – Page 13

312760 v1/PA
6PBS01!.DOC
10059R

Exhibit 61

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1085

Q2014FTC00783217
Q2017MDL1_00667480

Patents. However, if it is found to have infringed those patents, Qualcomm does not seek in this motion to deny Ericsson the right to exercise all of its patent rights as the courts did in the cases cited above. Rather, this motion merely seeks a limitation of the relief sought to the recovery of license royalties, "under reasonable terms and conditions that are demonstrably free of any unfair discrimination," if Qualcomm is found to have infringed those patents. That is, Qualcomm merely seeks to hold Ericsson to the repeated promises it made to Qualcomm and others who participated in the IS-95 standard setting process.

As set forth below, there is no material dispute with regard to any of the three elements of an equitable estoppel defense: Ericsson's conduct and its many promises led Qualcomm to reasonably infer that it could practice the IS-95 standard without fear that Ericsson would seek to enjoin its activities; Qualcomm relied on Ericsson's conduct and promises; and, as a result of that reliance, Qualcomm would be materially prejudiced if Ericsson were allowed to proceed with its claims for injunctive relief and for lost profits. Accordingly, Ericsson should be estopped from seeking any relief other than royalties "under reasonable terms and conditions free from any unfair discrimination."

1. **Ericsson Led Qualcomm To Reasonably Infer That Ericsson Would Not Seek To Prevent Qualcomm From Developing, Manufacturing And Marketing IS-95 Products.**

In order for a patentee to be equitably estopped from fully enforcing its rights, the patentee must have communicated to the alleged infringer that the patentee would somehow refrain from enforcing some or all of its rights as a patent holder. That is,

> Properly focused, the issue here is whether Aukerman's [Ericsson's] course of conduct reasonably gave rise to an inference in Chaides [Qualcomm] that Aukerman [Ericsson] was not going to enforce ... [its] patents against Chaides [Qualcomm].

*A.C. Aukerman*, 960 F.2d at 1043

QUALCOMM'S MOTION FOR PARTIAL SUMMARY
JUDGEMENT TO LIMIT ERICSSON'S REQUESTED RELIEF FOR
THE ALLEGED INFRINGEMENT OF THE PATENTS-IN-SUIT
Civil Action No. 2-96-CV183 – Page 14

312760 v1/PA
6PDS011.DOC
100598

Exhibit 61
1086

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

In *Stambler, Potter* and *Wang*, the course of conduct involved, among other things, silence before a standards setting committee. The inference drawn by each of the defendants was that the plaintiffs held no patents essential to the standards and, therefore, the defendants were free to practice the standard without fear of interference. In this case, the course of conduct involves Ericsson's affirmative representations made repeatedly before the TIA and directly to Qualcomm. The inference that Qualcomm reasonably inferred from that conduct was that Ericsson would not seek to prevent Qualcomm from developing, manufacturing and marketing IS-95 compliant products. [Exh. 12, Jacobs Declaration at ¶ 9.] That is, if it were determined that Qualcomm (like the defendants in the cases cited above) was indeed infringing Ericsson's patent, Ericsson would be required to license those patent rights "under reasonable terms and conditions that are demonstrably free of any unfair discrimination."

There is no genuine dispute that Ericsson repeatedly assured Qualcomm and others that it would license its patents essential to the practice of the IS-95 standard. Nor is there any question that the TIA's-Intellectual Property Rights Policy, drafted by a subcommittee chaired by Ericsson's own Barry Kratz, required Ericsson to honor its commitment to license any patents that it might have. Ericsson now seeks to do the very thing it promised on so many occasions that it would not do: stop Qualcomm from building and selling IS-95 based products.

### 2. Qualcomm Relied On Ericsson's Promises During And After The IS-95 Standard Setting Process.

The essence of the reliance element of the equitable estoppel defense to a patent infringement claim is that the alleged infringer "have had a relationship or communication with the plaintiff which lulls the infringer into a sense of security..." *Aukerman*, at 1042-1043. Qualcomm's relationship with Ericsson as participating members of the TIA standard setting process lulled Qualcomm into what turned out to be a false sense of security that it would be free

QUALCOMM'S MOTION FOR PARTIAL SUMMARY
JUDGEMENT TO LIMIT ERICSSON'S REQUESTED RELIEF FOR
THE ALLEGED INFRINGEMENT OF THE PATENTS-IN-SUIT
Civil Action No. 2-96-CV183 – Page 15

312760 v1/PA
6PBS01!.DOC
100598

Exhibit 61
1087

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC00783219
Q2017MDL1_00667482

to practice the standard adopted by the TIA and that it could obtain a license from Ericsson for any patents necessary to practice the adopted standard.

Qualcomm relied on both Ericsson's participation in the TIA standards setting process and on Ericsson's many representations that any patent rights held by Ericsson would be made available "under reasonable terms and conditions that are demonstrably free from any unfair discrimination." [Exh. 12, Jacobs Declaration, at ¶ 9.] Qualcomm also relied on the fact that Ericsson never even approached Qualcomm seeking to license its patents for well over two years after the IS-95 standard was adopted. It was reasonable for Qualcomm to invest huge sums of money in its IS-95 programs secure in the knowledge that the IS-95 standard could be built to without fear that Ericsson or others involved in the process that led to that standard would seek to enjoin its activities. [*Id.* at ¶ 6.]

3.    **Qualcomm Will Be Severely Prejudiced If Ericsson Is Now Allowed To Prevent Qualcomm From Developing, Manufacturing And Marketing IS-95 Products.**

If Ericsson is not estopped from seeking relief other than reasonable license fees, Qualcomm will suffer severe prejudice. Qualcomm invested substantially in IS-95 compliant products and technologies since the adoption of the standard in 1993.[8] From July 1993 to December 1995, Qualcomm invested roughly \$300 million dollars in the research, development, production and marketing of IS-95 compliant products. [*Id.*] In 1996, the sale of IS-95 and related products represented 73 percent of Qualcomm's total revenues. [*Id.* at ¶ 11.] That percentage increased to 86 percent in 1997. A ruling preventing Qualcomm from practicing some or all of the IS-95 standard would significantly impact those operations.

---

[8]    Prejudice may be established by a change in economic position in reliance on the patentee's conduct. *Auckerman*, 960 F.2d at 1043.

QUALCOMM'S MOTION FOR PARTIAL SUMMARY
JUDGEMENT TO LIMIT ERICSSON'S REQUESTED RELIEF FOR
THE ALLEGED INFRINGEMENT OF THE PATENTS-IN-SUIT
Civil Action No. 2-96-CV183 – Page 16

312760 v1/PA
6FBS011.DOC
100598

Exhibit 61

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1088

Q2014FTC00783220
Q2017MDL1_00667483

C.     **Qualcomm Is Entitled To An Implied License "Under Reasonable Terms And Conditions That Are Demonstrably Free From Any Unfair Discrimination."**

"In patent law, an implied license merely signifies a patentee's waiver of the statutory

right from making, using, or selling the patented invention." *Wang Laboratories, Inc. v.*

*Mitsubishi Electronics America, Inc.*, 103 F.3d 1571, 1580 (Fed. Cir. 1997), *citing Spindelfrabrik*

*Suessen-Schurr Stahlecker & Grill GmbH v. Schubert & Salzer Maschinenfabrik*

*Aktiengesellschaft*, 829 F.2d 1075, 1081 (Fed. Cir. 1987.) As stated by the Supreme Court:

> No formal granting of a license is necessary in order to give it
> effect. Any language used by the owner of the patent, or any other
> conduct on his part exhibited to another from which that other may
> properly infer that the owner consents to his use of the patent in
> making or using it, or selling it, upon which the other acts,
> constitutes a license and a defense to an action for tort.

*De Forest Radio Tel. Co. v. United States*, 273 U.S. 236, 241, 71 L. Ed. 625, 47 S. Ct. 366

(1927). An implied license may be the result of a finding of equitable estoppel. *See Wang*

*Laboratories, Inc. v. Mitsubishi Electronics America, Inc.*, 103 F.3d 1571.

In *Wang*, the court found that Wang's "entire course of conduct" toward defendant

Mitsubishi led the former to "infer consent to manufacture and sell the patented products."

Central to the court's finding was that Wang had proposed adoption of its patented invention (a

single inline memory module ("SIMM") used in personal computers) as an industry standard

without disclosing its patent. *Id.* at 1582. The court found that the only remuneration sought by

Wang was the adoption of its design as an industry standard and the benefits that would flow to it

from a larger market. As summarized by the court, "*Wang* consented to Mitsubishi's use of the

invention, granted the right to make, use, or sell the patented SIMMs without interference from

Wang, and received consideration. Therefore, we agree with the district court's determination,

QUALCOMM'S MOTION FOR PARTIAL SUMMARY
JUDGEMENT TO LIMIT ERICSSON'S REQUESTED RELIEF FOR
THE ALLEGED INFRINGEMENT OF THE PATENTS-IN-SUIT
Civil Action No. 2-96-CV183 – Page 17

312760 v1/PA
6PB801!.DOC
100598

Exhibit 61

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1089

Q2014FTC00783221
Q2017MDL1_00667484

reiterated in denying Wang's motion to amend the judgment, that Mitsubishi possesses an

irrevocable royalty-free license under the '513 patent." *Wang* at p. 1582.

Here, the TIA's Intellectual Property Rights Policy and Ericsson's course of conduct

during the standard setting process mandate that Qualcomm be granted an implied license to any

of the Alleged TIA Patents that are deemed necessary to the IS-95 standards "under reasonable

terms and conditions that are demonstrably free from any unfair discrimination." In light of the

TIA Intellectual Property Rights Policy, such a license is the only remuneration Ericsson could

expect to recover for such patents.

## IV.

## CONCLUSION

For the foregoing reasons, Qualcomm's motion for partial summary judgment to limit

Ericsson's requested relief for the alleged infringement of its Alleged TIA Patents should be

granted. Ericsson should be estopped from seeking any injunctive relief or other damages as to

its Alleged TIA Patents other than licensing fees "under reasonable terms and conditions that are

demonstrably free of any unfair discrimination," and Ericsson should be required to license to

Qualcomm, "under reasonable terms and conditions that are demonstrably free from any unfair

discrimination," those patents, if any, essential to IS-95 which the Court determines have been

infringed by Qualcomm.

Dated: October ___, 1998

Respectfully submitted,

**COOLEY GODWARD LLP**
Five Palo Alto Square
3000 El Camino Real
Palo Alto, CA 94306-2155
Tel: (650) 843-5000
Fax: (650) 857-0663

QUALCOMM'S MOTION FOR PARTIAL SUMMARY
JUDGEMENT TO LIMIT ERICSSON'S REQUESTED RELIEF FOR
THE ALLEGED INFRINGEMENT OF THE PATENTS-IN-SUIT
Civil Action No. 2-96-CV1E3 -- Page 18

312760 v1/PA
6FBS011.DOC
100598

Exhibit 61
1090

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC00783222
Q2017MDL1_00667485

**AKIN GUMP, STRAUSS, HAUER & FELD LLP**
1700 Pacific Avenue, Suite 4100
Dallas, Texas 75201-4675
Tel: (214) 969-2800
Fax: (214) 969-4343

**LAW OFFICES OF CARL L. ROTH, P.C.**
P.O. Box 876
115 North Wellington Suite 200
Marshall, Texas 75670
Tel: (903) 935-1665
Fax: (903) 935-1797

**LAW OFFICES OF FRANK E. ROGOZIENSKI,
INC.**
Coronado Professional Square
1203 Second Street
Coronado, CA 92118
Tel: (619) 437-1878
Fax: (619) 437-4894

**YOUNG & PICKETT**
4122 Texas Boulevard—P.O. Box 1897
Texarkana, AR-TX 75504
Tel: (903) 794-1303 (501) 774-3206
Fax: (903) 792-5098

By: _Damon Young_
Damon Young, Attorney-In-Charge
Texas State Bar ID #2217670

Attorneys for Defendant
QUALCOMM INCORPORATED

312760 v1/PA
6PBS011.DOC
100598

Exhibit 61
1091

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC00783223
Q2017MDL1_00667486

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Qualcomm's Motion for Partial Summary Judgment to Limit Ericsson's Requested Relief for the Alleged Infringement of the Patents in Suit has been served on this _6th_ day of October, 1998, on plaintiffs' counsel as follows:

Jeffrey R. Bragalone
McKool Smith, P.C.
300 Crescent Court, Suite 1500
Dallas, Texas 75201

(UPS Next Day Air and Facsimile)

Sam Baxter
McKool Smith, P.C.
505 East Travis
Marshall, TX 75670

(By Hand Delivery)

Franklin Jones, Jr.
Jones & Jones
P.O. Drawer 1249
Marshall, TX 75671

(Certified Mail, Return Receipt Requested and)
Facsimile (w/o attachments)

Travis Gordon White
Arnold, White & Durkee
750 Bering Drive
Houston, TX 77057

(UPS Next Day Air and Facsimile (w/o attachments))

By: _Damon Young by perm. Michael Smith_

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Exhibit 61
1092

Q2014FTC00783224
Q2017MDL1_00667487

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| Ericsson Inc. and<br>Telefonaktiebolaget<br>LM Ericsson, | §<br>§<br>§<br>§ | |
| Plaintiffs, | §<br>§ | Civil Action No. 2-96-CV183<br>JURY |
| v. | §<br>§ | Judge: David Folsom<br>Magistrate Judge: Harry McKee |
| QUALCOMM Incorporated, | §<br>§ | |
| Defendant. | §<br>§ | |

### [PROPOSED] ORDER GRANTING QUALCOMM'S
### MOTION FOR PARTIAL SUMMARY JUDGMENT
### TO LIMIT ERICSSON'S REQUESTED RELIEF FOR
### THE ALLEGED INFRINGEMENT OF THE PATENTS-IN-SUIT

Defendant Qualcomm, Inc. ("Qualcomm") filed a motion for partial summary judgment

to limit the requested relief of plaintiffs Ericsson Inc. and Telefonaktiebolaget LM Ericsson

(collectively "Ericsson"). Having considered the papers submitted in support of and in

opposition to Qualcomm's motion, the evidence submitted by the parties and the arguments of

counsel,

THE COURT FINDS THAT there is no genuine issue of material fact as to the applicability

of Qualcomm's equitable estoppel affirmative defense to Ericsson's patent infringement claims

and that Ericsson is estopped, as a matter of law, from obtaining injunctive relief or damages

other than license fees, under reasonable terms and conditions demonstrably free of any unfair

[PROPOSED] ORDER GRANTING QUALCOMM'S MOTION FOR PARTIAL SUMMARY
JUDGEMENT TO LIMIT ERICSSON'S REQUESTED RELIEF

313136 v2/PA
6pmR02!.DOC
100598

Civil Action No. 2-96-CV183 – Page 1

Exhibit 61
1093

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC00783225
Q2017MDL1_00667488

discrimination, from Qualcomm for infringement of patent numbers 5,088,108; 5,109,528; 5,327,577; 5,148,485; 5,239,557; 5,282,250; 5,390,245; 5,430,360; 5,551,073; and 5,193,140.

It Is HEREBY ORDERED THAT Qualcomm's motion for partial summary judgment is GRANTED. Ericsson may not obtain injunctive relief or damages other than license fees, under reasonable terms and conditions demonstrably free of any unfair discrimination, against Qualcomm for infringement of the following patents: 5,088,108; 5,109,528; 5,327,577; 5,148,485; 5,239,557; 5,282,250; 5,390,245; 5,430,360; 5,551,073; and 5,193,140.

Dated: _____

THE HONORABLE DAVID FOLSOM
United States District Court Judge

[PROPOSED] ORDER GRANTING QUALCOMM'S MOTION FOR PARTIAL SUMMARY
JUDGEMENT TO LIMIT ERICSSON'S REQUESTED RELIEF

313136 v2/PA
6pm802!.DOC
10059R

Civil Action No. 2-96-CV183 – Page 2

Exhibit 61
1094

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC00783226
Q2017MDL1_00667489