UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE
JINSOOK OHTA, DISTRICT JUDGE PRESIDING

**CERTIFIED COPY**

---

| | | |
|---|---|---|
| Shah, | ) | 3:17-cv-00121-JO-MSB |
| | ) | |
| Plaintiffs, | ) | Status Conference |
| | ) | (Department 4C) |
| v. | ) | |
| | ) | Wednesday, October 11, 2023 |
| Qualcomm, Incorporated, et al., | ) | |
| | ) | |
| Defendants. | ) | |

---

**REPORTER'S TRANSCRIPT OF PROCEEDINGS**

Pages 1 through 17

---

REPORTED BY:    Abigail R. Torres, CSR, RPR/RMR, FCRR
                CSR No. 13700
                United States District Court
                Southern District of California
                333 West Broadway, Suite 420
                San Diego, California 92101

**APPEARANCES:**

```
For the Plaintiffs:     Bernstein Litowitz Berger &
                        Grossmann LLP
                        1251 Avenue of the Americas
                        44th Floor
                        New York, New York 10020
                        By:  SALVATORE GRAZIANO, ESQ.
                        By:  REBECCA ELLEN BOON, ESQ.
                        By:  ROBERT KRAVETZ, ESQ.
                             -oOo-
                        Bernstein Litowitz Berger &
                        Grossmann LLP
                        2121 Avenue of the Stars
                        Suite 2575
                        Los Angeles, California 90067
                        By:  JONATHAN D. USLANER, ESQ.
                             -oOo-
                        Motley Rice, LLC
                        28 Bridgeside Boulevard
                        Mt. Pleasant, South Carolina 29464
                        By:  GREGG S. LEAVIN, ESQ.
                        By:  WILLIAM S. NORTON, ESQ.

For the Defendants:     Keker, Van Nest &
                        Peters LLP
                        633 Battery Street
                        San Francisco, California 94111-1809
                        By:  ROBERT VAN NEST, ESQ.
                        By:  LAURIE CARR MIMS, ESQ.
                        By:  CODY HARRIS, ESQ.
                             -oOo-
                        Cooley Godward Kronish, LLP
                        1700 Seventh Avenue
                        Suite 1900
                        Seattle, Washington 98101-1355
                        By:  CHRISTOPHER B. DURBIN, ESQ.
```

```
 1     SAN DIEGO, CALIFORNIA; WEDNESDAY, OCTOBER 11, 2023; 9:37 A.M.
 2                              -oOo-
 3            THE CLERK:  Calling Matter No. 4 on calendar,
 4     17cv0121, Shah v. Qualcomm Incorporated, et al., for a status
 5     conference.
 6            THE COURT:  Appearances from Plaintiffs' side first,
 7     please.
 8            MR. GRAZIANO:  Your Honor, for the lead Plaintiff AP-7
 9     from the Bernstein Litowitz law firm, you have Salvatore
10     Graziano, John Uslaner, Rebecca Boon and Robert Kravetz.
11            THE COURT:  Good morning.
12            MR. LEAVIN:  For the lead Plaintiff Metzler, you have
13     Gregg Leavin, and in the other room is my colleague, William
14     Norton.
15            THE COURT:  Anyone else from Plaintiffs before get
16     appearances from Defendants?
17            MR. GRAZIANO:  No, Your Honor.
18            MR. VAN NEST:  Good morning, Your Honor.
19            Bob Van Nest from Keker, Van Nest & Peters, for
20     Qualcomm.  I'm here with Laurie Mims, Cody Harris.  And from
21     the Cooley law firm, Chris Durbin for the individual
22     Defendants.
23            Good morning.
24            THE COURT:  Good morning.  So the Court called a
25     status conference in this matter to discuss trial scheduling.
```

1  But before we get to that, if we have everyone necessary to
2  briefly discuss the approval of class notice, the Court notes
3  that the hearing date -- this matter is not going to be under
4  submission until October 25th, but this is an unopposed motion.
5           If the parties all feel that they've had their full
6  opportunity to be heard on this matter, the Court can ask a few
7  questions and give a ruling on this motion right now.
8           Are we missing anyone such that we can't have this
9  discussion right now?  The Court has a brief question and a
10 request for revision but is, otherwise, prepared to grant this
11 unopposed motion for approval of class notice.
12          MR. GRAZIANO:  I believe we have everyone, Your Honor.
13          MR. VAN NEST:  I think that's right, Your Honor.
14 Mr. Harris or Ms. Mims can address that.  Yes.
15          THE COURT:  Okay.  Thank you.
16          So the Court has gone through the papers submitted for
17 the unopposed motion for approval of class notice.  And it has
18 no concerns except for one small piece, which is, I notice that
19 you have -- as is typical in most class actions, you have
20 notice going out by mail.  You also have the simultaneous
21 setting up of a website.  But the ability to opt out of the
22 class, that can only be exercised by submitting a mail
23 submission.
24          And so the Court was wondering if the parties would be
25 amenable to modifying the class notice procedure to also allow

1  for that opt-out to happen right when somebody accesses the
2  website that will be put up by the class administrator, that
3  there be an opt-out option right then and there as part of the
4  website.
5           I know this is something that the Court is springing
6  on you.  As I noted, I see no other concerns about the adequacy
7  of the class notice and the procedures that you have set up.
8  But I do have this one concern about the ease and ability for
9  class members to opt out, especially if someone is accessing
10 the website to gain the information about what this class is
11 and isn't, and then they have to take a second step -- they are
12 already on the website, but then they have to go and take a
13 second step and mail a form in.  And it really is not
14 reflective of the way that a lot of people do their business
15 these days as to have to mail something in and put a stamp on
16 an envelope.  As ridiculous as that sounds, it really is --
17 there should be this other option.
18          So given that I'm just springing that on you, I'll
19 give all the parties time to meet and confer with one another
20 and submit a -- and if you're in agreement, to submit a revised
21 unopposed motion for approval of class notice with that
22 modification, and if you do that, you know that I have approved
23 all other aspects of this, and that's something that the Court
24 would be ready to sign off on.
25          If that's something that the parties are not able to

1  come to an agreement on and are not willing to make that
2  modification to make opting out easier for the class, then
3  please jointly contact chambers through the "casde" file box
4  and let me know that, and we can schedule a hearing to discuss.
5          So now moving on to the status conference portion of
6  this hearing this morning.  I was wondering if everybody would
7  be ready to go to trial in the August 2024 time frame or
8  earlier.
9          I know that's something that that time frame would
10 require slight modification or crunching of the existing
11 scheduling order.  However, I was wondering, there are several
12 months built into that schedule for expert discovery, and I
13 wanted to check in with the parties to see how much expert
14 discovery actually remains in this case.
15         Because the common reality in class actions is that a
16 lot of expert reports are happening even for the -- before and
17 for the class certification stage.  And I know that in this
18 particular case, at least with regard to a damages expert, a
19 lot of that work -- there was reference to the Top App Report,
20 and et cetera, so I'm assuming that at least some, if not most
21 or all, of the expert discovery work may have already been done
22 prior to or simultaneously with the class certification stage
23 of the proceedings.
24         So -- and if that's the case, that's where we can find
25 room in the schedule to pull everything up so that we can go to

```
 1  trial sooner rather than later.  And like I said, the Court is
 2  looking at the August 2024 time frame but would also be
 3  amenable to doing it a month earlier, as well, if we can find
 4  that room in the schedule.
 5          If I'm incorrect, that there are still tons of expert
 6  discovery to be done, then we can talk about other ways where
 7  we can tighten that existing schedule a little bit to go to
 8  trial sooner rather than later in this matter, because I know
 9  this case has been pending for a very long time.
10          So I'll start with Plaintiffs' counsel first and ask
11  how much expert discovery is left to be done.
12          MR. GRAZIANO:  Your Honor, there is a significant
13  amount of expert discovery work to be done.  Just looking at
14  our list of experts, two or three have not yet been deposed by
15  the Defendants.  In terms of their experts, we don't fully know
16  who they are yet.  They have disclosed as many as eight names.
17  And we haven't deposed most of them.
18          If I may, Your Honor, we too would welcome a trial
19  date sooner rather than later.  We also looked at the schedule
20  to try to truncate some of the deadlines.  We had a discussion
21  that we asked for with counsel for the Defendants, who are on
22  the Zoom, and tried to work out a schedule so that the trial
23  would land in August.
24          Qualcomm wants to present to you a conflict they have,
25  and we've reached an alternative agreement with them.  But it's
```

Case 3:17-cv-00121-JO-MSB   Document 305   Filed 10/13/23   PageID.13684   Page 8 of 16

8

1   subject to Your Honor's, of course, agreeing to it.  But they
2   have an issue with August, so if I could maybe ask them to
3   cover that part of it.
4           MR. VAN NEST:  Your Honor, could I -- could I speak to
5   this issue?
6           Bob Van Nest for Qualcomm.
7           THE COURT:  Yes, please.
8           MR. VAN NEST:  Yeah.  So I'll start by saying we've
9   had a very cooperative relationship, the parties have.  And
10  we've been working closely together on scheduling.  And we had
11  a negotiated and proposed schedule that Judge Berg approved.
12          But as Your Honor noted, it -- it had us filing
13  dispositive motions early in June.  So when we got your order,
14  we all went to work, rolled up our sleeves.  We have a --
15  Qualcomm side had two conflicts that were significant.  One was
16  a client conflict in August; the other was that our Qualcomm
17  team has a very significant trial starting in mid-September.
18          What we also did, though, was look at the fact that
19  the parties have designated a large number of experts; the
20  defense reports have not gone in yet.  They will shortly.
21  There will be depositions needed to take.  What we did was look
22  at a date in late October.  And in order to get to that date,
23  we did have to tighten -- a lot of what Your Honor already
24  referred to -- some of the expert discovery dates and so on.
25          But the way -- and we have an agreed-upon schedule, if

```
 1   Your Honor were willing to accept the late October date that
 2   has us getting the expert work done through the end of the
 3   year, early next year; all of the dispositive motions and
 4   Dauberts, which I think will be very significant, would be
 5   filed by June -- by early June.
 6            That would let Your Honor set a hearing over the
 7   summer on those motions and resolve them.  Give them time to
 8   resolve them.  And then we move into pretrial.
 9            I do think that there will be very significant summary
10   judgment motions, as Your Honor, kind of, previewed in her
11   class cert order.  And I know there will be Dauberts on both
12   sides.  And so our big concern is having enough time for Your
13   Honor to consider all that.
14            And if Your Honor were willing to consider a late
15   October trial date, the parties have come together on a
16   schedule that we think would work for all of us, and let us get
17   the work done in an orderly manner; give Your Honor time to
18   consider our motions; and then let us all do the pretrial if --
19   if the case survives summary judgment.
20            That's what we've done.  Even that -- believe it or
21   not, even that required tightening up the schedule, which I
22   agree with Your Honor, we had the ability to do.  But our
23   current negotiated schedule has us -- have, in your hands, all
24   the dispositive motions briefed, opposed, and replied to by
25   early June, June the 3rd.
```

```
 1              We have a mandatory settlement conference that
 2   Judge Berg set on June 26th.  And then we've kind of left --
 3   left it up to Your Honor to decide how quickly you want a
 4   hearing and how much time you'd like to decide these.
 5              But then we have a pretty tight fall schedule with
 6   disclosures, exhibit list, and stuff, and all that, in
 7   September.  Motions in limine late September, the 27th.  A
 8   pretrial, the week of the 21st of October, and a trial the
 9   28th.
10              And we'd be happy to submit that.  I think, given what
11   Mr. Graziano said, we could submit that as a joint proposal if
12   Your Honor were willing to entertain that.  That's what we've
13   been doing.
14              THE COURT:  Great.  Thank you.
15              So you'd have all the briefing completed by early June
16   on the MSJs and the *Dauberts*.
17              MR. VAN NEST:  That's right.  June the 3rd is the date
18   that we have down.  That's right.
19              THE COURT:  Okay.  And I'll provide a hearing date --
20   hearing date for you right now, so that we have some more
21   certainty in and around these dates, as we're heading into
22   trial.
23              Mr. Deputy, in terms of oral argument, what do we have
24   in mid to late June?
25              THE CLERK:  Yes, Your Honor.
```

1               Your Honor, we have Wednesday, June 12th; Wednesday --
2    and Wednesday, June 26th.
3               Wednesday, June 19th is a federal Holiday, Your Honor.
4               THE COURT:  Okay.  Does Wednesday, June 12th work for
5    everybody?
6               MR. GRAZIANO:  It works for the Plaintiffs, Your
7    Honor.
8               MR. VAN NEST:  I think we could make that date, Your
9    Honor.
10              THE COURT:  Okay.  Thank you.
11              So given that this is the stipulated modified
12   schedule -- and I do think that time period between June and
13   late October is reasonable, given that you need to receive
14   Court rulings on substantive motions, along with multiple
15   *Daubert* motions, and do all the work it would take to lead up
16   to a significant trial in this matter, if you would go ahead
17   and build in that hearing date on the substantive motions and
18   submit that as a stipulation to the -- for the Court's review,
19   I'll go ahead and sign it.
20              If nothing jumps out at me as different from what
21   we're discussing today, I will -- I will be going ahead and
22   signing that scheduling order, because I do think the proposals
23   are reasonable.
24              In terms of trial -- again, I know we're talking a
25   year out, so I'm not expecting anything detailed or any type of

1  witness-by-witness proffer but just a very ballpark estimate on
2  what counsel think -- how long counsel think trial is going to
3  take in this matter.  I'd appreciate it.
4          And, again, I really would appreciate a reasonable
5  estimate at this juncture.  I know it's far away, and so the
6  gut reaction is to overestimate, but it's not helpful for me if
7  I get something that is an overestimate and one that I can't
8  rely on to block off dates on the Court's calendar.
9          So I'll ask Plaintiffs' side first, just for a
10 back-of-the-envelope, rough estimate, how long you think this
11 trial is going to be, and then I'll ask Defense counsel the
12 same question.
13         MR. GRAZIANO:  Your Honor, we spent some time trying
14 to map out the trial; as best we could, given where we are in
15 the case, and it is going to be a lengthy trial, you know,
16 without delineating the case right now, it's the last thing I
17 want to do.  We allege there are over 20 times with 20
18 different customers that Qualcomm allegedly was doing this
19 undisclosed bundling.
20         They clearly dispute it, but that number of customers
21 worldwide involves so many documents and witnesses that our
22 back-of-the-envelope estimate, as Your Honor put it, is
23 60 hours of witness time, and we assume another ten hours of,
24 you know, opening statements and arguments and closing.
25         So we're looking at, you know, a month-long trial, I

1  believe, you know, after thinking about it pretty hard.
2          MR. VAN NEST: Your Honor, on the Defense side -- this
3  is, again, Bob Van Nest for Qualcomm -- I think that's a -- I
4  haven't talked to my colleagues about it. We -- we didn't have
5  an opportunity to meet and confer, so I'll speak in the spirit
6  of cooperation here. But I think that's a vast overestimate of
7  the time we would need.
8          I think Your Honor is aware, nobody is giving out
9  trials that long anymore. It's not happening. I think we
10 could try this easily within two weeks, two weeks would allow
11 you to give each side 20 to 25 hours.
12         That's what I think we're all -- those of us that are
13 trying a lot of these cases are accustomed to. And I really
14 don't see any reason that we couldn't handle this case in two
15 weeks, given what I know about what's happening around the
16 country.
17         So I'm happy to meet and confer further with counsel.
18 I respect his views and their views. And we have a good,
19 cooperative relationship. But I just don't see any way this
20 would take that long and don't think it should.
21         THE COURT: Okay.
22         MR. GRAZIANO: And, Your Honor, sorry, for the
23 Plaintiffs again. I do want to acknowledge that we have not --
24 we've discussed the trial timing topic and came to an
25 agreement. We have not discussed this topic at all. And I

```
 1  think it would help counsel to see, you know, the scope of the
 2  case we have in mind.  And, clearly, when there's room for
 3  compromise, we're completely willing to try to do that and
 4  subject to the Court's schedule, as well.
 5          THE COURT:  Okay.  Thank you.
 6          If you will go ahead and do that meet-and-confer and
 7  submit to the Court a joint statement on a trial time estimate.
 8  Again, we're in -- we're a year out from the trial, but this is
 9  in an effort to block off that space on the Court's calendar
10  because the longer the trial estimate, the harder it is to get
11  some continuance -- continuous chunk of time on the Court's
12  calendar, which is why I wanted to do this sooner rather than
13  later.
14          So if you'll go ahead and meet and confer and submit a
15  joint statement sometime within the next three weeks, if that's
16  reasonable.  Again, there's no immediate-urgency situation, so
17  if, Counsel, you end up needing more time and there are more
18  urgent tasks that demand your attention, I'm fine if you both
19  agree and submit it later than that.  And you don't need my
20  permission ahead of time.
21          But just so you have some guideline, I'm going to set
22  a three-week deadline right now for submitting that joint
23  statement.  And that joint statement can include, "We've talked
24  about it.  And we both agree that it's going to take blank
25  period of time" or "We talked about it.  We tried to narrow the
```

1  gap.  We're still at three and a quarter weeks versus two
2  weeks."
3         And so three weeks from now, Mr. Deputy, is?
4         THE CLERK:  Your Honor, that is Wednesday,
5  November 1st.
6         THE COURT:  Okay.  So I'm going to set that Wednesday,
7  November 1st deadline.  However, if the parties stipulate for a
8  later submission, you can just send in that stipulation, along
9  with the later submission, and the Court will be fine with
10 that.  Again, because we're a year out from trial.
11        Is there anything else I can help the parties with at
12 this point?  So I'm going to get a stipulation from you on the
13 modified-case-scheduling order, and a joint submission from you
14 after you've had a chance to meet and confer about trial
15 duration.
16        MR. GRAZIANO:  We understand, Your Honor.  We have
17 nothing else.  Thank you.
18        MR. VAN NEST:  And we don't have anything else either,
19 Your Honor.  Thanks, again, for accommodating us over Zoom.  We
20 all appreciate it, I know that.
21        THE COURT:  Okay.  Thank you.
22        And in general, if it's just a status conference, I
23 will specify that it's VTC only, so no one side feels pressured
24 to appear, causing then a domino effect of everybody else
25 feeling the pressure to appear.  But just as a baseline matter,

```
 1  I always leave it Zoom optional for everybody.
 2          Thank you.  We'll call the next matter.
 3          MR. VAN NEST:  Thanks, Your Honor.
 4          (The proceedings were adjourned at 9:57 a.m.)
 5                          -oOo-
 6                    C E R T I F I C A T E
 7          I, Abigail R. Torres, certify that I am a duly
     qualified and acting Official Court Reporter for the United
 8   States District Court; that the foregoing is a true and
     accurate transcript of the proceedings as taken by me in the
 9   above-entitled matter on October 11, 2023, and that the format
     used complies with the rules and requirements of the United
10   States Judicial Conference.
     DATED:  October 12, 2023, San Diego
11   /S/ABIGAIL R. TORRES
     _____
12   U.S. Official Court Reporter
13
14
15
16
17
18
19
20
21
22
23
24
25
```