KEKER, VAN NEST & PETERS LLP
ROBERT A. VAN NEST - #84065
rvannest@keker.com
EUGENE M. PAIGE - #202849
epaige@keker.com
LAURIE CARR MIMS - #241584
lmims@keker.com
CODY S. HARRIS - #255302
charris@keker.com
ZAINAB O. RAMAHI - #332139
zramahi@keker.com
DANIEL B. TWOMEY - #341488
dtwomey@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone: 415 391 5400
Facsimile: 415 397 7188

CRAVATH, SWAINE & MOORE LLP
ANTONY L. RYAN (*pro hac vice*)
aryan@cravath.com
YONATAN EVEN (*pro hac vice*)
yeven@cravath.com
M. BRENT. BYARS (*pro hac vice*)
mbyars@cravath.com
825 8th Avenue
New York, NY  10019-7475
Telephone:  (212) 474-1000
Facsimile:   (212) 474-3700

Attorneys for Defendant
QUALCOMM INCORPORATED

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE QUALCOMM INCORPORATED SECURITIES LITIGATION | Case No. 3:17-cv-00121-JO-MSB<br><br>**DISCOVERY MOTION REGARDING CLAWBACK OF EXPERT MATERIALS**<br><br>**[REDACTED]**<br><br>Dept: Courtroom 2C<br>Judge: Hon. Michael S. Berg<br><br>Date Filed  July 3, 2017<br><br>Trial Date:  October 28, 2024 |

# NOTICE OF MOTION

PLEASE TAKE NOTICE that Defendant Qualcomm Incorporated Derek K. Aberle, Steven R. Altman, William F. Davidson, Paul E. Jacobs, Steven M. Mollenkopf and Donald J. Rosenberg will and hereby do move the Court, pursuant to Rule 26 of the Federal Rules of Civil Procedure, for an order holding that the material Plaintiffs inadvertently produced are not protected under the Federal Rules of Civil Procedure and thus cannot be clawed back.

This motion is based on this Notice of Motion and Motion, Defendants' Memorandum of Points and Authorities, the Declaration of Daniel B. Twomey and attached exhibits, and any evidence or oral argument offered at any hearing on this motion.

Dated: December 21, 2023       KEKER, VAN NEST & PETERS LLP

By: */s/Laurie Carr Mims*
ROBERT A. VAN NEST
EUGENE M. PAIGE
LAURIE CARR MIMS
CODY S. HARRIS
ZAINAB O. RAMAHI
DANIEL B. TWOMEY

CRAVATH, SWAINE & MOORE LLP
Antony L. Ryan
Yonatan Even
M. Brent Byars

Attorneys for Defendant
QUALCOMM INCORPORATED

I.      INTRODUCTION[1]

This dispute concerns Plaintiffs' attempt to shield documents that reveal facts, data, and assumptions that underlie Dr. David Tabak's damages report. In an effort to perform the critical task of isolating the damages attributable to the alleged misstatements at issue in this case from unrelated stock price movements, Dr. Tabak offers a novel "content analysis" study that counts the number of times certain words appeared in certain news stories and uses that tally to allocate stock price declines to certain alleged misrepresentations. ███████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████ Plaintiffs now seek to claw these materials back, based on an erroneous claim that they are "protected" under either the ESI Order or Rule 26(b). Plaintiffs are wrong for three reasons.

*First*, contrary to Plaintiffs' argument, nothing in the ESI Order suggests that any of these materials are "protected," making them subject to the Protective Order's clawback provision. Rather, the ESI Order explains which expert materials *must be disclosed*; it in no way grants the at-issue materials protection from disclosure.

*Second*, the at-issue materials fall outside Rule 26(b)(4)'s protections. ████ ████████████████████████████████████████████████████████ ██████████████████████████████████████████████

*Third*, even if the materials themselves were protected under Rule 26(b)(4), the Court should allow Defendants to use the information that the materials reveal under Rule 26(b)(3)(B), because Defendants have a "substantial need" for that information to test the bases of Dr. Tabak's opinions. At a minimum, Defendants

---

[1] In all quotations herein, all internal punctuation and citations have been removed, and all emphases added, unless otherwise noted. "Rule" refers to the Federal Rules of Civil Procedure.

must be permitted to use the materials to question Dr. Tabak during his deposition.

## II. BACKGROUND

### A. Dr. Tabak must isolate losses related to "bundling."

Plaintiffs' Complaint alleges that Qualcomm misrepresented two business practices that led to regulatory actions and litigation which, once announced, caused Qualcomm's stock price to decline. The first category consisted of "licensing misrepresentations," which concerned Qualcomm allegedly concealing its practice of licensing its patents at the device level rather than at the chip level. The second category consisted of "bundling misrepresentations," which concerned Plaintiffs' allegation that Qualcomm told the market that its chip and licensing business were separate when Qualcomm allegedly "bundled the two[.]" Dkt. 279 ("Class Cert. Order") at 3. The Court denied class certification with respect to the alleged "licensing misrepresentations," concluding that the market knew the truth about Qualcomm's licensing practices. *Id.* at 27–28. But the Court certified a class with respect to the alleged "bundling misrepresentations." *Id.* at 30–33.

A key issue remained, however. With the licensing allegations out of the case, to satisfy *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013), Plaintiffs would need to tie their claimed damages to the bundling misrepresentations that remained. To that end, the Court found that Dr. Tabak had "propose[d] a model that can isolate and separately measure the impact of each category of misrepresentation." Class Cert. Order at 32. The Court credited Dr. Tabak's express promise that he could use "standard techniques to disaggregate the impact of different categories of information, and ultimately, 'determine the relative importance of different aspects of [the] alleged corrective disclosure[s].'" *Id.* at 33 (citing Dkt. 217–2).

This is an important open issue in this litigation. Indeed, at class certification, the Court noted that Dr. Tabak had "yet to implement his proposed model," and told Defendants they could renew their *Comcast* argument "in an appropriate motion" if Dr. Tabak's proposed model proved inadequate. *Id.* at 33 n.20.

### B. Dr. Tabak's content analysis attempts to disaggregate damages.

Dr. Tabak attempts to implement the required disaggregation by running a so-called "content analysis." Decl. of Daniel Twomey ("Twomey Decl.") Ex. 1 ("Tabak Report") ¶ 59. In essence, Dr. Tabak claims to have reviewed certain news stories about Qualcomm, looked for certain words that he believes relate to "bundling" as opposed to other conduct, counted up the mentions, and then used the tally to estimate what portion of a stock price decline related to bundling. Specifically, Dr. Tabak states that he first reviewed news stories about Qualcomm on the corrective disclosure dates to come up with words that, he claims, relate to the alleged "bundling" as distinct from other practices challenged in those corrective disclosures. *Id.* ¶ 81. Dr. Tabak states that *he* selected the words to be used in his content analysis. *Id.* ▮▮▮

Dr. Tabak then claims to have reviewed these news stories and counted the number of times the selected words appeared in them. *Id.* He disavowed looking at analyst reports because they supposedly "tend to contain more forward-looking statements" and would not be an accurate method for apportioning loss. *Id.* ¶ 79.

Dr. Tabak and his team then manually went through the "hits" and coded the words to reflect whether they relate to the claimed practice. *Id.* ¶¶ 82–84. Dr. Tabak provides no explanation for how he designed or implemented this coding exercise—▮▮▮ Dr. Tabak claims to use this coding to apportion the price decline from each corrective disclosure was purportedly attributable to "bundling" based on the number of times those words appeared in the news versus words supposedly related to other categories.

### C. ▮▮▮

▮▮▮



III. **ARGUMENT**

    A.    **The ESI Order does not "protect" the materials at issue.**

The Protective Order in this case strictly limits document clawbacks to documents that are "privileged or otherwise protected." Dkt. 78-1 ¶ 12. Plaintiffs contend that they may claw back the documents at issue under this provision,

4

because the materials are "protected" under the ESI Order. Not so.

Section 8(c) of the ESI Order discusses communications with experts. *See* Dkt. 78-2 § 8(c). By its plain terms, that provision accomplishes one thing: it modifies "Rule 26(a)(2)"—the provision of Rule 26 that lists what an expert's report "must contain"—to remove certain items from required disclosures. Thus, contrary to Plaintiffs' argument, Section 8(c) cannot be read to expand the scope of what expert materials are *protected* from disclosure under Rule 26(b). Indeed, the ESI Order contains a separate section entitled "DOCUMENTS PROTECTED FROM DISCOVERY," *Id.* § 7, which lists a variety of materials that are protected from discovery and are therefore covered by the Protective Order's clawback provision. *Id.* Notably, communications with experts are not among them.

Put simply, just because the ESI Order says that a party is not *required* to produce certain information does not mean that information is *privileged or protected* from disclosure such that it is subject to clawback under the Protective Order when produced. Because the ESI Order doesn't protect these documents, Plaintiffs must instead show that the materials are protected under Rule 26(b).

**B.     The materials are not protected from disclosure under Rule 26(b).**

Rule 26(b) offers no protection to communications between experts and attorneys that "identify facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed," or "assumptions that the party's attorney provided and that the expert relied on in forming the opinions to be expressed." Rule 26(b)(4)(C)(ii)–(iii). The advisory committee notes that "'facts or data' [should] be interpreted broadly to require disclosure of any material considered by the expert, from whatever source, that contains factual ingredients." *Id.* Advisory Comm. Note to 2010 Amend. The advisory committee also made clear that, although draft reports are protected, "alternative analys[es]" are not. *Id.*

**1.     The ███████████████████ is not protected.**

1 ▮
2 ▮
3 ▮
4 ▮
5 ▮
6 ▮
7 ▮
8 ▮
9 ▮
10 ▮
11 ▮
12 ▮
13 ▮
14 ▮ "where the expert has acquired information relevant to his opinion,
15 defendants should not be bound by [an expert's] statement that he did not consider
16 it." *United States v. City of Torrance*, 163 F.R.D. 590, 593 (C.D. Cal. 1995).
17 ▮
18 ▮
19   Further, Rule 26 does not protect communications between an expert and a
20 party's attorney "when the record reveals the lawyer may have commandeered the
21 expert's function or used the expert as a conduit for his or her own theories." *Gerke*
22 *v. Travelers Cas. Ins. Co. of Am.*, 289 F.R.D. 316, 328 (D. Or. 2013). In *Gerke*, the
23 district court made "discoverable lawyers' communications that jeopardize the
24 experts' independence." *Id.* at 326. Defendants should rightfully be able to use
25 these materials to undermine the assumptions and opinions Dr. Tabak has offered,
26 and further, to show that neither resulted from Tabak's own independent analysis.
27 ▮
28 ▮

1
2
3
4
5
6

7   Rather than protect this sort of information from discovery, courts rely on it
8 to strike a report when the material reveals—as it does here—that counsel was
9 "more than a mere conduit for the delivery of raw data." *McClellan v. I-Flow*
10 *Corp.*, 710 F. Supp. 2d 1092, 1123 (D. Or. 2010). In *McClellan*, the court struck the
11 plaintiffs' expert report where communications between the expert and counsel
12 revealed that counsel "create[d] the idea for the . . . study," "directed [the expert] to
13 include certain patients in the study," and "compared his . . . findings from the data
14 with those of [the expert]." *Id.* In sum, the material revealed that the expert's
15 "analysis was affected, altered, and 'corrected' by [counsel]." *Id.* at 1125.[2] The
16 same is true here. Plaintiffs cannot rely on Rule 26(b)'s protections when it is clear
17 that the materials they produced reflect "a degree of involvement by counsel that
18 goes far beyond providing information." *Id.* at 1121.

19   **2.   Dr. Tabak's ▓▓▓▓▓▓▓▓▓▓▓▓▓ is unprotected.**
20
21

22   Such an analysis falls outside of Rule 26(b)'s protections regardless of
23 whether he included it in his final report. *See* Rule 26 Advisory Comm. Note to
24 2010 Amend. ("Counsel are also free to question expert witnesses about alternative
25 analyses . . . whether or not the expert considered them in forming the opinions
26 expressed."). In fact, courts will compel production of alternative analyses

---
[2] The court in *Holley v. Gilead Scis., Inc.* similarly struck eight expert reports where Plaintiffs' counsel's role in constructing the report went beyond Rule 26's bounds. 2023 WL 2440237, at *3 (N.D. Cal. Mar. 9, 2023).

1  particularly when they are *excluded* from the final report, because the analysis is
2  not a "draft" if it bears no resemblance to the final report. *See PacifiCorp v. N.W.*
3  *Pipeline*, 2012 WL 13195529, at *4 (D. Or. Feb. 29, 2012). Rule 26 mandates
4  disclosure of alternative analysis to prevent parties from including only analysis
5  that produced favorable results while hiding any that are unfavorable—precisely
6  what Plaintiffs attempt here.

7     *Plexxikon Inc. v. Novartis Pharms. Corp.*, 2019 WL 8508083 (N.D. Cal. May
8  3, 2019), illustrates this point. There, as here, the defendant discovered that the
9  plaintiff's expert had failed to disclose alternative analyses in his expert report. *Id.*
10 at *1. In granting the defendant's motion to compel, the court rejected the plaintiff's
11 argument that these alternative tests were "drafts," because the plaintiff failed to
12 show that the expert "intended to include these documents in his report, that they
13 were actually included in earlier versions of his report, or that the documents
14 represent summaries and conclusions that might reasonably be expected to be
15 included in a draft report." *Id.* at *4.

16 ███████████████████████████████████████
17 ████████████████████████████████████████████
18 ████████████████████████████████████████████
19 ████████████████████████████████████████████
20 ██████████████████████████████████

21          **3.    Dr. Tabak's ██████████ are unprotected.**
22          ██████████████████████████████████
23          ████████████████████████████████
24          ██████████████████████████████████████
25 ██████████████ Instead, they are ██████████████ which are unprotected
26 under the Federal Rules or the ESI Order even if "not considered in forming the
27 opinions expressed." *In re Rep. of Ecuador*, 2012 WL 487158, at *2.
28 ████████████████████████████████████████████

██████████████████████████████████████
██████████████████████████ Defendants must be able to question Dr. Tabak regarding the reliability and replicability of his analysis. *See* Advisory Comm. Note to 2010 Amend. (allowing discovery into "the development, foundation, or basis" of an expert's opinion, including "notes of any [] testing").

### C. Even if the Court finds the materials protected, it should order them disclosed based on Defendants' "substantial need."

Even if the Court finds the materials are protected as "draft reports," it may still order them disclosed pursuant to Rule 26(b)(3). That rule permits discovery of documents protected by Rule 26(b)(4), including "draft reports," if a defendant has a "substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent[.]" Rule 26(b)(3)(A)(ii); *see also* Advisory Comm. Note to 2010 Amend. ("discovery regarding attorney-expert communications . . . or regarding draft expert reports . . . is permitted" where a party can "make the showing specified in Rule 26(b)(3)(A)(ii)"). This situation fits the bill. Plaintiffs' case hinges on Dr. Tabak's ability to disaggregate damages using "standard techniques." Class Cert. Order at 33. The technique he has chosen is content analysis. Yet his report includes no details regarding how he selected the words in his analysis or how articles were coded, and he claims that he eschewed analyst reports for reasons that the materials disclosed show to be false. Defendants must be allowed to explore the basis for his analysis and confront him with materials that undercut his opinions. Defendants have a "substantial need" for the information revealed by these documents to prepare their case, and the Court should allow their use under Rule 26(b)(3).[3]

### D. Defendants must be permitted to use the information at Dr. Tabak's deposition.

Even if the Court finds that the materials are inadmissible, it should allow

---

[3] The Rule also states that courts can "protect against disclosure of" counsel's "mental impressions, conclusions, opinions, or legal theories." Rule 26(b)(3)(B).

9

DISCOVERY MOTION REGARDING CLAWBACK OF EXPERT MATERIALS
Case No. 3:17-cv-00121-JO-MSB

2467558

1 Defendants to use the disclosed information at Dr. Tabak's deposition. Nothing in
2 the ESI Order, the Protective Order, or Rule 26 prevents Defendants from
3 questioning an expert about a document solely because it is inadmissible. Indeed, a
4 party can "impeach the soundness of [an expert's] methodology through other
5 potentially inadmissible evidence on which experts in the particular field would
6 reasonably rely." *Grasshopper House, LLC v. Clean & Sober Media LLC*, 2019
7 WL 12074086, at *11 n. 3 (C.D. Cal. July 1, 2019). Clearly, a content analysis
8 expert would reasonably rely on materials regarding which content to analyze.

9       As this Court recognized during the parties' informal discovery conference,
10 Defendants must be able to inquire into how Dr. Tabak conducted his analysis,
11 including any facts or assumptions ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
12 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Plaintiffs will likely seek to prevent such
13 questioning, claiming it is "protected." But it would be unfair to prevent Defendants
14 from asking questions they would have asked before Plaintiffs' production and
15 force them to accept testimony that is provably false. For example, Defendants will
16 ask Dr. Tabak how he decided which words to use, whether he considered analyst
17 reports, and how he and his staff coded news stories. Plaintiffs' counsel have
18 warned Defendants that they will instruct Dr. Tabak not to answer such questions
19 based on the ESI Order. Not only must Defendants be permitted to question Dr.
20 Tabak about his analysis, but they must also be allowed to confront him with
21 evidence that undercut his answers.

22 **IV. CONCLUSION**
23       Defendants respectfully request that the Court deny Plaintiffs' attempt to
24 claw back unprotected information that forms the bases for their expert's opinions
25 and analysis or, in the alternative and at a minimum, confirm that Defendants may
26 question Dr. Tabak about those materials during his deposition.
27 ////
28 ////

| | | |
|---|---|---|
| 1 | Dated: December 21, 2023 | KEKER, VAN NEST & PETERS LLP |
| 2 | | |
| 3 | | By: */s/Laurie Carr Mims* |
| 4 | | ROBERT A. VAN NEST<br>EUGENE M. PAIGE |
| 5 | | LAURIE CARR MIMS<br>CODY S. HARRIS |
| 6 | | ZAINAB O. RAMAHI<br>DANIEL B. TWOMEY |
| 7 | | CRAVATH, SWAINE & MOORE LLP |
| 8 | | Antony L. Ryan<br>Yonatan Even |
| 9 | | M. Brent Byars |
| 10 | | Attorneys for Defendant<br>QUALCOMM INCORPORATED |