1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**
JONATHAN D. USLANER (Bar No. 256898)
jonathanu@blbglaw.com
LAUREN M. CRUZ (Bar No. 299964)
lauren.cruz@blbglaw.com
2121 Avenue of the Stars, Suite 2575
Los Angeles, CA 90067
Tel: (310) 819-3481

**MOTLEY RICE LLC**
GREGG S. LEVIN (*Pro Hac Vice*)
glevin@motleyrice.com
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
Tel: (843) 216-9000

*Counsel for Lead Plaintiffs and*
*Lead Counsel for the Class*

[Additional Counsel Appear on Signature Page]

## UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE QUALCOMM INCORPORATED SECURITIES LITIGATION | Case No. 3:17-cv-00121-JO-MSB<br><br>**LEAD PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE CERTAIN OPINIONS OF LEAD PLAINTIFFS' EXPERT DR. TIMOTHY SIMCOE**<br><br>Judge: Hon. Jinsook Ohta<br>Hearing Date: June 12, 2024<br>Time: 9:30 a.m.<br>Courtroom: 4C |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................1

II.   BACKGROUND .................................................................................2

    A.    Professor Simcoe is Qualified To Offer His Expert Opinions................................................................2

    B.    Defendants Have Placed FRAND Licensing and Foreseeability at Issue ...........................................3

III.  LEGAL STANDARD ..........................................................................4

IV.   ARGUMENT .......................................................................................5

    A.    Professor Simcoe Is Qualified To Opine as to Foreseeability and the Centrality of Qualcomm's Bundling Practices ..................................5

    B.    Professor Simcoe Offered Proper Testimony Interpreting the Regulatory Actions From the Perspective of an Experienced Economist .......................................................................11

        1.    Professor Simcoe offered a proper methodology in opining that the regulatory and civil actions were foreseeable ..............................................................12

        2.    Professor Simcoe offered a proper methodology in opining that Qualcomm's bundling practices "played a central role" in the regulatory actions and civil litigation .......................18

V.    CONCLUSION...................................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*,
  738 F.3d 960 (9th Cir. 2013) ............................................................4, 17

*In re Apple Inc. Sec. Litig.*,
  2023 WL 4556765 (N.D. Cal. July 17, 2023) .............................11, 14

*Aya Healthcare Servs., Inc. v. AMH Healthcare, Inc.*,
  613 F. Supp. 3d 1308 (S.D. Cal. 2020).............................................10

*Block v. Woo Young Medical Co.*,
  937 F. Supp. 2d 1028 (D. Minn. 2013)........................................7, 9, 14

*Bona Fide Conglomerate, Inc. v. SourceAmerca*,
  2019 WL 1369007 (S.D. Cal. Mar. 26, 2019) ...................................6

*In re C.R. Bard., Inc.*,
  948 F. Supp. 2d 589 (S.D.W. Va. 2013)............................................19

*Cisco Systems, Inc. v. Arista Networks*,
  2016 WL 1175975 (N.D. Cal. Nov. 16, 2016) ..................................20

*Core Wireless Licensing S.A.R.L. v. Apple Inc.*,
  2016 WL 8231157 (N.D. Cal. Nov. 18, 2016) ....................................4

*Daniels v. Grand Lux Café, LLC*,
  2015 WL 1398325 (D.N.J. March 26, 2015).....................................10

*In re Davol, Inc./C.R. Bard, Inc., Polypropylene Hernia Mesh Prods.
  Liab. Litig.*,
  2021 WL 2643109 (S.D. Ohio June 28, 2021).....................................9

*Dial Corp. v. News Corp.*,
  165 F. Supp. 3d 25 (S.D.N.Y. 2016) .................................................20

*Easterwood v. Husqvarna Pro. Prods., Inc.*,
  576 F. Supp. 3d 950 (M.D. Ala. 2021)..............................................11

*FDIC v. Dellen*,
  2012 WL 12886491 (C.D. Cal. Oct. 18, 2012) .................................14

*Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*,
618 F.3d 1025 (9th Cir. 2010) ...................................................................15

*Haynes ex rel. Haynes v. Nat'l R.R. Pass. Corp*,
319 F. App'x 541 (9th Cir. 2009) ..............................................................10

*In re HIV Antitrust Litig.*,
2023 WL 3089820 (N.D. Cal. Mar. 7, 2023) ........................................6, 14

*Holley v. Gilead Scis., Inc.*,
2023 WL 2469632 (N.D. Cal. Feb. 27, 2023) ...........................6, 9, 18, 19

*Johnson v. Manitowoc Boom Trucks, Inc.*,
406 F. Supp. 2d 852 (M.D. Tenn. 2005), aff'd 484 F.3d 426
(6th Cir. 2007)............................................................................................15

*In re Juul Labs, Inc. Mktg., Sales Practices, & Prods. Liab. Litig.*,
2022 WL 1814440 (N.D. Cal. June 2, 2022)................................................6

*Kennedy v. Collagen Corp.*,
161 F.3d 1226 (9th Cir. 1998) ....................................................................4

*In re Levaquin Prods. Liab. Litig.*,
2011 WL 6888533 (D. Minn. Dec. 29, 2011) ...........................................19

*In re Mirena IUD Prods. Liab. Litig.*,
169 F. Supp. 3d 396 (S.D.N.Y. 2016) ...................................................7, 19

*Pac. Select Fund v. Bank of New York Mellon*,
2012 WL 12886495 (C.D. Cal. July 2, 2012)............................................14

*Primiano v. Cook*,
598 F.3d 558 (9th Cir. 2010) ......................................................................4

*In re Qualcomm Inc. Sec. Litig.*,
2023 WL 2583306 (S.D. Cal. Mar. 20, 2023) ...........................................15

*In re Rezulin Prods. Liab. Litig.*,
309 F. Supp. 2d 531 (S.D.N.Y. 2004) .......................................................19

*SEC v. Criterion Wealth Mgmt. Ins. Services, Inc.*,
2023 WL 5321081 (C.D. Cal. April 6, 2023)............................................15

*In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*,
2018 WL 734655 (D. Mass. Feb. 6, 2018) ..................................................7

*Stone Brewing Co., LLC v. MillerCoors LLC*,
  2020 WL 907060 (S.D. Cal. Feb. 25, 2020)........................................................11

*In re Under Armour Sec. Litig.*,
  No. 1:17-cv-00388-RDB (D. Md. Apr. 16, 2024).............................................9

*United States v. Hankey*,
  203 F.3d 1160 (9th Cir. 2000) .............................................................................11

*United States v. Pac. Gas & Elec. Co.*,
  2016 WL 3268994 (N.D. Cal. June 15, 2016)....................................................6

*In re Welding Fume Prods. Liab. Litig.*,
  2010 WL 7699456 (N.D. Ohio June 4, 2010) ...................................................20

**STATUTES & RULES**

Fed. R. Evid.

  Rule 702 ............................................................................................................11, 12

## I. INTRODUCTION

Professor Timothy Simcoe is one of the world's foremost experts on the economics of innovation, intellectual property, standard setting, and competition. His expertise includes the intersection between economics of standardization, standard essential patents (SEPs), and antitrust.  In expressing his opinions, Professor Simcoe drew upon his extensive expertise to describe the regulatory framework applicable to licensing on fair, reasonable, and non-discriminatory terms ("FRAND"), and anticompetitive bundling.  In his report, Professor Simcoe described ███████████████████████████████████████████████████████████████████████████. DX1 ("Rpt.") ¶¶70-96.  Professor Simcoe also ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████. *See, e.g.*, Rpt. App. D & E.

Defendants have not objected to any of this testimony.  *See* ECF No. 347 ("Mot.") §§I-IV.A-B, App. D-E.  Rather, Defendants object only to Professor Simcoe's opinion that █████████████████████████████████████████████████.

As set forth below, Defendants misconstrue the purpose of Professor Simcoe's testimony, which is ***not*** to offer an opinion as to the "state of mind" of Qualcomm or its regulators.  Rather, Professor Simcoe properly ████████████████████████████████████████████████████████████████ DX5 ("Reply Rpt.") ¶4.  Further, Professor Simcoe properly applied his experience as a leading expert on the economics of anticompetitive conduct involving SEPs and FRAND, which will help the jury understand the context in which regulators brought enforcement actions against Qualcomm, and that the bundling practices played a central role in those actions.

Such evidence is squarely permissible under well-established expert principles, addressed herein.

Professor Simcoe's testimony will be particularly important and relevant to the jury. Defendants have made clear that they will advance their own testimony about FRAND and their purported reasonable lack of any awareness of any possible enforcement actions.  Plaintiffs are permitted—and seek—to counter that evidence with Professor Simcoe's testimony.

As set forth herein, Defendants' motion to exclude should be denied.

## II.    BACKGROUND

### A.    Professor Simcoe is Qualified To Offer His Expert Opinions

Professor Simcoe graduated with a bachelor's degree from Harvard College in Applied Math with Economics and earned his Masters and Doctorate degrees from the University of California at Berkeley.  Rpt. ¶2.  He began his teaching and research career at the University of Toronto in 2004 before joining the faculty at Boston University in 2009.  Professor Simcoe is currently Professor of Strategy and Innovation at Boston University's Questrom School of Business, where he also serves as the faculty director of the University's Technology Policy Research Initiative.  *Id*. ¶1.  Since 2009, Professor Simcoe has served as a Faculty Research Fellow and Research Associate at the National Bureau of Economic Research, *id.*, an organization comprised of the top economic researchers across North America.

Over the course of his career, Professor Simcoe has researched and published papers and articles about SSOs, SEP holders, and FRAND licensing commitments, including papers subject to peer-review standards in some of the most prominent economic journals.  *Id*. ¶¶3-5; App. A at 1-4.  His publications have addressed FRAND litigation and the circumstances in which FRAND violations may constitute anticompetitive conduct.  *Id.* ¶4; App. A at 1-4.  Professor Simcoe also teaches courses on those topics at the undergraduate and graduate levels, for which he has received numerous awards.  *Id.* ¶3; App. A at 6.

1    Professor Simcoe has also served as a consultant or expert witness on multiple

2    occasions in the areas of economics, SSOs, and FRAND licensing, including on

3    behalf of some of the world's leading SEP holders and implementers ████████

4    ███████████████████████████████████████████. App. A at 5.

5    ████████████████████████████████████████████████

6    ███████████████████████████████████████. *Id.*

7    Because standard essential patents are, by definition, industry standards, these

8    assignments have required Professor Simcoe to become familiar with industry

9    standards and practices, as well as the types of conduct engaged in by SEP holders

10   that lead to litigation and regulatory actions.

11   Given his background, there are few individuals with the degree of experience

12   and expertise in anticompetitive conduct involving SSOs, SEP holders, and FRAND

13   licensing possessed by Professor Simcoe.

14   **B.    Defendants Have Placed FRAND Licensing and**
15   **        Foreseeability at Issue**

16   In their summary judgment declarations, as well as in their prior testimony,

17   Defendants have placed FRAND licensing and the foreseeability of regulatory

18   enforcement actions and litigation directly at issue. For example, many of the

19   Executive Defendants have testified or declared that Qualcomm complied with

20   FRAND. *See, e.g.*, Jacobs Decl. (ECF No. 351-2) ¶17; Mollenkopf Decl. (ECF No.

21   351-3) ¶9; Aberle Decl. (ECF No. 351-4) ¶16; Rosenberg Decl. (ECF No. 351-5)

22   ¶25; Altman Decl. (ECF No. 351-6) ¶13. Certain Defendants have also expressed

23   their opinion that customers who were challenging whether Qualcomm's rates were

24   FRAND were doing so as a negotiation tactic. *See* Jacobs Decl. (ECF No. 351-2)

25   ¶17; Aberle Decl. (ECF No. 351-4) ¶18. And certain Defendants also claimed that

26   they "believed" Qualcomm's licensing practices were "lawful." *See* Mollenkopf

27   Decl. (ECF No. 351-3) ¶13; Aberle Decl. (ECF No. 351-4) ¶23; Rosenberg Decl.

28   (ECF No. 351-5) ¶11.

Thus, Professor Simcoe's opinions regarding the meaning of FRAND and the nature of Qualcomm's licensing practices—topics upon which Defendants explicitly seek to present one-sided evidence—are highly relevant to the trier of fact.

## III.    LEGAL STANDARD

"Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry. And it is reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline." *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969 n.23 (9th Cir. 2013) (quoting *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010)). "The Court's duty is to evaluate the soundness of the expert's methodology, not the correctness of the expert's conclusions." *Core Wireless Licensing S.A.R.L. v. Apple Inc.*, 2016 WL 8231157, at *1 (N.D. Cal. Nov. 18, 2016). "The district court is not tasked with deciding whether the expert is right or wrong, just whether his testimony has substance such that it would be helpful to the jury." *Alaska Rent-A-Car*, 738 F.3d at 969-70.

"Trial courts have always had a gatekeeping function for opinion evidence." *Primiano*, 598 F.3d at 564. "[T]he trial court must assure that the expert testimony both rests on a reliable foundation and is relevant to the task at hand." *Id.*  But in this role, the Court is a "gatekeeper, not a fact finder," and the gate cannot be "closed" to a relevant opinion offered with sufficient foundation by one qualified to give it. *Alaska Rent-A-Car*, 738 F.3d at 969-70. Stated differently, while the Court is required to "screen the jury from unreliable nonsense opinions," the Court may "not exclude opinions merely because they are impeachable." *Id.*  "Disputes as to the strength of [an expert's] credentials, faults in his use of [a particular] methodology, or lack of textual authority for his opinion, go to the weight, not the admissibility, of his testimony." *Kennedy v. Collagen Corp.*, 161 F.3d 1226, 1230-31 (9th Cir. 1998); *Primiano*, 598 F.3d at 564 ("Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of

proof, not exclusion.").

## IV.    ARGUMENT

### A.    Professor Simcoe Is Qualified To Opine as to Foreseeability and the Centrality of Qualcomm's Bundling Practices

Professor Simcoe has extensive experience in innovation, including standard setting organizations and SEPs, and antitrust and industrial organization economics. His academic research and considerable scholarly publication record addresses, among others, industry standards and the economic framework in which regulators assess anticompetitive conduct.  In addition to his academic work, he has served on various expert panels related to standard setting, including a committee assembled by the National Academy of Sciences ("NAS") to write a report titled "Patent Challenges for Standard-Setting in the Global Economy: Lessons From Information and Communications Technology." The report was commissioned by the U.S. Patent and Trademark Office to examine and assess how leading national, regional, and multinational standards bodies address issues of intellectual property arising in connection with the development of technical standards. Professor Simcoe also served on the Visiting Committee on Advanced Technology convened by the National Institute of Standards and Technology (NIST) to assist with its implementation of the U.S. National Standards Strategy on Critical and Emerging Technologies.

Professor Simcoe's focus on innovation, competition, and public policy and his close work for and with regulatory bodies further deepen his expertise. Professor Simcoe has served as an expert witness and consultant to ███████████ ███████████████████████████████████████████████████ ██████████████████████████████████. Rpt. at ¶¶6-7; App. A at 5; App. B. Through that experience, Professor Simcoe has gained additional experience, insight, and understanding of numerous aspects of SEPs and competition, and become familiar with the theories and practices underlining

anticompetitive conduct involving SEP holders, including anticompetitive bundling and FRAND violations.  Rpt. at ¶¶5-7.  Professor Simcoe also has significant experience with the economic circumstances in which antitrust regulators have investigated—and have brought enforcement actions against—SEP holders who have engaged in anticompetitive conduct. Rpt. at ¶7; App. A at 5; App. B.

Professor Simcoe's wide-ranging experience provides a solid basis for him to assist the trier of fact by identifying and explaining the anticompetitive concerns in SEP licensing, the circumstances in which anticompetitive conduct gives rise to regulatory enforcement, and the economic bases on which enforcement agencies acted in this case.

Courts regularly permit experts to provide such testimony in order to explain the relevant regulatory backdrop of the litigation.  *See, e.g.*, *Bona Fide Conglomerate, Inc. v. SourceAmerca*, 2019 WL 1369007, at *13 (S.D. Cal. Mar. 26, 2019) (permitting testimony as to the general standards, criteria, and regulations applicable to industry participants). Indeed, there is "no question" that an expert may help the jury understand not only the general structure of a complex and unfamiliar regulatory framework, but how it applied to specific actions taken by the regulator. *Holley v. Gilead Scis., Inc.*, 2023 WL 2469632, at *6 (N.D. Cal. Feb. 27, 2023) (an expert may "look[] at relevant information from the eyes of [a] regulator" to help the jury understand the "[regulatory]-related evidence that will be presented at trial" and testify as to the "meaning of documents in the regulatory history," consistent with their experience); *see also In re Juul Labs, Inc. Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2022 WL 1814440, at *13 (N.D. Cal. June 2, 2022) ("I will not exclude expert testimony that helps explain the regulatory background that is relevant to this case."); *United States v. Pac. Gas & Elec. Co.*, 2016 WL 3268994, at *1 (N.D. Cal. June 15, 2016) ("expert testimony to help the jury digest this complex regulatory framework is necessary and warranted").

Courts also regularly hold that an expert may opine "about what the factual

record indicates" and "what rational economic actors would do in the circumstances confronting defendants," *In re HIV Antitrust Litig.*, 2023 WL 3089820, at *2-3 (N.D. Cal. Mar. 7, 2023); what an industry participant "should have known" regarding applicable regulatory risks, *Block v. Woo Young Medical Co.*, 937 F. Supp. 2d 1028, 1045-46 (D. Minn. 2013); how a "reasonable company sitting in the [defendants'] shoes may analyze the business context," *In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, 2018 WL 734655, at *2 (D. Mass. Feb. 6, 2018); and how "companies typically react" to certain conditions, *In re Mirena IUD Prods. Liab. Litig.*, 169 F. Supp. 3d 396, 481-82 (S.D.N.Y. 2016) (post-marketing adverse events).

Each of Defendants' challenges to Professor Simcoe's proffered testimony fails.

***First***, Defendants erroneously contend (Mot. at 7) that Professor Simcoe cannot opine as to the foreseeability of the regulatory actions and lawsuits, or the central role of Qualcomm's bundling practices therein, because he lacks "any background in antitrust law or the decision-making of regulators or Apple." But contrary to Defendants' contentions, Professor Simcoe has significant experience researching, consulting, and publishing in the area of antitrust economics—particularly in the context of SEPs.[1]  As Professor Simcoe testified, ▮▮▮▮▮▮

---

[1] A sample of relevant publications include: (i) E. Hovenkamp and T. Simcoe. Tying and Exclusion in FRAND Licensing: Evaluating Qualcomm, at 6-7, 12. *The Antitrust Source*, February 2020; (ii) T. Simcoe. Governing the Anti-Commons: Institutional Design for Standard Setting Organizations, at 12 n.18. In *Innovation Policy and the Economy*, 14:99-128, 2014; (iii) R. Bekkers, C. Catalini, A Martinelli, C. Righi and T. Simcoe. Declared Essential Patents, at 2-3. *Research Policy*, 52(1):104618, January 2023 (describing licensing on FRAND terms, and a "trend" of "increased antitrust enforcement" leading to growth in the total IP declarations to SSOs); (iv) Allan Shampine and Tim Simcoe. Economics of Patents and Standardization: Network Effects, Hold-up, Hold-out, Stacking, at 104-08. *The Cambridge Handbook of Technical Standardization Law*, Vol. 1. Cambridge

██████████████████████████████████████████████████████

████████████████████████████████████████████ PX126 ("Tr.") at 231:20-23.

Professor Simcoe has served as an expert witness in antitrust cases, *id.* at 6:15-7:1

████████████████████████████████████████████████████████████

████████████████████████████); performed consulting work ████████████████████

██████████████ *id.* at 7:8-10; researched in antitrust law and published in legal

journals, *id.* at 7:11-12; reviewed and analyzed law review articles, law and

economics textbooks, and court decisions, *id.* at 8:16-23; and co-directed a research

institute at Boston University housed in the law school. *Id.* at 8:1-4. He currently

teaches a Ph.D. course on methods for causal inference. *Id.* at 147:15-148:5.

Through all this work, Professor Simcoe ████████████████████████████████████

████████████████████ *Id.* at 7:17-20.

Professor Simcoe has also gained a ██████████████████████████████████

███████████████████████████████ *Id.* at 24:16-21. Among other things, he has

worked on antitrust matters raising issues subject to FTC enforcement, Rpt. at ¶¶6-

9; written papers related to the FTC's decisions and actions, Tr. at 24:25-25:1; and

presented at an FTC seminar about ████████████████████████████████████ *Id.*

at 24:22-24. Professor Simcoe also has previous experience in regulatory decision-

making through his role as a Senior Economist for the President's Council of

Economic Advisors. Rpt. App. A. As Professor Simcoe testified, ████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████████████████. *See, e.g.*, Tr. at 232:22-

233:6.

---

University Press, 2017; and (v) M. Lemley and T. Simcoe. How Essential are
Standard Essential Patents? *Cornell Law Review*, 104(3): 607-642, March 2019.
App. A at 1-4.

***Second***, Defendants baselessly speculate (Mot. at 9) that Professor Simcoe will opine on what the FTC "believed or considered." To be clear, Professor Simcoe has not offered—and is ***not*** offering—testimony concerning the FTC or anyone else's state of mind. Rather, in accordance with well-established expert principles, Professor Simcoe is "'explaining the regulatory context in which [documents and exhibits in evidence] were created, defining any complex or specialized terminology, [and] drawing inferences that would not be apparent without the benefit of experience or specialized knowledge." *Gilead*, 2023 WL 2469632, at *6. Because Professor Simcoe does not provide a state of mind opinion, and Plaintiffs represent that Professor Simcoe will not offer testimony at trial as to anyone else's state of mind, Defendants' argument is moot. *See Woo Young Medical*, 937 F. Supp. 2d at 1045 (finding that issue was moot after plaintiff represented that expert would "not express any opinions on the intent, motives, or state of mind of" defendant); *see also* Memorandum Opinion at 9, *In re Under Armour Sec. Litig.*, No. 1:17-cv-00388-RDB (D. Md. Apr. 16, 2024) (ECF No. 388) ("Defendants may object at trial if they believe [the expert] crosses the line into such opinions").

The cases relied upon by Defendants (Mot. at 9-10) are inapposite and, if anything, undermine Defendants' arguments. For example, in *In re Davol, Inc./C.R. Bard, Inc., Polypropylene Hernia Mesh Products Liability Litigation*, the court made the uncontroversial point that a witness may not testify as to the "beliefs of the FDA." 2021 WL 2643109, at *8 (S.D. Ohio June 28, 2021). The court then found that the expert, like Professor Simcoe in this case, ***was*** "eminently qualified to opine on whether Defendants were 'in compliance' with regulatory guidelines." *Id.* at *7. The court also held that the expert ***could*** testify as to the meaning and significance of agency actions. *Id.* Similar to the expert in *Davol*, Professor Simcoe is "eminently qualified" to testify about the circumstances of the regulatory actions and civil lawsuits and the central role that Qualcomm's bundling practices played in

those actions.[2]

**Third**, Defendants also seek to exclude Professor Simcoe from offering an opinion as to what Qualcomm "anticipated." Mot. at 11-12. Qualcomm cites two paragraphs that it claims are improper state of mind opinions, ¶¶15(e) and 164. Professor Simcoe will not testify that Qualcomm "was aware of the likely consequences of its actions," or that Qualcomm "anticipated" that regulators would take action. Rather, based on his experience, Professor Simcoe will opine ████████ ██████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ █ Rpt. ¶15(e); Reply Rpt. ¶4. In particular, Professor Simcoe ██████ ██████████████████████████████████████████████████████ ███████████████████████████████ Reply Rpt. ¶4. Such opinions fall squarely within Professor Simcoe's experience.

The primary decision relied upon by defendants, *Aya Healthcare Servs., Inc. v. AMH Healthcare, Inc.*, 613 F. Supp. 3d 1308, 1320 (S.D. Cal. 2020) (Mot. at 11), arises in a completely different context. In that case, the court excluded an expert opinion regarding contract interpretation because the contract itself was not ambiguous and it was otherwise improper to opine as to how other parties would *interpret* the contractual provision. *Id.* (rejecting opinion as to "how certain restraints

---

[2] Defendants' other cases are easily distinguishable and far afield from the opinions offered by Professor Simcoe in this case. The expert's causation opinion in *Haynes ex rel. Haynes v. National R.R. Pass. Corp.*, was deemed unreliable because he had no experience in the causes of deep vein thrombosis, but instead based his opinion on a "Google search" and an article on "CNN.com." 319 F. App'x 541, 543 (9th Cir. 2009). Likewise, in *Daniels v. Grand Lux Café, LLC*, the proposed expert, a criminologist, admitted that she had no prior experience concerning the adequacy of sexual harassment policies or industry practices in implementing such policies. 2015 WL 1398325, at *5 (D.N.J. March 26, 2015) (precluding expert from testifying that defendants' sexual harassment policies and training were insufficient to prevent a sexual assault).

imposed by AMN would be interpreted by participants in the travel nurse staffing industry"). But Professor Simcoe provides no opinion as to state of mind, or how any party would interpret a contractual provision. *Cf. Stone Brewing Co., LLC v. MillerCoors LLC*, 2020 WL 907060, at *4 (S.D. Cal. Feb. 25, 2020) (precluding opinion as to a party's intent in bringing a lawsuit, but permitting expert testimony regarding consumer sentiment in various segments in the beer market). The only additional decision cited by Defendants, *Easterwood v. Husqvarna Pro. Prods., Inc.*, 576 F. Supp. 3d 950, 962 (M.D. Ala. 2021), is a products liability action concerning whether the specific misuse of a riding mower was foreseeable to a lawnmower manufacturer. While the court precluded the expert from testifying as to what was foreseeable to the manufacturer, the court permitted him to testify as to whether the type of misuse of the mower "was known in the industry," *id.*, the same type of opinion outlined in numerous decisions above.

In short, Defendants have identified no basis to exclude Professor Simcoe from offering the challenged opinions on the basis of his experience.

### B. Professor Simcoe Offered Proper Testimony Interpreting the Regulatory Actions From the Perspective of an Experienced Economist

Professor Simcoe is a leading expert in FRAND and competition-related issues involving SEPs. In his expert report, Professor Simcoe cited and relied upon numerous credible sources—Rpt. App. A at 1-4; App. C. at 11-15—addressing the economic antitrust principles underlying FRAND violations and bundling conduct, "none of which defendants challenge." *In re Apple Inc. Sec. Litig.*, 2023 WL 4556765, at *2 (N.D. Cal. July 17, 2023). Professor Simcoe's "background and experience sufficiently prepare him to make the challenged opinions," which are "adequately supported and within [his] expertise." *Id*.

Moreover, Rule 702 generally is construed liberally in evaluating the admissibility of testimony based on "specialized knowledge." *United States v. Hankey*, 203 F.3d 1160, 1168 (9th Cir. 2000). As Defendants themselves

acknowledge, "extensive experience" is a "method" that qualifies as "specialized knowledge" and can reliably support expert testimony.  Fed. R. Evid. 702 advisory committee's note to 2000 amendment.

Here, as further discussed below, Professor Simcoe's extensive experience and review of the evidentiary record provides him a reliable basis to support his expert opinions in this case.

### 1.    Professor Simcoe offered a proper methodology in opining that the regulatory and civil actions were foreseeable

Contrary to Defendants' contention, Professor Simcoe did not engage in "Monday Morning Quarterbacking."    Mot. at 16.  Rather, he presented a comprehensive expert report ███████████████████████████████ ████████████████████████████████████████████████ ████████ and none of which Defendants have sought to exclude.  These factors include:

████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ █████████████████ Rpt. § IV; *see also* Tr. 166:20-167:12 █████████ ██████████████████████████████████████ ██████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ Rpt. ¶¶78, 81-84, 86, 173; Reply Rpt. ¶59.

████████████████████████████████████████████████ ████████████████████████████████████████████████



1

2

3 *See id.* at ¶166; *see also id.* at ¶101

4

5 ¶131

6

7

8

9

10

11

12 Rpt. § III.A.1

13 *id.* § III.A.2

14 *id.* § III.A.3

15 *id.* § IV.C.

16

17

18

19

20 *id.* at ¶¶168, 169

21

22

23 *id.* at ¶¶170-71

24

25 *id.* at ¶172.

26

27

28 *Id.* ¶101

*see also* ¶¶174-78.

Contrary to Defendants' argument, Professor Simcoe did not engage in a "hindsight-driven" approach. Mot. at 16.  Rather, Professor Simcoe used his extensive experience to

As referenced in Section IV.A *supra,* Professor Simcoe's opinions are proper. It is well-settled that experts may testify "about what the factual record indicates" and "what rational economic actors would do in circumstances confronting defendants," *In re HIV Antitrust Litig.*, 2023 WL 3089820, at *2-3—which is exactly what Professor Simcoe did here. *See Woo Young Medical*, 937 F. Supp. 2d at 1045-46 (permitting testimony as to "the state of the medical literature, the state of FDA approval, and other information about which [the defendant] should have been aware" as relevant to question of foreseeable risk).  Such opinions may extend as to the analysis of information that will help the jury determine what the defendant "must have known at certain times based on the evidentiary record."  *In re Apple Inc. Sec. Litig.*, 2023 WL 4556765, at *2 (permitting testimony, in a recent securities case, from an expert who relied on "what studies and other sources say about the general economic climate in China").

Courts have permitted foreseeability opinions in a variety of contexts, including, for example, as to the likelihood of FDA approval, *Woo Young Med. Co.*, 937 F. Supp. 2d at 1045-46; the onset of a financial crisis, *FDIC v. Dellen*, 2012 WL 12886491, at *4 (C.D. Cal Oct. 18, 2012); the likelihood of bankruptcy, *Pac. Select Fund v. The Bank of New York Mellon*, 2012 WL 12886495 (C.D. Cal. July 2, 2012); and economic trends and their impact on the smartphone market, *Apple*, 2023 WL

4556765, at *2.  Evidence identifying industry norms is particularly helpful to rebut any claims that Defendants acted in good faith or without scienter, which Defendants assert in this case.  *See, e.g.*, *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1043 (9th Cir. 2010) (permitting expert to rely on experience in the field to testify about general industry practices as relevant to good faith defense); *SEC v. Criterion Wealth Mgmt. Ins. Services, Inc.*, 2023 WL 5321081, at *4-5 (C.D. Cal. April 6, 2023) (testimony regarding general industry norms relevant to scienter).

Defendants' arguments to the contrary miss the mark.

***First***, Professor Simcoe did not reverse-engineer an opinion for purposes of this litigation. The primary decision cited by Defendants (Mot. at 16), *Johnson v. Manitowoc Boom Trucks, Inc.*, was a products liability action where the expert did not testify about alternative product designs that existed at the time of an accident, but rather expressed opinions that were "conceived, executed, and invented ***solely*** in the context of this litigation." 406 F. Supp. 2d 852, 866 (M.D. Tenn. 2005) ("The expert here does not even offer a proposed design that would necessarily make this crane safer; he merely offers a mechanism that might have prevented a very specific accident that occurred under very specific conditions."), *aff'd* 484 F.3d 426 (6th Cir. 2007). Not so here, where Professor Simcoe ███████████████████ ████████████████████████

***Second***, Defendants rely on the false premise that it was necessary for Professor Simcoe to prove that Qualcomm's practices *violated* antitrust laws.  But this is a securities fraud case, in which Plaintiffs alleged that Defendants misled investors about certain business practices. *See In re Qualcomm Inc. Sec. Litig.*, 2023 WL 2583306, at *3 (S.D. Cal. Mar. 20, 2023) (describing the "four rough categories of misrepresentations . . . regarding Qualcomm's ***bundling practices***").  Professor Simcoe ███████████████████████████████████████████ ████████████████████████████████████████████████.

Professor Simcoe's proffered opinion contrasts with Defendants and their experts,

██████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████. Mot. at 2-3, 17. What

Defendants offer is quintessential hindsight evidence that is wholly irrelevant to

foreseeability.

    ***Third***, Defendants erroneously attempt to fault Professor Simcoe for "failing"

to find that Qualcomm's royalty rates were above FRAND.  As Professor Simcoe

explained in his reports and at deposition, ████████████████████████████████

██████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████

███████████████████████████████ Tr. 151:1-25; *see also id.* at 163:4-16 ███████

██████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████

███████████████

    Defendants' related assertion that Professor Simcoe "failed" to analyze the

impact of Qualcomm's practices on its market share is similarly misplaced. Mot. at

14. Professor Simcoe testified ████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████

████████████████████████████████████ Tr. 114:25-115:5.

    Professor Simcoe's findings are consistent with the evidentiary record. *See*

Rpt. at ¶86; DX96 at 207-09 ███████████████████████████████████████████

██████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████



His findings are also consistent with those of Qualcomm's regulators. For example, the KFTC cited

*Id.* at 211; *see id.* at 211-13

*see also, e.g., id.* at 200

201

Regardless, any challenges to Professor Simcoe's well-supported opinion are within the province of a fact finder, not a trial court judge. *See, e.g., Alaska Rent-A-Car*, 738 F.3d at 970.

**Fourth**, Defendants wrongly assert that Professor Simcoe did not "attempt to determine whether the bundled discounts he alleges to have been anti-competitive would violate established antitrust standards." Mot. at 15. Professor Simcoe's expert report

*See, e.g.*, Rpt. at ¶¶70-82. He also explained

Reply Rpt. ¶¶48-55. In addition, Professor Simcoe testified, consistent with his expert report, that

Tr. 166:20-167:12. At most, there is a disputed factual issue as to whether, as Defendants assert, the types of bundled

discounts provided by Qualcomm "generally benefit consumers"—a disputed question that goes to the weight of Professor Simcoe's testimony, not its admissibility. Mot. at 15; *see* Reply Rpt. ¶49

### 2. Professor Simcoe offered a proper methodology in opining that Qualcomm's bundling practices "played a central role" in the regulatory actions and civil litigation

Contrary to Defendants' arguments, *see* Mot. at 18-19 (citing Rpt. ¶¶159-63, 178), Professor Simcoe also properly applied his specific expertise to explain why

Experts are not precluded from "drawing inferences that would not be apparent without the benefit of experience or specialized knowledge." *Gilead*, 2023 WL 2469632, at *6; *see supra* § IV.A. Indeed, "there is no question" that experts may provide testimony to explain the relevant regulatory backdrop of the litigation and how it applied to *specific actions* taken by a regulator in a case. *Id.* Testimony from an economist explaining the economic principles underpinning the regulatory actions and lawsuits will help the factfinder understand the complex economic issues in this case that are well beyond the knowledge of an average juror.

Further, Professor Simcoe's opinions in paragraphs 159-63 and 178 of his report are grounded in a reliable methodology. As Professor Simcoe testified,

Tr. 33:25-34:2.

*Id.* at 34:2-5.

*Id.* 33:19-34:11. Based on his extensive economics experience, Professor Simcoe testified that ███████ *Id.* 199:18-200:5.

Such testimony is squarely permissible.  In *Gilead*, the court held that an expert could testify "as to what the FDA did, and what it said, based on the documents he reviewed," and could "opine on these documents, including what they mean." 2023 WL 2469632, at *6.  The expert could thus "opine on how he interprets what happened in the case" because "that speaks to the meaning of the regulatory history."  *Id.*  Likewise, in *In re Mirena IUD Products Liability Litigation*, the court permitted an expert to "testify as to what the FDA did, and what it said, based on the documents he reviewed."  169 F. Supp. 3d 396, 466 (S.D.N.Y. 2016) (holding the expert "may opine on these documents, including what they mean, and on commentary provided by the FDA"); *see also In re Levaquin Prods. Liab. Litig.*, 2011 WL 6888533, at *2 (D. Minn. Dec. 29, 2011) (permitting testimony "regarding the FDA's intent" so long as it "is limited to instances in which the intent is clearly indicated in public documents").

The two decisions cited by Defendants are inapt. Mot. at 19. In *In re Rezulin Products Liability Litigation*, the expert himself conceded he was not providing an opinion, only a "historical commentary of what happened" through "simple inferences drawn from uncomplicated facts." 309 F. Supp. 2d 531, 551 (S.D.N.Y. 2004). Similarly, in *In re C.R. Bard., Inc.*, the court precluded factual testimony from "Relationship Experts" who recounted their interviews with the bellwether plaintiffs about the impact of an injury resulting from a defective product that could "be explained by the [plaintiffs] themselves and understood by the average jurors." 948

F. Supp. 2d at 608-09.

Neither situation is present here, and courts have distinguished the narrow basis upon which *Rezulin* was decided. For example, in *Cisco Systems, Inc. v. Arista Networks*, 2016 WL 11752975, at *14 (N.D. Cal. Nov. 16, 2016), the court held that an economist's testimony was not "solely for the purpose of providing a factual narrative, like the precluded expert opinions in" *Rezulin*, finding that "[u]nlike those experts, [the expert] is not recounting historical events or narrating facts, but has applied her expertise in a market share analysis based on assumptions she made from certain deposition testimony." *Id.* Other cases have held the same. *See, e.g.*, *Dial Corp. v. News Corp.*, 165 F. Supp. 3d 25, 41 (S.D.N.Y. 2016) (rejecting an expert challenge where an economist's opinion rested on an economic analysis, stating that the challenged testimony was "distinguishable from other cases in which expert testimony is *plainly untethered to any economic analysis*"); *In re Welding Fume Prods. Liab. Litig.*, 2010 WL 7699456, at *41 (N.D. Ohio June 4, 2010) (distinguishing *Rezulin* as an opinion presenting "a repetition of the factual allegations in plaintiffs' complaint," holding that experts, through the application of their experience, "may allow the trier of fact to better understand what the documents do (and don't) mean, and, thus, what the defendants did (or didn't know)"). These decisions flatly reject Defendants' argument (Mot. at 19) that the average juror can draw their own conclusions from the complex regulatory history and economic backdrop of this case.

In sum, Professor Simcoe's testimony that ████████████████████ ██████████████████████████████████████████████████████████ ██████████████████████████████████████████, is consistent with Professor Simcoe's extensive experience in regulatory actions involving SEPs and antitrust economics and conforms with applicable precedent.

## V. CONCLUSION

For the foregoing reasons, the Court should deny Defendants' motion to exclude the testimony of Professor Simcoe.

Dated:  May 6, 2024                    Respectfully submitted,

**BERNSTEIN LITOWITZ BERGER
  & GROSSMANN LLP**

By: */s/ Jonathan D. Uslaner*
Jonathan D. Uslaner (Bar No. 256898)
jonathanu@blbglaw.com
Lauren M. Cruz (Bar No. 299964)
lauren.cruz@blbglaw.com
2121 Avenue of the Stars, Suite 2575
Los Angeles, CA 90067
Tel: (310) 819-3481
  *-and-*
Salvatore Graziano (*Pro Hac Vice*)
salvatore@blbglaw.com
Rebecca E. Boon (*Pro Hac Vice*)
rebecca.boon@blbglaw.com
1251 Avenue of the Americas, 44th Floor
New York, NY 10020
Tel: (212) 554-1400
Fax: (212) 554-1444


**MOTLEY RICE LLC**
Gregg S. Levin (*Pro Hac Vice*)
glevin@motleyrice.com
William S. Norton (*Pro Hac Vice*)
bnorton@motleyrice.com
Christopher Moriarty (*Pro Hac Vice*)
cmoriarty@motleyrice.com
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
Tel: (843) 216-9000
Fax: (843) 216-9450
  *-and-*

William H. Narwold (*Pro Hac Vice*)
bnarwold@motleyrice.com
One Corporate Center
20 Church Street, 17th Floor
Hartford, CT 06103

*Counsel for Lead Plaintiffs Sjunde AP-Fonden and Metzler Asset Management GmbH, and Lead Counsel for the Class*