1

2   **BERNSTEIN LITOWITZ BERGER
      & GROSSMANN LLP**
3   JONATHAN D. USLANER (Bar No. 256898)
    jonathanu@blbglaw.com
4   LAUREN M. CRUZ (Bar No. 299964)
    lauren.cruz@blbglaw.com
5   2121 Avenue of the Stars, Suite 2575
    Los Angeles, CA 90067
6   Tel: (310) 819-3470

7

8   **MOTLEY RICE LLC**
    GREGG S. LEVIN (*pro hac vice*)
9   glevin@motleyrice.com
    28 Bridgeside Blvd.
10  Mount Pleasant, SC 29464
    Tel: (843) 216-9000
11

12  *Counsel for Lead Plaintiffs and
    Lead Counsel for the Class*
13

14  [Additional Counsel Appear on Signature
    Page]
15

16              **UNITED STATES DISTRICT COURT
                SOUTHERN DISTRICT OF CALIFORNIA**
17

18  | IN RE QUALCOMM | Case No. 3:17-cv-00121-JO-MSB |
19  INCORPORATED SECURITIES
    LITIGATION

20  IN RE QUALCOMM
    INCORPORATED SECURITIES
    LITIGATION

| IN RE QUALCOMM INCORPORATED SECURITIES LITIGATION | Case No. 3:17-cv-00121-JO-MSB |
| --- | --- |
| | **LEAD COUNSEL'S MOTION FOR ATTORNEYS' FEES AND LITIGATION EXPENSES; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** |
| | Judge: Hon. Jinsook Ohta |
| | Date: September 27, 2024 |
| | Time: 9:00 a.m. |
| | Courtroom: 4C |

27

28

## NOTICE OF MOTION AND MOTION

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on September 27, 2024 at 9:00 a.m., in Courtroom 4C of the Edward J. Schwartz United States Courthouse, 221 West Broadway, San Diego, California 92101, the Honorable Jinsook Ohta presiding, Lead Counsel Bernstein Litowitz Berger & Grossmann LLP ("BLB&G") and Motley Rice LLC ("Motley Rice"), Court-appointed counsel for the Class and Lead Plaintiffs Sjunde AP-Fonden ("AP7") and Metzler Asset Management GmbH ("Metzler"), will and hereby do move, pursuant to Rule 23(h) of the Federal Rules of Civil Procedure, for an Order granting an award of attorneys' fees and litigation expenses in the above-captioned securities class action.

This motion is made pursuant to the Court's June 27, 2024 Order Preliminarily Approving Settlement and Providing for Notice (ECF No. 433) ("Preliminary Approval Order") and is based upon (1) this Notice of Motion; (2) the supporting Memorandum of Points and Authorities in Support set forth below; (3) the accompanying Joint Declaration of Jonathan D. Uslaner and Gregg S. Levin in Support of (I) Lead Plaintiffs' Motion for Final Approval of the Proposed Settlement and Plan of Allocation and (II) Lead Counsel's Motion for Attorneys' Fees and Litigation Expenses, and the exhibits attached thereto; (4) the pleadings and records on file in this action; and (5) other such matters and argument as the Court may consider at the hearing of this motion.

Pursuant to the Preliminary Approval Order, any objection to the motion for attorneys' fees and Litigation Expenses must be filed on or before September 6, 2024. To date, no objections have been filed. A proposed Order will be submitted with Lead Counsel's reply brief, which will be filed on September 20, 2024, after the deadline for objections has passed.

# <u>**TABLE OF CONTENTS**</u>

Page

TABLE OF AUTHORITIES ......................................................................... ii

MEMORANDUM OF POINTS AND AUTHORITIES ..........................................1

I.      INTRODUCTION .........................................................................1

II.     THE REQUESTED FEE AWARD IS REASONABLE AND
        SHOULD BE APPROVED ............................................................4

        A.      Counsel Are Entitled To An Award Of Attorneys' Fees
                From The Common Fund ..................................................4

        B.      The Requested Attorneys' Fees Are Reasonable Under
                The Percentage Method .....................................................5

        C.      The Requested Attorneys' Fees Are Reasonable Under a
                Lodestar Cross-Check ......................................................8

III.    ALL OTHER FACTORS CONSIDERED BY NINTH
        CIRCUIT COURTS SUPPORT APPROVAL OF THE
        REQUESTED FEE ........................................................................10

        A.      The Results Achieved .......................................................11

        B.      The Litigation Was Risky And Complex ...........................11

        C.      The Skill Required And Quality Of Lead Counsel's
                Work Performed Support The Requested Fee .....................13

        D.      The Contingent Nature Of The Fee And The Financial
                Burden Carried By Lead Counsel Support The Requested
                Fee ...................................................................................14

        E.      The Requested Fee Is Consistent With Or Less Than
                Awards Made In Similar Cases On A Percentage Or
                Lodestar Multiplier Basis ................................................15

        F.      Lead Plaintiffs' Approvals Support The Requested Fee ......15

IV.     PLAINTIFFS' COUNSEL'S LITIGATION EXPENSES ARE
        REASONABLE ..............................................................................16

V.      LEAD PLAINTIFFS SHOULD BE AWARDED THEIR
        REASONABLE COSTS AND EXPENSES UNDER 15 U.S.C.
        §78u-4(a)(4) ...................................................................................18

VI.     CONCLUSION ..............................................................................19

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
  572 F.3d 221 (5th Cir. 2009) ...............................................................11

*In re Allergan, Inc. Proxy Violation Derivatives Litig.*,
  2018 WL 4959014 (C.D. Cal. Aug. 13, 2018) ....................................6

*In re Amgen Inc. Sec. Litig.*,
  2016 WL 10571773 (C.D. Cal. Oct. 25, 2016) .........................................*passim*

*In re Anthem, Inc. Data Breach Litig.*,
  2018 WL 3960068 (N.D. Cal. Aug. 17, 2018) ...............................6, 7

*In re Apollo Grp. Inc. Sec. Litig.*,
  2012 WL 1378677 (D. Ariz. Apr. 20, 2012) .......................................7

*In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*,
  772 F.3d 125 (2d Cir. 2014) ...............................................................18

*Barbosa v. Cargill Meat Sols. Corp.*,
  297 F.R.D. 431 (E.D. Cal. 2013) .......................................................14

*Billitteri v. Sec. Am., Inc.*,
  2011 WL 3585983 (N.D. Tex. Aug. 4, 2011) .....................................7

*In re Bluetooth Headset Prod. Liab. Litig.*,
  654 F.3d 935 (9th Cir. 2011) ...............................................................5

*Blum v. Stenson*,
  465 U.S. 886 (1984)..............................................................................4

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980)..............................................................................4

*In re Broadcom Corp. Sec. Litig.*,
  2005 WL 8153006 (C.D. Cal. Sept. 12, 2005) ...................................7

*In re Brocade Sec. Litig.*,
  No. 05-cv-2042, slip op. (N.D. Cal. Jan. 26, 2009)............................7

*In re Cendant Corp. Litig.*,
   264 F.3d 201 (3d Cir. 2001) ...............................................................................16

*Cheng Jiangchen v. Rentech, Inc.*,
   2019 WL 5173771 (C.D. Cal. Oct. 10, 2019) .................................................5, 13

*Cornwell v. Credit Suisse Grp.*,
   No. 08-cv-03758 (VM), slip op. (S.D.N.Y. July 18, 2011)..................................8

*Davis v. Yelp, Inc.*,
   2023 WL 3063823 (N.D. Cal. Jan. 27, 2023)......................................................10

*In re DJ Orthopedics, Inc. Sec. Litig.*,
   2004 WL 1445101 (S.D. Cal. June 21, 2004) .....................................................11

*Dura Pharms., Inc. v. Broudo*,
   544 U.S. 336 (2005)............................................................................................12

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
   2007 WL 2416513 (N.D. Cal. Aug. 16, 2007) ...................................................14

*Fischel v. Equitable Life Assurance Soc'y*,
   307 F.3d 997 (9th Cir. 2002) ............................................................................5, 9

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
   2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010).......................................................9

*Freudenberg v. E*Trade Fin. Corp.*,
   No. 07 Civ. 8538 (JPO) (MHD), slip op. (S.D.N.Y. Oct. 20, 2012)...................7

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) .............................................................................4

*Hatamian v. Advanced Micro Devices, Inc.*,
   2018 WL 8950656 (N.D. Cal. Mar. 2, 2018) .....................................................15

*HCL Partners Ltd. P'ship v. Leap Wireless Int'l, Inc.*,
   2010 WL 4156342 (S.D. Cal. Oct. 15, 2010)......................................................8

*Hefler v. Wells Fargo & Co.*,
   2018 WL 6619983 (N.D. Cal. Dec. 18, 2018), *aff'd sub nom.*
   *Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020) ...................................9, 11, 15

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983)............................................................................................11

*In re Heritage Bond Litig.*,
   2005 WL 1594389 (C.D. Cal. June 10, 2005) ...............................................11, 13

*In re Hewlett-Packard Co. Sec. Litig.*,
   No. 11-1404-AG, slip op. (C.D. Cal. Sept. 15, 2014) ........................................6

*Hopkins v. Stryker Sales Corp.*,
   2013 WL 496358 (N.D. Cal. Feb. 6, 2013) ........................................................9

*In re Immune Response Sec. Litig.*,
   497 F. Supp. 2d 1166 (S.D. Cal. 2007).............................................................19

*In re Int'l Rectifier Corp. Sec. Litig.*,
   Case No. 2:07-cv-02544-JFW (C.D. Cal. Feb. 8, 2010) .....................................6

*Khoja v. Orexigen Therapeutics, Inc.*,
   2021 WL 5632673 (S.D. Cal. Nov. 30, 2021) .....................................................10

*Klein v. Altria Grp., Inc.*,
   2022 WL 16946243 (E.D. Va. Mar. 31, 2022) .....................................................7

*Knurr v. Orbital ATK, Inc.*,
   No. 1:16-cv-01031-TSE-MSN (E.D. Va. June 7, 2019) .......................................7

*Local 703 v. Regions Fin. Corp.*,
   2015 WL 5626414 (N.D. Ala. Sept. 14, 2015) .....................................................7

*In re Lucent Techs., Inc. Sec. Litig.*,
   327 F. Supp. 2d 426 (D.N.J. 2004) ....................................................................15

*Minneapolis Firefighters' Relief Ass'n v. Medtronic, Inc.*,
   2012 WL 12903758 (D. Minn. Nov. 8, 2012) .....................................................7

*N.J. Carpenters Health Fund v. DLJ Mortg. Cap., Inc.*,
   No. 08-cv-5653-PAC, slip op. (S.D.N.Y. May 10, 2016) .....................................7

*In re Nortel Networks Corp. Sec. Litig.*,
   539 F.3d 129 (2d Cir. 2008) ...............................................................................16

*In re Nuvelo, Inc. Sec. Litig.*,
   2011 WL 2650592 (N.D. Cal. July 6, 2011) .......................................................14

*In re Omnivision Techs.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2008) .......................................................*passim*

*In re Online DVD-Rental Antitrust Litig.*,
  779 F.3d 934 (9th Cir. 2015) ...................................................................5

*Pokorny v. Quixtar, Inc.*,
  2013 WL 3790896 (N.D. Cal. July 18, 2013) ........................................6

*In re Rayonier Inc. Sec. Litig.*,
  2017 WL 4542852 (M.D. Fla. Oct. 5, 2017) ..........................................7

*In re Rite Aid Corp. Sec. Litig.*,
  396 F.3d 294 (3d Cir. 2005) ...................................................................5

*San Antonio Fire & Police Pension Fund v. Dole Food Co.*,
  No. 1:15-cv-1140-LPS, slip op. (D. Del. July 18, 2017)........................7

*In re SanDisk LLC Sec. Litig.*,
  No. 3:15-cv-01455-VC, slip op. (N.D. Cal. Oct. 23, 2019) ..................6

*Schulein v. Petroleum Dev. Corp.*,
  2015 WL 12762256 (C.D. Cal. Mar. 16, 2015)......................................6

*In re Snap Inc. Sec. Litig.*,
  2021 WL 667590 (C.D. Cal. Feb. 18, 2021) .....................................5, 7

*Thomas v. MagnaChip Semiconductor Corp.*,
  2018 WL 2234598 (N.D. Cal. May 15, 2018)......................................17

*Todd v. STAAR Surgical Co.*,
  2017 WL 4877417 (C.D. Cal. Oct. 24, 2017) ...............................17, 19

*Torrisi v. Tucson Elec. Power Co.*,
  8 F.3d 1370 (9th Cir. 1993) ...................................................................5

*van Wingerden v. Cadiz, Inc.*,
  2017 WL 5565263 (C.D. Cal. Feb. 8, 2017) ..........................................9

*In re Verisign, Inc. Sec. Litig.*,
  No. C 02-2270-JW (PVT), slip op. (N.D. Cal. Apr. 24, 2007), ECF
  No. 528...................................................................................................6

*Vincent v. Hughes Air West, Inc.*,
  557 F.2d 759 (9th Cir. 1977) .................................................................4

*Vinh Nguyen v. Radient Pharm. Corp.*,
  2014 WL 1802293 (C.D. Cal. May 6, 2014)..........................................5

*Vizcaino v. Microsoft Corp.*,
290 F.3d 1043 (9th Cir. 2002) ....................................................................*passim*

*In re Volkswagen "Clean Diesel" Mktg. Sales Pracs., & Prods. Liab.*
*Litig.*, 2019 WL 2077847 (N.D. Cal. May 10, 2019) ...........................................6

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
19 F.3d 1291 (9th Cir. 1994) ..........................................................................4, 11

**STATUTES**

15 U.S.C. §78u-4(a)(4) ........................................................................................18

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

Lead Counsel, Bernstein Litowitz Berger & Grossmann LLP ("BLB&G") and Motley Rice LLC ("Motley Rice"), counsel for Lead Plaintiffs Sjunde AP-Fonden ("AP7") and Metzler Asset Management GmbH ("Metzler") and Court-appointed class counsel for the Class, respectfully submit this memorandum in support of their motion for (a) an award of attorneys' fees for Plaintiffs' Counsel in the amount of 23% of the Settlement Fund, net of Litigation Expenses awarded by the Court; (b) payment of the litigation expenses that were reasonably and necessarily incurred by Plaintiffs' Counsel in prosecuting and resolving the Action; and (c) reimbursement pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA") for costs and expenses incurred by Lead Plaintiffs directly related to their representation of the Class.[1]

## I.  INTRODUCTION

As a result of their effective advocacy and the significant time and effort they expended over the past seven years of litigation, Lead Counsel successfully achieved a proposed settlement of this Action for $75 million in cash for the benefit of the Class. Lead Counsel undertook this litigation on a fully contingent basis—without any guarantee of compensation or reimbursement of expenses—and faced significant risks of no recovery. Despite these risks, Lead Counsel devoted tens of thousands of hours of attorney and staff time to achieve this Settlement.

---

[1] "Plaintiffs' Counsel" means Lead Counsel BLB&G and Motley Rice and Sturman LLC, additional counsel for Lead Plaintiff Metzler. Unless otherwise noted, capitalized terms have the meanings set forth in the Stipulation and Agreement of Settlement dated June 17, 2024 (ECF No. 428-1) (the "Stipulation") or the Joint Declaration of Jonathan D. Uslaner and Gregg S. Levin in Support of (I) Lead Plaintiffs' Motion for Final Approval of the Proposed Settlement and Plan of Allocation and (II) Lead Counsel's Motion for Attorneys' Fees and Litigation Expenses (the "Joint Declaration" or "Joint Decl."), filed herewith. Citations to "¶ __" in this memorandum refer to paragraphs in the Joint Declaration and citations to "Ex. __" herein refer to exhibits to the Joint Declaration.

As detailed in the Joint Declaration, the prosecution and settlement of this litigation required extensive efforts on the part of counsel over the past seven years. Among other things, Plaintiffs' Counsel (i) conducted a comprehensive investigation of the claims, which included interviewing over 100 former Qualcomm employees; consulting with experts on issues of accounting and damages; reviewing and analyzing Qualcomm's public SEC filings, conference call transcripts, and media reports; and conducting legal research on key issues in the case; (ii) drafted a detailed consolidated complaint replete with the detail necessary to satisfy the stringent pleading standards governing securities actions; (iii) thoroughly researched, briefed, and defeated Defendants' motion to dismiss and motion for judgment on the pleadings; (iv) successfully obtained certification of the Class over Defendants' opposition; (v) completed extensive fact and expert discovery process, including obtaining over 60 million pages of documents from Defendants and 17 non-parties and taking or defending 37 depositions; (vi) worked extensively with experts in the fields of patent licensing, anticompetition laws, disclosure practices, damages, and market efficiency; (vii) prepared five affirmative expert reports and motions to exclude Defendants' six experts; (viii) briefed Lead Plaintiffs' opposition to Defendants' motions for summary judgment; and (ix) engaged in other pre-trial preparations, including consulting with a trial strategy consultant. ¶¶ 3, 7-54.

The Settlement achieved through the efforts of Lead Counsel is a particularly favorable result when considered in light of the significant risks confronted in the litigation, including challenges related to proving Defendants' liability and establishing loss causation and damages. This was not an action that was assisted by a parallel investigation by the SEC or by a restatement of the Company's financial statements. ¶ 63. On the contrary, throughout the Action, Defendants vehemently insisted that their challenged statements about Qualcomm's licensing and bundling practices were accurate and that Qualcomm's practices in these areas were fully competitive. ¶¶ 62-63. Similarly, Defendants strongly denied that they acted with

the "scienter" necessary to prove Lead Plaintiffs' securities fraud claims. ¶¶ 64-65. In addition, from the outset of this litigation, Lead Counsel faced meaningful challenges in proving that Defendants' alleged misstatements caused the price declines alleged and demonstrating damages. ¶¶ 66-68, 72-73.

Moreover, the risks of the Action only increased as the years passed, as Qualcomm has successfully defeated nearly every other related action, including several of the administrative enforcement actions and the private lawsuit that had served as the corrective disclosure events in this case. In doing so, Qualcomm had amassed a number of rulings by adjudicatory bodies such as the Ninth Circuit and the European Court of Justice finding that the Company's conduct that was the subject of many challenged statements was not anti-competitive. These decisions threatened Lead Plaintiffs' ability to prove that Defendants' statements were misleading or to show that the statements caused damages to the Class. ¶¶ 63, 66-68.

The amount of quality legal work Lead Counsel dedicated to the prosecution of this Action and the significant risk they took on by prosecuting and funding this Action with no guarantee of recovery justify a fee of 23% of the Settlement Fund. As discussed below, this fee request is: (i) below the 25% "benchmark" for attorneys' fee awards in the Ninth Circuit; (ii) consistent with or below the fees typically awarded in other comparable securities actions and other complex class actions; (iii) consistent with the more restrictive of the two agreements that the respective Lead Plaintiffs entered into with Lead Counsel at the outset of the Action; and (iv) well below Plaintiffs' Counsel's lodestar, resulting in a fractional or "negative" multiplier of 0.25. Lead Counsel also seek to recover Lead Counsel's litigation expenses, and for reimbursement, pursuant to 15 U.S.C. §78u-4(a)(4), for the time and expenses incurred by Lead Plaintiffs in their representation of the Class.

Lead Plaintiffs—sophisticated investors that manage billions of dollars in assets and who were closely involved in the prosecution and settlement of the

Action—fully endorse Lead Counsel's fee and expense application. While the deadline for Class Members to object to the requested attorneys' fees has not yet passed, thus far no objections to the fee or expense requests have been received. As set forth in more detail below, Lead Counsel respectfully request that the Court approve this motion.

## II. THE REQUESTED FEE AWARD IS REASONABLE AND SHOULD BE APPROVED

### A. Counsel Are Entitled To An Award Of Attorneys' Fees From The Common Fund

The Supreme Court has long recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). Similarly, the Ninth Circuit has held that "a private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees." *Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 769 (9th Cir. 1977). The purpose of the common fund doctrine is to adequately compensate class counsel for services rendered and to ensure that all class members contribute equally towards the costs associated with the litigation. *See In re Wash. Pub. Power Supply Sys. Sec. Litig.* ("*WPPSS*"), 19 F.3d 1291, 1300 (9th Cir. 1994) ("those who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it").

In *Blum v. Stenson*, 465 U.S. 886 (1984), the Supreme Court recognized that under the common fund doctrine a reasonable fee may be based "on a percentage of the fund bestowed on the class." *Id.* at 900 n.16. The Ninth Circuit has consistently approved the use of the percentage method in common fund cases. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002) ("the primary basis of the fee award remains the percentage method"); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011,

1029 (9th Cir. 1998); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376-77 (9th Cir. 1993). Indeed, the percentage method "is typically used where attorney's fees will be paid out of a common fund." *Cheng Jiangchen v. Rentech, Inc.*, 2019 WL 5173771, at *5 (C.D. Cal. Oct. 10, 2019); *see also In re Omnivision Techs.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008) (the "use of the percentage method in common fund cases appears to be dominant"); *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 300 (3d Cir. 2005) ("[T]he percentage-of-recovery method was incorporated in the [PSLRA].").

The percentage-of-recovery method is particularly appropriate in common fund cases where, as here, "the benefit to the class is easily quantified." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011). As courts have explained, "[t]here are significant benefits to the percentage approach, including consistency with contingency fee calculations in the private market, aligning the lawyers' interests with achieving the highest award for the class members, and reducing the burden on the courts that a complex lodestar calculation requires." *Vinh Nguyen v. Radient Pharm. Corp.*, 2014 WL 1802293, at *9 (C.D. Cal. May 6, 2014).

## B. The Requested Attorneys' Fees Are Reasonable Under The Percentage Method

Lead Counsel request an award of attorneys' fees of 23% of the Settlement Fund, net of Litigation Expenses awarded. This request is below the Ninth Circuit "benchmark" of 25% for common fund cases. *See, e.g.*, *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 949 (9th Cir. 2015); *Fischel v. Equitable Life Assurance Soc'y*, 307 F.3d 997, 1006 (9th Cir. 2002); *Vizcaino*, 290 F.3d at 1047-48; *Torrisi*, 8 F.3d at 1376. Courts have recognized that the Ninth Circuit's 25% "benchmark is 'presumptively reasonable,' and it should only be adjusted upward or downward for 'unusual circumstances.'" *In re Snap Inc. Sec. Litig.*, 2021 WL

667590, at *3 (C.D. Cal. Feb. 18, 2021); *In re Anthem, Inc. Data Breach Litig.*, 2018 WL 3960068, at *4 (N.D. Cal. Aug. 17, 2018).

Of note, while a 25% fee is the "benchmark" in the Ninth Circuit, courts have observed that, in "most common fund cases, the award *exceeds* that benchmark," with a 30% fee "the norm 'absent extraordinary circumstances that suggest reasons to lower or increase the percentage.'" *Omnivision*, 559 F. Supp. 2d at 1047-48; *accord In re Allergan, Inc. Proxy Violation Derivatives Litig.*, 2018 WL 4959014, at *1 (C.D. Cal. Aug. 13, 2018); *Schulein v. Petroleum Dev. Corp.*, 2015 WL 12762256, at *1 (C.D. Cal. Mar. 16, 2015); *Pokorny v. Quixtar, Inc.*, 2013 WL 3790896, *1 (N.D. Cal. July 18, 2013).

The fee requested here is below with the Ninth Circuit's "benchmark" of 25%, and well below the "norm" of 30%. It is also below the range of percentage fees that have been awarded in other securities class actions in this Circuit with comparable recoveries. *See*, *e.g.*, *Vizcaino*, 290 F.3d at 1051 (affirming award of 28% of $97 million settlement, representing a 3.65 multiplier); *In re SanDisk LLC Sec. Litig.*, No. 3:15-cv-01455-VC, slip op. at 2 (N.D. Cal. Oct. 23, 2019), ECF No. 284 (Ex. 5A) (awarding 25% of $50 million settlement); *In re Volkswagen "Clean Diesel" Mktg. Sales Pracs., & Prods. Liab. Litig.*, 2019 WL 2077847, at *4 (N.D. Cal. May 10, 2019) (awarding 25% of $48 million settlement); *In re Amgen Inc. Sec. Litig.*, 2016 WL 10571773, at *9-10 (C.D. Cal. Oct. 25, 2016) (awarding 25% of $95 million settlement); *In re Hewlett-Packard Co. Sec. Litig.*, No. 11-1404-AG (RNBx), slip op. at 2 (C.D. Cal. Sept. 15, 2014), ECF No. 167 (Ex. 5B) (awarding 25% of $57 million settlement); *In re Int'l Rectifier Corp. Sec. Litig.*, No. 07-cv-02544-JFW, slip op. at 1 (C.D. Cal. Feb. 8, 2010), ECF No. 316 (Ex. 5C) (awarding 25% of $90 million settlement); *In re Verisign, Inc. Sec. Litig.*, No. C 02-2270-JW (PVT), slip op. at 1 (N.D. Cal. Apr. 24, 2007), ECF No. 528 (Ex. 5D) (awarding 25% of $78 million settlement).

Indeed, fee awards of 23% or greater are also frequently made in considerably larger settlements as well. *See, e.g., Snap*, 2021 WL 667590, at *1, *3 (awarding 25% of $154.7 million settlement); *Anthem*, 2018 WL 3960068, at *4 (awarding 27% of $115 million settlement); *In re Apollo Grp. Inc. Sec. Litig.*, 2012 WL 1378677, at *7 (D. Ariz. Apr. 20, 2012) (awarding 33.3% of $145 million settlement); *In re Brocade Sec. Litig.*, No. 05-cv-2042-CRB, slip op. at 13 (N.D. Cal. Jan. 26, 2009), ECF No. 496-1 (Ex. 5E) (awarding 25% of $160 million settlement); *In re Broadcom Corp. Sec. Litig.*, 2005 WL 8153006, at *4-6 (C.D. Cal. Sept. 12, 2005) (awarding 25% of $150 million settlement).

The requested fee is also below the range of typical fee awards in similarly sized settlements of securities class actions in other circuits. *See, e.g., Klein v. Altria Grp., Inc.*, 2022 WL 16946243, at *5 (E.D. Va. Mar. 31, 2022) (awarding 30% of $90 million settlement); *Knurr v. Orbital ATK, Inc.*, No. 16-cv-01031-TSE, slip op. at 2 (E.D. Va. June 7, 2019), ECF No. 462 (Ex. 5F) (awarding 28% of $108 million settlement); *In re Rayonier Inc. Sec. Litig.*, 2017 WL 4542852, at *3 (M.D. Fla. Oct. 5, 2017) (awarding 30% of $73 million settlement); *San Antonio Fire & Police Pension Fund v. Dole Food Co.*, No. 1:15-cv-1140-LPS, slip op. at 2 (D. Del. July 18, 2017), ECF No. 100 (Ex. 5G) (awarding 25% of $75 million settlement); *N.J. Carpenters Health Fund v. DLJ Mortg. Cap., Inc.*, No. 08-cv-5653-PAC, slip op. at 2-3 (S.D.N.Y. May 10, 2016), ECF No. 277 (Ex. 5H) (awarding 28% of $110 million settlement); *Local 703 v. Regions Fin. Corp.*, 2015 WL 5626414, at *1 (N.D. Ala. Sept. 14, 2015) (awarding 30% of $90 million settlement); *Minneapolis Firefighters' Relief Ass'n v. Medtronic, Inc.,* 2012 WL 12903758, at *1-2 (D. Minn. Nov. 8, 2012) (awarding 25% of $85 million settlement); *Freudenberg v. E*Trade Fin. Corp.*, No. 07 Civ. 8538 (JPO) (MHD), slip op. at 6 (S.D.N.Y. Oct. 20, 2012), ECF No. 154 (Ex. 5I) (awarding 28% of $79 million settlement); *In re Tremont Sec. Law, State Law & Ins. Litig.*, No. 08-cv-11117-TPG, slip op. at 2 (S.D.N.Y. Aug. 19, 2011), ECF No. 603 (Ex. 5J) (awarding 30% of $91.8 million settlement); *Billitteri v. Sec.*

*Am., Inc.*, 2011 WL 3585983, at *9 (N.D. Tex. Aug. 4, 2011) (awarding 25% of $80 million settlement); *Cornwell v. Credit Suisse Grp.*, No. 08-cv-03758 (VM), slip op. at 2, 4 (S.D.N.Y. July 18, 2011), ECF No. 117 (Ex. 5K) (awarding 27.5% of $70 million settlement, representing a 4.7 multiplier).

Thus, the 23% fee requested here is below the range of percentage fees awarded in comparable cases, and its reasonableness is only further confirmed by the fact that, as explained below, it represents a significantly negative multiplier (*i.e.,* a discount) on the total lodestar devoted by Lead Counsel to the Action.

## C. The Requested Attorneys' Fees Are Reasonable Under a Lodestar Cross-Check

To ensure the reasonableness of a fee awarded under the percentage-of-recovery method, courts in this Circuit may cross-check the proposed fee award against counsel's lodestar, although such a cross-check is not required. *See Amgen*, 2016 WL 10571773, at *9 ("Although an analysis of the lodestar is not required for an award of attorneys' fees in the Ninth Circuit, a cross-check of the fee request with a lodestar amount can demonstrate the fee request's reasonableness."); *HCL Partners Ltd. P'ship v. Leap Wireless Int'l, Inc.*, 2010 WL 4156342, at *2 (S.D. Cal. Oct. 15, 2010) (noting that "lodestar analysis is not necessary when the requested fee is within the accepted benchmark").

As detailed herein and in the Joint Declaration, Lead Counsel exerted a tremendous amount of effort in advancing this Action over the past seven years in the face of an aggressive and determined defense. Plaintiffs' Counsel have collectively spent over 122,000 hours of attorney and other professional support staff time in connection with the Action. Plaintiffs' Counsel's lodestar, derived by multiplying the hours spent on the litigation by each attorney and professional by their current hourly rates, is $61,874,223.75. ¶ 98.[2]

---

[2] It is appropriate to calculate counsel's lodestar based on current rates as a method

Thus, the requested fee of 23%, net of expenses, represents a "negative" multiplier of 0.25 of Plaintiffs' Counsel lodestar. ¶ 98. In other words, the requested fee represents a 75% discount on the lodestar value of the time that Plaintiffs' Counsel dedicated to the Action.

This "negative" lodestar multiplier is well below the range of lodestar multipliers commonly awarded, which are typically *positive* multipliers from 1 to 4. *See Vizcaino*, 290 F.3d at 1052-54 (concluding that multipliers most commonly fall range from 1.0 to 4.0); *van Wingerden v. Cadiz, Inc.*, 2017 WL 5565263, at *13 (C.D. Cal. Feb. 8, 2017) ("[m]ultipliers in the 3–4 range are common in lodestar awards for lengthy and complex class action litigation"); *Hopkins v. Stryker Sales Corp.*, 2013 WL 496358, at *4 (N.D. Cal. Feb. 6, 2013) ("Multipliers of 1 to 4 are commonly found to be appropriate in complex class action cases.").

Indeed, in cases of this nature, fees representing positive multipliers of counsel's lodestar are regularly awarded to reflect the contingency fee risk and other relevant factors. *See Vizcaino*, 290 F.3d at 1051 (noting "courts have routinely enhanced the lodestar to reflect the risk of non-payment in common fund cases" and affirming a fee representing a 3.65 multiplier); *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at *26 (S.D.N.Y. Nov. 8, 2010) ("a positive multiplier is typically applied to the lodestar in recognition of the risk of the litigation, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors"). Here, despite the existence of numerous

---

of compensating for the delay in payment. *See Fischel*, 307 F.3d at 1010 (finding it appropriate to use "attorneys' current rates to all hours billed during the course of the litigation" as a method to compensate for the delay in payment); *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *14 n.17 (N.D. Cal. Dec. 18, 2018) ("The Court uses Plaintiffs' Counsel's current rather historic rates, which is a well established method of ensuring that '[a]ttorneys in common fund cases [are] compensated for any delay in payment.'"), *aff'd sub nom. Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020).

substantial litigation risks from the outset, Lead Counsel are seeking a fee that is substantially *less* than the lodestar value of their time.

Courts repeatedly recognize that a percentage fee request that is less than counsel's lodestar provides strong confirmation of the reasonableness of the award. *See, e.g.*, *Davis v. Yelp, Inc.*, 2023 WL 3063823, at *2 (N.D. Cal. Jan. 27, 2023) ("[A] multiplier of less than one suggests that the negotiated fee award is reasonable."); *Khoja v. Orexigen Therapeutics, Inc.*, 2021 WL 5632673, at *10 (S.D. Cal. Nov. 30, 2021) (where 33% fee requested resulted in a fractional multiplier of 0.528, the court found that the "lodestar cross-check [] provides a strong indication of the reasonableness of Lead Counsel's requested percentage award"); *Amgen*, 2016 WL 10571773, at *9 ("[C]ourts have recognized that a percentage fee that falls below counsel's lodestar strongly supports the reasonableness of the award.").

In sum, Lead Counsel's requested fee award is reasonable, justified, and below the range of what courts in this Circuit regularly award in class actions, whether calculated as a percentage-of-recovery or as a cross-check on counsel's lodestar. Moreover, as discussed below, each of the additional factors considered by courts in the Ninth Circuit also weighs in favor of finding the requested fee reasonable.

## III. ALL OTHER FACTORS CONSIDERED BY NINTH CIRCUIT COURTS SUPPORT APPROVAL OF THE REQUESTED FEE

The attorneys' fee request is fair and reasonable in light of the relevant factors as identified by the Ninth Circuit, including: (i) the results achieved; (ii) the risk of litigation; (iii) the skill required and the quality of work; (iv) the contingent nature of the fee and the financial burden carried; and (v) awards made in similar actions. *See Vizcaino*, 290 F.3d at 1048-50. The Ninth Circuit has explained that these factors should not be used as a rigid checklist or weighed individually, but, rather, should be evaluated in light of the totality of the circumstances. *Id*. As set forth below, all of the *Vizcaino* factors militate in favor of approving the requested fee.

## A.    The Results Achieved

Courts consistently recognize that the result achieved is an important factor in determining an appropriate fee award. *See Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) (noting "the most critical factor is the degree of success obtained"); *Vizcaino*, 290 F.3d at 1048 (noting "[e]xceptional results are a relevant circumstance" in awarding attorneys' fees); *In re DJ Orthopedics, Inc. Sec. Litig.*, 2004 WL 1445101, at *7 (S.D. Cal. June 21, 2004) (same)

As detailed in the motion for final approval of the Settlement, the result achieved—the creation of a settlement fund in the amount of $75,000,000—is a favorable result for the Class that was achieved despite many complexities and risks, while avoiding the substantial expense, delay, risk, and uncertainty of summary judgment, trial, and appeal. Class Members will thus enjoy the benefit of a recovery now, without the risk of no or lesser recovery. Considering the substantial $75 million all-cash recovery and the complexities and uncertainties of this case, the Settlement presents a favorable result and warrants approval of Lead Counsel's fee request.

## B.    The Litigation Was Risky And Complex

"The risks assumed by Class Counsel, particularly the risk of non-payment or reimbursement of expenses, is a factor in determining counsel's proper fee award." *In re Heritage Bond Litig.*, 2005 WL 1594389, at *14 (C.D. Cal. June 10, 2005); *see also, e.g.*, *WPPSS*, 19 F.3d at 1299-1301; *Omnivision*, 559 F. Supp. 2d at 1047. "'[I]n general, securities actions are highly complex and . . . securities class litigation is notably difficult and notoriously uncertain.'" *Hefler*, 2018 WL 6619983, at *13 (citation omitted). Indeed, "[t]o be successful, a securities class-action plaintiff must thread the eye of a needle made smaller and smaller over the years by judicial decree and congressional action." *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 235 (5th Cir. 2009).

As discussed in greater detail in the Joint Declaration and the Settlement Memorandum, there were many substantial challenges to succeeding in this litigation from the outset. Indeed, throughout the litigation, Defendants vigorously asserted that their public statements were accurate, they lacked any intent to deceive investors and that the price declines in Qualcomm stock could not be attributed to the correction of the alleged misstatements or omissions. ¶¶ 61-74.

That Lead Plaintiffs would prevail (or obtain a significant settlement) was far from certain. This was not a case in which Qualcomm ever restated its financials or admitted any wrongdoing, nor was there ever any parallel SEC or other government action brought against Qualcomm or any of the Defendants for the alleged securities fraud on Qualcomm investors. ¶ 63. Even with all of their successes to-date, Lead Counsel still ultimately faced a significant chance that they could lose on one or more of the serious defenses mounted by Defendants at summary judgment, at trial, or on post-trial appeals.

For example, Lead Plaintiffs faced the difficult task of convincing a jury at trial that Defendants acted with scienter. Courts have recognized that proof of Defendants' state of mind is one of the most significant challenges of a prosecution under the Exchange Act. *See Amgen*, 2016 WL 10571773, at *3. In addition, absent the Settlement, Lead Plaintiffs would also have to confront significant challenges in proving loss causation and damages at trial. *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 345-46 (2005) (plaintiffs bear the burden of proving "that the defendant's misrepresentations 'caused the loss for which the plaintiff seeks to recover'").

On all of these issues of liability, loss causation, and damages, Lead Plaintiffs would need to prevail at several further stages—on the motions for summary judgment, at trial, and again on appeal. At each stage, there would be very significant risks attendant to the continued prosecution of the Action, as well as considerable delay. That Lead Counsel faced and overcame these very significant risks during the

course of the litigation, through their extensive efforts and skilled lawyering, strongly supports the requested fee.

Lead Counsel prosecuted this Action on a fully contingent basis and assumed numerous substantial litigation risks that might have resulted in no or lesser recovery for the Class (and thus no or lesser compensation to counsel). Notwithstanding these risks, Lead Counsel dedicated many millions of dollars of their attorneys' and other staff members' time to litigating this Action as forcefully as possible for the Class, and incurred millions of dollars in litigation expenses in prosecuting the claims for the Class. These risks further support the reasonableness of the requested fee. *See, e.g.*, *Heritage Bond*, 2005 WL 1594389, at *14 ("The risks assumed by Class Counsel, particularly the risk of non-payment or reimbursement of expenses, is a factor in determining counsel's proper fee award."); *Omnivision,* 559 F. Supp. 2d at 1047; *Rentech, Inc*., 2019 WL 5173771, at *9 ("The risk that further litigation might result in Plaintiffs not recovering at all, particularly a case involving complicated legal issues, is a significant factor in the award of fees.").

### C.    The Skill Required And Quality Of Lead Counsel's Work Performed Support The Requested Fee

Courts also consider the skill required and quality of work performed in determining what fee to award. *See Heritage Bond*, 2005 WL 1594389, at *12 ("The experience of counsel is also a factor in determining the appropriate fee award."). "The 'prosecution and management of a complex national class action requires unique legal skills and abilities.'" *Omnivision*, 559 F. Supp. 2d at 1047.

Here, Plaintiffs' Counsel prosecuted the case vigorously, provided high quality legal services, and achieved an excellent result for the Class. Plaintiffs' Counsel are among the most experienced and skilled practitioners in the securities litigation field, as discussed in the firm resumes attached to the Joint Declaration as Exhibit 4A-4 and 4B-3. Lead Counsel's reputation as experienced and competent

counsel in complex class action cases, willing and able to litigate the case to trial, if necessary, facilitated their ability to achieve a $75 million recovery for the Class. ¶¶ 99-106.

The quality and vigor of opposing counsel are also considered in evaluating the services rendered by Plaintiffs' Counsel. *See, e.g.*, *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 449 (E.D. Cal. 2013). Here, Defendants were represented by very experienced attorneys practicing at the top of their fields from well-respected firms including Cravath, Swaine & Moore LLP; Cooley LLP; and Keker, Van Nest & Peters LLP. ¶ 107. The attorneys were highly skilled and supported by considerable financial resources. *Id*. Nevertheless, Lead Counsel were able to persuade Defendants to settle the case on terms favorable to the Class.

**D.  The Contingent Nature Of The Fee And The Financial Burden Carried By Lead Counsel Support The Requested Fee**

Determination of a fair and reasonable fee also includes consideration of the contingent nature of the fee. *See In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 2007 WL 2416513, at *1 (N.D. Cal. Aug. 16, 2007); *see also Omnivision*, 559 F. Supp. 2d at 1047. It is an established practice in the private legal market to reward attorneys for taking on the serious risk of non-payment by permitting a fee award that reflects a premium to normal hourly billing rates. *See In re Nuvelo, Inc. Sec. Litig.*, 2011 WL 2650592, at *2 (N.D. Cal. July 6, 2011). "This practice encourages the legal profession to assume such a risk and promotes competent representation for plaintiffs who could not otherwise hire an attorney." *Id.*

Here, Plaintiffs' Counsel received no compensation during the seven years of this litigation. Unlike defense counsel—who receive payment on a timely basis whether they win or lose—Plaintiffs' Counsel sustained the entire risk that they would have to fund the expenses of this Action and that, unless Plaintiffs' Counsel

succeeded, they would not be entitled to any compensation whatsoever. *See Hefler*, 2018 WL 6619983, at *13 ("Plaintiffs' Counsel bore a heavy financial burden in expending substantial resources – a claimed lodestar of over $29 million – on a contingency basis."). Accordingly, the contingent nature of the representation, and the burden carried by Plaintiffs' Counsel, support the requested fee.

## E. The Requested Fee Is Consistent With Or Less Than Awards Made In Similar Cases On A Percentage Or Lodestar Multiplier Basis

Counsel's fee request is well within—and, in fact, below—the range of what courts in this Circuit commonly award in complex securities class actions. As discussed above, *see* Part II.B, the 23% fee request is below the Ninth Circuit's 25% "benchmark" and consistent with fee percentages regularly awarded in comparable settlements. As also discussed above at Part II.C, the requested fee represents a negative multiplier that is well below the range of lodestar multipliers typically awarded in cases of this nature.

## F. Lead Plaintiffs' Approvals Support The Requested Fee

Lead Plaintiffs, who both took an active role in the litigation and closely supervised the work of Lead Counsel, support the approval of the requested fee based on the result obtained, the efforts of counsel, and the risks in the Action. *See* Bergström Decl. (Ex. 1), at ¶¶ 3-7, 9-11; Hoffmann Decl. (Ex. 2), at ¶¶ 3-7, 9-13. Lead Plaintiffs' endorsement of the fee request further supports its approval. *See, e.g.*, *Hatamian v. Advanced Micro Devices, Inc.*, 2018 WL 8950656, at *2 (N.D. Cal. Mar. 2, 2018) (approving fee where request "reviewed and approved as fair and reasonable by Class Representatives, sophisticated institutional investors . . ."); *In re Lucent Techs., Inc. Sec. Litig.*, 327 F. Supp. 2d 426, 442 (D.N.J. 2004) ("Significantly, the Lead Plaintiffs, both of whom are institutional investors with great financial stakes in the outcome of the litigation, have reviewed and approved Lead Counsel's fees and expenses request.").

Moreover, the fact that the fee request is based on an *ex ante* fee agreement between BLB&G and AP7—the more restrictive of two retainer agreements entered into between the respective Lead Plaintiffs and Lead Counsel firms at the outset of the action—further supports the request. Numerous courts have found that, in light of Congress's intent to empower lead plaintiffs under the PSLRA to select and supervise attorneys on behalf of the class, a fee agreement entered into by a PSLRA lead plaintiff and its counsel at the outset of the litigation warrants considerable weight by the Court. *See, e.g.*, *In re Cendant Corp. Litig.*, 264 F.3d 201, 282 (3d Cir. 2001) (*ex ante* fee agreements in securities class actions should be given "a presumption of reasonableness"); *In re Nortel Networks Corp. Sec. Litig.*, 539 F.3d 129, 133 (2d Cir. 2008) ("We expect . . . that district courts will give serious consideration to negotiated fees because PSLRA lead plaintiffs often have a significant financial stake in the settlement, providing a powerful incentive to ensure that any fees resulting from that settlement are reasonable.").

## IV. PLAINTIFFS' COUNSEL'S LITIGATION EXPENSES ARE REASONABLE

Lead Counsel also request payment of Litigation Expenses that they incurred in prosecuting and resolving the Action on behalf of the Class. Attorneys who create a common fund for the benefit of a class are entitled to be reimbursed for their out-of-pocket expenses incurred in creating the fund so long as the submitted expenses are reasonable, necessary and directly related to the prosecution of the action. *See Omnivision*, 559 F. Supp. 2d at 1048 ("Attorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters.").

From the outset, Lead Counsel were aware that they might not recover any of these expenses or, at the very least, would not recover anything until the Action was successfully resolved. Thus, Lead Counsel were motivated to, and did, take steps to

minimize expenses without jeopardizing the vigorous and efficient prosecution of the Action. ¶ 114.

The expenses for which Plaintiffs' Counsel seek payment are detailed in the accompanying lodestar and expense declarations, attached as Exhibit 4 to the Joint Declaration, setting forth the specific categories of expenses incurred and the amount. The types of expenses for which Plaintiffs' Counsel seek payment were necessarily incurred in litigation and are routinely charged to classes in contingent litigation and clients billed by the hour. These include expenses associated with, among other things, experts, court fees, legal research, electronic document management, and copying costs. *See Thomas v. MagnaChip Semiconductor Corp.*, 2018 WL 2234598, at \*4 (N.D. Cal. May 15, 2018) ("Courts throughout the Ninth Circuit regularly award litigation costs and expenses—including photocopying, printing, postage, court costs, research on online databases, experts and consultants, and reasonable travel expenses—in securities class actions, as attorneys routinely bill private clients for such expenses in non-contingent litigation."); *Todd v. STAAR Surgical Co.*, 2017 WL 4877417, at \*5 (C.D. Cal. Oct. 24, 2017) (approving reimbursement of expenses for "experts and consultants," and "necessary travel, filing fees, investigator fees, and document storage and maintenance fees").

The largest component of counsel's expenses by far, $6,060,074.45, approximately 81% of the total expense amount, is for the costs of experts and consultants, including for the retention and consultation with experts in multiple fields, including market efficiency, accounting, standard practices, policies, and procedures concerning public company disclosure processes, antitrust economics, FRAND, loss causation, and damages. Lead Counsel worked extensively with these experts throughout the litigation, and they provided critical insights and assistance to Lead Plaintiffs and Lead Counsel in connection with the successful prosecution and resolution of this case. ¶¶ 11, 39-40, 116. The international nature of the alleged anti-competitive conduct at the core of Lead Plaintiffs' allegations required Lead

Counsel to further consult with experts on European Community and Korean competition law. *Id*. While the work of these experts did not come cheap, Lead Counsel were required to retain the best possible experts they could in order to maintain a level playing field with the deep-pocketed Defendants who had also hired highly credentialed experts to address the numerous technical issues in the case.

The Notices informed potential Class Members that Plaintiffs' Counsel would apply for Litigation Expenses in an amount not to exceed $7.5 million, which may include the reasonable costs and expenses of Lead Plaintiffs directly related to their representation of the Class. *See* Ewashko Decl. Ex. A at 1; Ex. B at ¶¶ 5, 53. The total amount of expenses requested is $7,471,879.55, which includes $7,437,826.78 for Lead Counsel's litigation expenses, and $34,052.77 in proposed PSLRA awards for reasonable expenses incurred by Lead Plaintiffs as described below. This amount is below the $7.5 million maximum amount stated in the Notices.

## V.   LEAD PLAINTIFFS SHOULD BE AWARDED THEIR REASONABLE COSTS AND EXPENSES UNDER 15 U.S.C. §78u-4(A)(4)

In connection with their motion for Litigation Expenses, Lead Counsel also seek reimbursement of $34,052.77 in expenses incurred by Lead Plaintiffs directly related to their representation of the Class. The PSLRA provides that an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class" may be made to "any representative party serving on behalf of a class." 15 U.S.C. § 78u-4(a)(4).

Consistent with that statute, courts regularly reimburse lead plaintiffs and class representatives in PSLRA actions for their reasonable costs and expenses, including the time devoted to the Action. *See, e.g.*, *In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*, 772 F.3d 125, 132 (2d Cir. 2014) (affirming award of over $450,000 to representative plaintiffs for time spent by their employees on the action); *Amgen*, 2016 WL 10571773, at *10 (awarding $30,983.99 to PSLRA lead

plaintiffs in reimbursement for time spent by lead plaintiffs' employees in reviewing court filings, attending hearings, and preparing for depositions); *STAAR Surgical*, 2017 WL 4877417, at *6 (awarding $10,000 for the "significant time and effort Lead Plaintiff expended to support this litigation," "including reviewing and commenting on the complaints and significant briefs, . . . and communicating with counsel to oversee the litigation"); *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1173-74 (S.D. Cal. 2007) (awarding $40,000 reimbursement to lead plaintiff).

Here, Lead Plaintiffs request reimbursement of a total of $34,052.77 based on the value of time devoted to the Action by employees of AP7 and Metzler, including, for example, time spent communicating with Lead Counsel, reviewing pleadings and briefs, assisting in the production of documents and other discovery responses, preparing for depositions and being deposed, and consulting with counsel during the course of settlement negotiations, as well as other expenses incurred by AP7 in connection with its representation of the Class. *See* Bergström Decl. ¶¶ 12-14; Hoffmann Decl. ¶¶ 14-16. Employees of Lead Plaintiffs dedicated considerable time and resources to the Action that they would have otherwise devoted to their regular duties and thus represented a cost to the Lead Plaintiffs. *Id*. The awards sought by Lead Plaintiffs are reasonable and justified under the PSLRA based on the active involvement of Lead Plaintiffs in the Action, and should be granted.

## VI.   CONCLUSION

Lead Counsel obtained an excellent result for the Class. Based on the foregoing and the entire record, Lead Counsel respectfully request that the Court award attorneys' fees in the amount of 23% of the Settlement Fund (net of Litigation Expenses); payment of Lead Counsel's Litigation Expenses in the amount of $7,437,826.78; and reimbursement of PLSRA Lead Plaintiffs' costs and expenses in the total amount of $34,052.77.

Dated: August 23, 2024

Respectfully submitted,

**BERNSTEIN LITOWITZ BERGER
  & GROSSMANN LLP**

By: */s/ Jonathan D. Uslaner*
Jonathan D. Uslaner (Bar No. 256898)
jonathanu@blbglaw.com
Lauren M. Cruz (Bar No. 299964)
lauren.cruz@blbglaw.com
2121 Avenue of the Stars, Suite 2575
Los Angeles, CA 90067
Tel: (310) 819-3470

-and-

Salvatore J. Graziano (*Pro Hac Vice*)
salvatore@blbglaw.com
Rebecca E. Boon (*Pro Hac Vice*)
rebecca.boon@blbglaw.com
1251 Avenue of the Americas, 44th Floor
New York, NY 10020
Tel: (212) 554-1400
Fax: (212) 554-1444

**MOTLEY RICE LLC**
Gregg S. Levin (*Pro Hac Vice*)
glevin@motleyrice.com
William S. Norton (*Pro Hac Vice*)
bnorton@motleyrice.com
Christopher F. Moriarty (*Pro Hac Vice*)
cmoriarty@motleyrice.com
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
Tel: (843) 216-9000
Fax: (843) 216-9450

-and-

William H. Narwold (*Pro Hac Vice*)
bnarwold@motleyrice.com

One Corporate Center
20 Church Street, 17th Floor
Hartford, CT 06103

*Counsel for Lead Plaintiffs Sjunde AP-Fonden and Metzler Asset Management GmbH, and Lead Counsel for the Class*